UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT GLICK, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON, <br><br> Defendants. | No. 1:22-cv-02604 (PKC) |

**MEMORANDUM OF LAW IN SUPPORT OF CHRIS WEEKS'
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, AND
<u>APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**WOLF POPPER LLP**
Robert C. Finkel
Joshua W. Ruthizer
Matthew Insley-Pruitt
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
rfinkel@wolfpopper.com
jruthizer@wolfpopper.com
minsleypruitt@wolfpopper.com

***Attorneys for Movant and Proposed Lead Counsel for the Class***

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND............................................................................................ 1

PROCEDURAL HISTORY............................................................................................. 4

ARGUMENT.................................................................................................................... 5

I.      WEEKS IS THE MOST ADEQUATE PLAINTIFF AND SHOULD BE
APPOINTED LEAD PLAINTIFF..................................................................... 5

      A.     The Lead Plaintiff Framework under the PSLRA .................................... 5

      B.     Weeks Has Satisfied the PSLRA's Procedural Requirements................... 6

      C.     Weeks Has the "Largest Financial Interest" in the Relief Sought by the Class ..... 6

      D.     Weeks Satisfies the Typicality and Adequacy Requirements of Rule 23............... 7

II.     WEEKS' SELECTION OF COUNSEL SHOULD BE APPROVED............................... 9

CONCLUSION................................................................................................................ 10

## PRELIMINARY STATEMENT

This Action alleges that Defendants Arqit Quantum Corporation ("Arqit"), Centricus Acquisition Corporation ("Centricus"), David Williams, Nick Pointon, Carlo Calabria, and Stephen Chandler, and other Centricus directors, made materially false and misleading statements concerning Arqit's business in violation of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b), 78n(a), and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 and 14a-9, 17 C.F.R. §240.10b-5, 240.14a-9.

Class member Chris Weeks respectfully seeks appointment as Lead Plaintiff. Weeks is proceeding on this motion pursuant to an assignment of claims from his wife, Judy L. Smith. *See* accompanying Finkel Declaration ("Finkel Decl."), Exhibit 3 to Exhibit B. Weeks meets all the requirements of the Private Securities Litigation Reform Act ("PSLRA") for appointment as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Weeks timely filed this motion for appointment as Lead Plaintiff; believes he has the largest financial interest in the relief sought by the class of investors in Arqit publicly traded securities, having suffered losses (as assignee) of approximately $148,484; and also satisfies the adequacy and typicality requirements of Rule 23.

Weeks further requests that the Court approve his selection of counsel, Wolf Popper LLP. Wolf Popper is a nationally recognized securities litigation firm with a consistent record of achieving substantial recoveries for the benefit of injured investor classes, and has the expertise and resources necessary to provide high quality legal representation to the class.

## FACTUAL BACKGROUND

Arqit is a cybersecurity company that purports to have established a unique quantum encryption technology to secure against current and future forms of cyberattacks. ¶23.[1]

---

[1] References to "¶ __" are to the complaint filed in this action.

1

Centricus was a special purpose acquisition corporation ("SPAC") that was "formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses." ¶22. Centricus announced on February 8, 2021 the closing of its initial public offering of 34.5 million units at a price of $10.00 a unit. Each unit consisted of one ordinary share and one-quarter of one redeemable warrant (totaling 8.625 million warrants). Each warrant entitled the holder to purchase one ordinary share at $11.50 per share.[2]

On May 12, 2021, Arqit (which at the time was a private company) announced that it had entered into a definitive agreement to merge with Centricus, a publicly-traded SPAC (the "Merger"). Pursuant to the Merger each Centricus ordinary share and each Centricus warrant were to be converted into one ordinary share and one warrant of Arqit, with Arqit being the surviving corporation.[3]

On May 28, 2021, Arqit filed with the SEC a Form F-4 Merger Proposal Registration Statement (the "Proxy Statement") for the Merger. On July 30, 2021, Arqit filed a prospectus (the "Prospectus") for the Merger, which formed part of the Proxy Statement. ¶¶24-25. The Complaint alleges that the Proxy Statement and Prospectus were materially false and misleading. ¶¶26-29.

On September 3, 2021, Arqit announced that the Merger had been approved by Centricus's shareholders on August 31, and had closed on September 3, 2021. Arqit began trading on the NASDAQ on September 7, 2021. ¶30.

---

[2] https://www.sec.gov/Archives/edgar/data/0001836935/000110465921022052/tm216379d1_8k.htm (last viewed July 5, 2022).

[3] https://www.sec.gov/Archives/edgar/data/0001836935/000110465921064805/tm2115858d1_8k.htm (last viewed July 5, 2022).

Pursuant to the Merger, 14,891,667 Centricus warrants were exchanged for Arqit warrants on August 30, 2021 under the trading symbol "ARQQW."[4]  The Arqit warrants have an exercise price of $11.50 and expire on September 3, 2026.[5]  The warrants started trading on September 7, 2021 in an efficient market on the NASDAQ.  The average daily trading volume of the warrants from September 7, 2021 through July 1, 2022 was approximately 169,000 warrants per day.

On September 10, 2021 and December 16, 2021, the Company filed its annual/transition report on Form 20-F with the SEC (the "September 2021 20-F") and (the "December 2021 20-F") that included a Risk Factors section that failed to include the possible need for "widespread adoption of new telecommunication protocols and infrastructure."  ¶¶30, 35.

In the Proxy Statement and in subsequent public statements, the Defendants made materially false and misleading statements and failed to disclose material adverse information regarding the company's operations that the Defendants either knew or recklessly disregarded to be false, including "(1) Arqit's proposed encryption technology would require widespread adoption of new protocols and standards of for telecommunications; (2) British cybersecurity officials questioned the viability of Arqit's proposed encryption technology in a meeting in 2020; (3) the British government was not an Arqit customer but, rather, providing grants to Arqit; (4) Arqit had little more than an early-stage prototype of its encryption system at the time of the merger; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times."  ¶36.

---

[4]  https://www.sec.gov/Archives/edgar/data/0001836935/000110465921111835/tm2126769d1_8k.htm (last viewed July 5, 2022).

[5]  https://www.sec.gov/Archives/edgar/data/0001859690/000110465921150276/arqq-20210930x20f.htm at F-31-32 (last viewed July 5, 2022)

During the Class Period, Arqit's publicly-traded securities traded at prices inflated by Defendants' false statements.  On April 18, 2022, however, *The Wall Street Journal* (the "WSJ") published an article titled, "British Encryption Startup Arqit Overstates Its Prospects, Former Staff and Others Say." The WSJ article stated, in relevant part:

> When the company secured its Nasdaq listing last autumn, its revenue consisted of a handful of government grants and small research contracts, and its signature product was an early-stage prototype unable to encrypt anything in practical use, according to [former employees and other people familiar with the company]. The encryption technology the company hinges on—a system to protect against next-generation quantum computers—might never apply beyond niche uses, numerous people inside and outside the company warned, unless there were a major overhaul of internet protocols.
>
> *   *   *
>
> The encryption system—with or without its satellite components—depends on the broad adoption of new protocols and standards for telecommunications, cloud computing and internet services.

On the publication of the WSJ article, Arqit's share price fell $2.57 per share, or 17%, to close at $12.49 per share on April 18, 2022.  Arqit's warrants fell $1.45 per warrant or 38.7%, to close at $2.40 on April 18, 2022.  Weeks and other class member suffered significant losses and damages. ¶¶38-39.

**PROCEDURAL HISTORY**

On May 6, 2022, this Action was filed alleging violations of the Exchange Act (as stated above), on behalf of two separate groups of investors: (i) all persons or entities who purchased or otherwise acquired publicly-traded Arqit securities between September 7, 2021 and April 18, 2022, inclusive (the "Class Period") (the "Open Market Claim"); and/or (ii) all holders of Centricus securities as of the record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger between Arqit and Centricus (the "Merger Claim") and entitled to vote on the Merger (the "Merger Subclass").  ¶1.  The class definition does not

4

distinguish between open market purchasers of publicly-traded ordinary shares or warrants. They are each equally members of the Class.

According to the certification filed with the Complaint, plaintiff Glick never owned Centricus ordinary shares and first purchased Arqit ordinary shares after the Merger. Therefore, it is not clear that the Merger Claim (Count II) is properly before the Court. Moreover, the Open Market Claim and Merger Claim are based on different facts, assert different claims, and have different measures of damages, and may be subject to a conflict of interest.

## ARGUMENT

### I.    WEEKS IS THE MOST ADEQUATE PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.    The Lead Plaintiff Framework under the PSLRA

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter referred to as the 'most adequate plaintiff')." 15 U.S.C. §78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person who "has either filed the complaint or made a motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (aa)-(cc). The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (aa)-(bb).

Satisfying each requirement of the PSLRA, Weeks respectfully submits that he is the presumptive "most adequate plaintiff."  Weeks has complied with the PSLRA procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

**B.      Weeks Has Satisfied the PSLRA's Procedural Requirements**

Weeks has timely filed the instant motion and attached a sworn certification attesting to his willingness to serve as Lead Plaintiff for the class and to provide testimony at deposition and trial, if necessary.  *See* accompanying Finkel Declaration, Ex. 2.  Weeks therefore satisfies the first criterion of the PSLRA's "presumptively most adequate plaintiff" analysis.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (aa).

**C.      Weeks Has the "Largest Financial Interest" in the Relief Sought by the Class**

The PSLRA  offers no statutory guidance for determining which plaintiff has the largest financial interest. *See Cushman v. Fortress Biotech, Inc.*, 20-CV-5767(KAM)(RLM), 2021 U.S. Dist. LEXIS 256466, at *1 (E.D.N.Y. Apr. 19, 2021).

> Courts in this Circuit have adopted a four-factor test, first promulgated in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 12432, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), and later in *In re Olsten [Corp. Securities Litigation]*, 3 F. Supp. 2d [286,] 295 [(E.D.N.Y. 1998)] (the "Olsten-Lax Factors"), to assess a plaintiff's financial interest:
>
> > (1) the total number of shares purchased during the class period;
> >
> > (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> >
> > (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> >
> > (4) the approximate losses suffered.

*Id.* at *13-14 (citation omitted); *see also Rauch v. Vale S.A.*, 378 F. Supp. 3d 198 (E.D.N.Y. 2019) ("In assessing the financial interests of parties competing for lead plaintiff status, the Court will generally consider" the four Olsten-Lax factors.).

As of the time of the filing of this motion, Weeks believes that he has the largest financial interest, based on the Olsten-Lax factors, of any class member seeking appointment as Lead Plaintiff for the Class Period alleged in the *Glick* action of September 7, 2021, through April 18, 2022, inclusive.  During the Class Period, Weeks' wife, Judy L. Smith, purchased 23,000 publicly traded stock warrants in her Rollover IRA; expended $183,807; retained all of her shares of Arqit securities as of the end of the Class Period; and suffered a total loss of approximately $148,484.  Finkel Decl., Ex. C.  Accordingly, Weeks satisfies the second criterion of the PSLRA's "presumptively most adequate plaintiff" analysis.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (bb).

### D.      Weeks Satisfies the Typicality and Adequacy Requirements of Rule 23

"In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements— typicality and adequacy—are satisfied." *Rauch*, 378 F. Supp. 3d at 209.  "Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Id.* at 210 (quotation and citation omitted). Weeks' claims are typical of those of the purported class.  Smith purchased Arqit securities during the Class Period, at prices alleged to be artificially inflated as a result of the defendants' alleged materially false and misleading statements concerning Arqit's business.  Smith suffered damages when the truth was revealed, and possesses claims against Arqit and certain of its officers and directors under the federal securities laws.  (Smith assigned her claim to her

7

husband, Weeks.)  Because Weeks' claims arise from the same events and course of conduct as the class claims, Weeks satisfies the typicality requirement of Rule 23(a)(3).

"Adequacy of a proposed lead plaintiff turns on whether that plaintiff will fairly and adequately protect the interests of the class." *Rauch*, 378 F. Supp. 3d at 210 (citation and quotation omitted).  "In analyzing the adequacy requirement in the context of appointing lead plaintiff, courts consider:  (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." *Id.* (citation and quotation omitted).

Weeks is an adequate representative.  Weeks' claims are not antagonistic or in conflict with those of the class.  Weeks is not subject to any unique defenses.  Further, Weeks' $148,484 loss means he has sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the class, whose interests align directly with his own.  As described below, Weeks has retained Wolf Popper to act as counsel, and Wolf Popper is experienced in securities litigation.

Because Weeks' claims are typical of those of the class and Weeks will adequately represent the class, Weeks satisfies the third criterion of the PSLRA's "presumptively most adequate plaintiff" analysis.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

In sum, Weeks is the presumptively most adequate plaintiff and should be appointed Lead Plaintiff.  Weeks timely filed a motion seeking appointment as Lead Plaintiff, has the largest financial interest in the relief sought by the class, and satisfies the requirements of Rule 23(a) of the Federal Rules of Federal Procedure.

8

## II.    WEEKS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Francisco v. Abengoa, S.A.*, No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *21 (S.D.N.Y. May 24, 2016) (citation and quotation omitted). "The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Rauch*, 378 F. Supp. 3d at 211 (citation and quotation omitted). "When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience." *Id.* (citation and quotation omitted).

Weeks has selected Wolf Popper to act as his counsel. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in its attached resume. *See* Finkel Decl., Ex. D. In *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as Lead Plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, this Court (Hon. Pamela K. Chen) entered an order approving the settlement. The Court found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." *See also*

9

*Belfiore v. Procter & Gamble, Co.*, Dkt. No. 361, 14-CV-04090 (PKC) (E.D.N.Y. July 7, 2020) (order approving settlement).  As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, Lead Plaintiff's counsel has the skill and knowledge to prosecute this action effectively and expeditiously.  The Court may be assured that by approving Weeks' selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Weeks respectfully requests that this Court issue an Order appointing Weeks as Lead Plaintiff and approving Wolf Popper as Lead Counsel.

Dated: July 5, 2022
       New York, New York

Respectfully submitted,

**WOLF POPPER LLP**

/s/ Robert C. Finkel
Robert C. Finkel
Joshua W. Ruthizer
Matthew Insley-Pruitt
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
rfinkel@wolfpopper.com
jruthizer@wolfpopper.com
minsleypruitt@wolfpopper.com

*Attorneys for Movant and Proposed Lead Counsel for the Class*

10