UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT GLICK, Individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON,<br><br>　　　　　Defendants. | Case No.: 1:22-cv-02604-PKC-MMH<br><br>Hon. Marcia M. Henry |

**ERWIN JAY LACK AND PATRICK L. HAGEMEISTER'S OPPOSITION
TO COMPETING MOTIONS FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND
<u>APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................4

    I.    THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA.....4

    II.    FINANCIAL INTEREST IS MEASURED USING FOUR FACTORS WITH AN EMPHASIS ON RECOVERABLE LOSSES IN THE LITIGATION. ...................................5

    III.    MR. LACK AND MR. HAGEMEISTER ARE THE "MOST ADEQUATE PLAINTIFF" BECAUSE MR. WEEKS DOES NOT MEET THE RULE 23 REQUIREMENTS. ........................................................................................................6

    IV.    THE COURT SHOULD APPOINT MR. LACK AND MR. HAGEMEISTER AS THE CO-LEAD PLAINTIFFS ..................................................................................................9

CONCLUSION ..............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Alpha Venture Capital Partners LP v. Pourhassan*,
  30 F.4th 920 (9th Cir. 2022) ...........................................................................................7

*Andrada v. Atherogenics, Inc.*,
  Nos. 05 Civ. 00061 (RJH); 05 Civ. 1938 (RJH), 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y.
  Apr. 18, 2005) ...........................................................................................................2, 7

*In re Arakis Energy Corp. Sec. Litig.*,
  95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. Apr. 23, 1999) ......................7

*Burnham v. Qutoutiao Inc.*,
  No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752 (S.D.N.Y. Nov. 4, 2020) ..............10

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ............................................................................................5

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018) ......................................................................................................9

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) ......................................................................................10

*Constance Sczesny Trust v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y 2004) ........................................................................................7

*Cook v. Allergan PLC*,
  Nos. 18 Civ. 12089 (CM); 18 Civ. 12219 (CM), 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y.
  Mar. 21, 2019) .....................................................................................................2, 7, 8

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
  No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020) . 2, 6, 7, 8

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) .............................................................................................9

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ......................................................................................10

*Francisco v. Abengoa, S.A.*,
  No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) ..................5

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y 2008) ........................................................................................5

*Glavan v. Revolution Lighting Techs., Inc.*,
  No. 19-CV-0908(JPO), 2019 U.S. Dist. LEXIS 125960 (S.D.N.Y. July 29, 2019) ............. 1, 5

*Hansen v. Ferrellgas Partners, L.P.*,
  No. 06-7840, 2017 U.S. Dist. LEXIS 8145 (S.D.N.Y. Jan. 19, 2017) .................................... 9

*Jiehua Huang v. Airmedia Grp., Inc.*,
  No. 1:15-CV-4966 (ALC), 2015 U.S. Dist. LEXIS 178083 (S.D.N.Y. Nov. 10, 2015) ......... 13

*Kasilingam v. Tilray, Inc.*,
  1:20-CV-03459-PAC, 2020 U.S. Dist. LEXIS 140885 (S.D.N.Y. Aug. 6, 2020) .................. 13

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
  No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) .................. 9

*Lax* v. *First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .............................. 1, 5

*Mustafin v. Greensky, Inc.*,
  No. 18-11071, 2019 U.S. Dist. LEXIS 55296 (S.D.N.Y. Mar. 29, 2019) ............................... 9

*In re Olsten Corp. Securities Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................. 1, 5

*Omdahl v. Farfetch Ltd.*,
  No. 19-CV-8657 (AJN), 2020 U.S. Dist. LEXIS 103935 (S.D.N.Y. June 10, 2020) ............. 13

*Patel v. Reata Pharm., Inc.*,
  549 F. Supp. 3d 559 (E.D. Tex. 2021) ................................................................................. 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................ 13

*Reitan v. China Mobile Games & Ent. Group, Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014) .................................................................................. 10

*Silverberg v. Dryships Inc.*,
  No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563 (E.D.N.Y. Aug. 21, 2018) ..... 9

*Sofran v. Labranche & Co.*,
  220 F.R.D. 398 (S.D.N.Y. 2004) ........................................................................................ 13

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008) .................................................................................. 9

**Statutes**

15 U.S.C. §78u-4 ............................................................................................................. *passim*

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)......................................................................................7

**PRELIMINARY STATEMENT**

The Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities class actions. It instructs courts to appoint as "lead plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u–4(a)(3)(B)(iii)(I). Erwin Jay Lack and Patrick L. Hagemeister are the movants with the largest financial interest in the outcome of the litigation who ***also*** satisfy Rule 23's typicality and adequacy requirements. Therefore, the Court should grant Mr. Lack's and Mr. Hagemeister's motion and approve them and their chosen counsel as co-lead plaintiffs and lead counsel, respectively.

Courts in this District typically evaluate financial interests using the following four factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period...; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period" (the "*Olsten/Lax* factors"). *Glavan v. Revolution Lighting Techs., Inc.,* No. 19-CV-0908(JPO), 2019 U.S. Dist. LEXIS 125960, at *8 (S.D.N.Y. July 29, 2019) (quoting *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 332 (S.D.N.Y. 2005); *see also Lax* v. *First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997); *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). Under these factors, only one other movant has a larger "financial interest" in the litigation than Mr. Lack and Mr. Hagemeister:

| **Movant** | **Gross Shares** | **Net Shares** | **Net Funds Expended** | **Recoverable Losses** |
|---|---|---|---|---|
| Chris Weeks | 23,000 | 23,000 | $ 183,807 | $ 148,484 |
| Erwin Jay Lack and Patrick L. Hagemeister | 25,415 | 11,349 | $228,018.52 | $137,319.46 |
| ~~Justin Podbielski[1]~~ | ~~1,400~~ | ~~1,400~~ | ~~$ 26,702.58~~ | ~~$ 16,961~~ |
| ~~Florent Lilian Janin[2]~~ | ~~900.23~~ | ~~900.23~~ | ~~$ 16,592~~ | ~~$ 10,234~~ |
| ~~Michael Powell[3]~~ | ~~750~~ | ~~750~~ | ~~$ 15,249.20~~ | ~~$ 10,029.20~~ |

*See* ECF Nos. 7-3, 10-3, 12-3, 15-2, and 16-4.

Chris Weeks, the only movant with a larger financial interest in the litigation than Mr. Lack and Mr. Hagemeister, does not meet Rule 23's adequacy requirements. This is because Mr. Weeks or, to be specific, his wife Judy L. Smith who assigned her claims to Mr. Weeks (*see* ECF No. 10-2 at pp. 19) purchased 100% warrants, and no common stock. Case law holds that a movant is atypical if he/she purchases a significant amount of securities other than common stock. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969, at *10 (S.D.N.Y. Dec. 28, 2020) (declining to appoint movant whose losses "overwhelmingly reflect his sale of put options, raising issues of his typicality and adequacy"); *Andrada v. Atherogenics, Inc.*, Nos. 05 Civ. 00061 (RJH); 05 Civ. 1938 (RJH), 2005 U.S. Dist. LEXIS 6777, at *14-16 (S.D.N.Y. Apr. 18, 2005) (same where movant purchased only call options); *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962, at *7

---

[1] On July 19, 2022 counsel for Justin Podbielski filed a notice of non-opposition. *See* ECF No. 19.

[2] On July 13, 2022 counsel for Florent Lilian Janin filed a notice of non-opposition. *See* ECF No. 17.

[3] On July 19, 2022 counsel for Michael Powell filed a notice of non-opposition. *See* ECF No. 18.

(S.D.N.Y. Mar. 21, 2019) (same where more than 60% of movant's losses arose from options trading).

Mr. Lack and Mr. Hagemeister are the movants with the next "largest financial interest" in the litigation once Mr. Weeks is eliminated. With over $132,000 of potentially recoverable losses, Mr. Lack and Mr. Hagemeister have a strong incentive to vigorously represent the class's claims. In addition to having the "largest financial interest" in the Action, Mr. Lack and Mr. Hagemeister make the requisite prima facie showing of adequacy and typicality under Rule 23 for the purposes of triggering the PSLRA's lead plaintiff presumption. Mr. Lack and Mr. Hagemeister have submitted a joint declaration in support of their motion outlining their plans for serving as co-lead plaintiffs and confirming their intent to obtain the largest possible recovery for themselves and the class. *See* Joint Declaration, ECF No. 15-4. Mr. Lack and Mr. Hagemeister are a group of two sophisticated individual investors with over 70 years of investing experience. *Id.* at ¶3-4. Further, they purchased Arqit Quantum Inc. ("Arqit") f/k/a Centricus Acquisition Corp. ("Centricus") securities at different times. *Id.* at ¶8. Mr. Lack purchased Arqit securities in December 2021, while Patrick L. Hagemeister purchased Arqit securities in early September 2021 and toward the end of the Class Period in March 2022. *Id.* at ¶8. Since they purchased Arqit securities at different stages in the Class Period, they are able to represent a broader cross-section of shareholders injured in this Action. *Id.* at ¶8. The losses they suffered are directly attributable to their purchases of Arqit securities on the open market and the damages they sustained as a result thereof. Thus, their claims are exactly the same as every other member of the class. Mr. Lack and Mr. Hagemeister's evidentiary showing on the motion is sufficient to trigger the PSLRA's presumption of "most adequate plaintiff" to serve as co-lead plaintiffs and, as demonstrated below, none of the other

movants will be able to rebut that presumption. Accordingly, Mr. Lack and Mr. Hagemeister respectfully request that their motion be granted in its entirety.

## ARGUMENT

### I. THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA.

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as lead plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

Importantly, and relevant to the motion at bar, if the movant with the "largest financial interest" either fails to "satisf[y] the requirements of Rule 23" or is otherwise at risk of being "subject to a unique defense[]" such that the presumption of "most adequate plaintiff" is rebutted, then that movant is disqualified and the analysis is performed again beginning with the movant

4

with the next "largest financial interest" in the litigation. *See In re Cavanaugh*, 306 F.3d 726, 727 (9th Cir. 2002) ("The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

## II. FINANCIAL INTEREST IS MEASURED USING FOUR FACTORS WITH AN EMPHASIS ON RECOVERABLE LOSSES IN THE LITIGATION.

When deciding among competing lead plaintiff movants, the Court must first determine which investor possesses the largest financial interest and then decide whether they have met the adequacy and typicality requirements of Rule 23. 15 U.S.C. §78u-4 (a)(3)(B)(iii)(I)(bb). In accordance with *In re Olsten Corp. Securities Litig.* and *Lax v. First Merchants Acceptance Corp.*, *supra*, "[c]ourts in this Circuit have traditionally examined . . . (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period . . . ; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period". *Glavan*, 2019 U.S. Dist. LEXIS 125960, at *8; *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y 2008) ("In the absence of explicit guidance, many courts, including courts in this District and in the Eastern District of New York, have adopted a four-factor test first promulgated in *Lax*"). "[C]ourts have consistently held that… the magnitude of the loss suffered, is most significant." *Francisco v. Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *14 (S.D.N.Y. May 24, 2016).

Using these four factors, Mr. Lack and Mr. Hagemeister have the largest financial interest in the litigation after Mr. Weeks, as shown in the following table:

5

| Movant | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Chris Weeks | 23,000 | 23,000 | $ 183,807 | $ 148,484 |
| Erwin Jay Lack and Patrick L. Hagemeister | 25,415 | 11,349 | $228,018.52 | $137,319.46 |
| ~~Justin Podbielski~~ | ~~1,400~~ | ~~1,400~~ | ~~$ 26,702.58~~ | ~~$ 16,961~~ |
| ~~Florent Lilian Janin~~ | ~~900.23~~ | ~~900.23~~ | ~~$ 16,592~~ | ~~$ 10,234~~ |
| ~~Michael Powell~~ | ~~750~~ | ~~750~~ | ~~$ 15,249.20~~ | ~~$ 10,029.20~~ |

*See* ECF Nos. 7-3, 10-3, 12-3, 15-2, and 16-4.

## III. MR. LACK AND MR. HAGEMEISTER ARE THE "MOST ADEQUATE PLAINTIFF" BECAUSE MR. WEEKS DOES NOT MEET THE RULE 23 REQUIREMENTS.

Mr. Weeks fails to satisfy the typicality prong of Rule 23 because he or, to be specific, his wife Judy L. Smith (*See* ECF No. 10-2 at pp. 19) purchased 100% warrants, and not common stock. Case law holds that a movant is atypical if he/she purchases a significant amount of securities other than common stock. *See Di Scala*, 2020 U.S. Dist. LEXIS 242969, at *10 (declining to appoint movant whose losses "overwhelmingly reflect his sale of put options, raising issues of his typicality and adequacy"). The *Di Scala* case is informative. In that case, competing movants (Honggui Qu and Pinchas Dan Danino) challenged the typicality and adequacy of the movant with the alleged largest financial loss (Edmund Jin). Qu and Danino argued that Jin was atypical because 82% of his losses came from options-related transactions. Several questions were raised, including 1) whether losses arising from Jin's sale of put options would qualify him as member of a class of investors who purchased or otherwise acquired UCO securities from March 6, 2020 and April 27, 2020, inclusive, and 2) whether Jin was motivated by the same market incentives as class members who traded shares on the open market. The Court held that,

6

"[u]ndoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification. Accordingly, because factual issues unique to Jin 'would likely threaten to become the focus of the litigation,' the Court declines to appoint Jin lead plaintiff." *Di Scala*, 2020 U.S. Dist. LEXIS 242969, at *10-11 (internal citations omitted). The court in *Cook* came to a similar conclusion when it refused to appoint a movant (Ge Zhou) with over 60% of claimed losses as a result of options trading. The *Cook* court held that Zhou's claims were atypical of the average stock holder's claim under Rule 23. Citing *Andrada,* the court stated that appointing Zhou lead plaintiff "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *Cook* , 2019 U.S. Dist. LEXIS 51962, at *7 (internal quotation and citation omitted). Each of the aforementioned factors raises issues specific to Mr. Weeks, making him atypical.

The facts at hand are similar to the *Di Scala* and *Cook* cases. Here, Mr. Weeks' wife purchased 100% warrants in an action being brought on behalf of a class that is predominantly composed of common stockholders. Although the *Di Scala* and *Cook* cases focus on options, the analyses should also be applied to the use of warrants. "Warrants are similar to stock options in that they entitle the warrant-holder to purchase shares of stock of a specified company at a specific exercise price, usually within a specified time period." *Alpha Venture Capital Partners LP v. Pourhassan*, 30 F.4th 920, 923 n.2 (9th Cir. 2022) (citing Black's Law Dictionary, Warrant (11th ed. 2019)). This is no different than how options function and, therefore, subjects Mr. Weeks to the same unique defenses and typicality concerns as the option holders in the cases cited above. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y 2004) ("[lead plaintiff movant] is correct that some courts have dismissed securities fraud claims asserted by option

7

holders, where their losses resulted from alleged omissions."); *In re Arakis Energy Corp. Sec. Litig.*, 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *9 (E.D.N.Y. Apr. 23, 1999) ("The Second Circuit has yet to address the issue of whether option traders have standing to assert Rule 10b-5 claims against companies that issue the common stock underlying the options. And, as defendants concede, the law in this area is unsettled.").

In sum, while the proposed class in this case consist of common stockholders and warrant holders, the fact remains that common stockholders will comprise the overwhelming majority of the class. On September 3, 2021, after Arqit completed its business combination with Centricus, "there were 110,073,430 ordinary shares outstanding" compared to only "14,891,640 warrants outstanding." *See* Arqit Annual Report, Form 20-F, dated Sept. 10, 2021, p. 8. Thus, the warrant holders at most make up less than 15% of the total class. Given the inherent differences between Arqit's common stock and warrants (which effectively operated as a call option with an exercise price at $11.50 per share), Mr. Weeks is not typical of the vast majority of the proposed class and, therefore, cannot fairly and adequately serve as the lead plaintiff. Looking to the precedent set forth by the *Di Scala* and *Cook* courts, Mr. Weeks is atypical, and this Court should rule in the same way. *See Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("However, like in *Cook* and *Di Scala*, the fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class. And while Massar did trade in both common stock and options during the Class Period, his losses arose exclusively from his options; in fact, Massar profited from his common-stock investments. This material gain in common stocks makes Massar's trading practices during the Class Period functionally the same as an investor who traded only in options and materially different from the putative class consisting largely of common stockholders.").

## IV. THE COURT SHOULD APPOINT MR. LACK AND MR. HAGEMEISTER AS THE CO-LEAD PLAINTIFFS.

As demonstrated above, Mr. Lack and Mr. Hagemeister have the largest financial interest once Mr. Weeks is disqualified. Mr. Lack and Mr. Hagemeister are a small group of two individual investors with over 70 years of combined investing experience and also satisfy the typicality and adequacy requirements.[4] The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). Mr. Lack and Mr. Hagemeister's claims are typical of those of other Class members because, like other Class members, they purchased Arqit securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Action. *See* Memorandum in Support of Motion, *See* ECF No. 14. Moreover, Mr. Lack and Mr. Hagemeister's claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Kuriakose v. Fed. Home Loan Mortg. Co.,* No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506, at *13-14 (S.D.N.Y. Nov. 24, 2008).

---

[4] As courts within this Circuit and throughout the country have recognized, the PSLRA expressly endorses the appointment of a group of class members as lead plaintiff where, as here, the group is small and therefore presumably cohesive and when there has been a showing of a willingness and ability to manage the litigation. 15 U.S.C. §78u-4(a)(3)(B)(i)-(iii); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388 (S.D.N.Y. 2008); *see also China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups."); *Mustafin v. Greensky, Inc.*, No. 18-11071, 2019 U.S. Dist. LEXIS 55296, at *15 (S.D.N.Y. Mar. 29, 2019) ("[T]he PLSRA...expressly permits 'a group of persons' to be appointed lead plaintiff."); *Silverberg v. Dryships Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563, at *24 (E.D.N.Y. Aug. 21, 2018); *Hansen v. Ferrellgas Partners, L.P.*, No. 06-7840, 2017 U.S. Dist. LEXIS 8145, at *12-13 (S.D.N.Y. Jan. 19, 2017) ("[A]s the statute makes clear, groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff.").

To satisfy the adequacy requirement at this stage of the proceedings, Mr. Lack and Mr. Hagemeister must make a preliminary showing that "(1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) [they have] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Mr. Lack and Mr. Hagemeister have shown that their choice of counsel, Levi & Korsinsky, LLP, is qualified, experienced, and able to conduct the litigation. *See* ECF. No. 15-5 (Levi & Korsinsky firm resume). This will ensure the vigorous and adequate prosecution of the Class's claims. *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,* 269 F.R.D. 291, 297 (S.D.N.Y. 2010). In addition, Mr. Lack and Mr. Hagemeister have no conflicts with other Class Members. ECF No. 14 at pp. 7; *Reitan v. China Mobile Games & Ent. Group, Ltd.,* 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014). Moreover, not only is there no evidence of any antagonism between Mr. Lack and Mr. Hagemeister's interests and those of the Class, but Mr. Lack and Mr. Hagemeister have a significant and compelling interest in prosecuting the Action based on the large financial losses they have suffered as a result of the wrongful conduct alleged in the Action. *Burnham v. Qutoutiao Inc.,* No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at *6-7 (S.D.N.Y. Nov. 4, 2020).

Finally, Mr. Lack and Mr. Hagemeister have further demonstrated their adequacy by submitting a joint declaration in support of their Motion. *See* Joint Declaration, ECF No. 15-4. Mr. Lack currently resides in Victoria, Texas and possesses a bachelor's degree in business. *Id.* at ¶3. He is currently the president of a security company involved in alarms and guard services for 28 years and has had over 100 employees. *Id.* at ¶3. He considers himself to be a sophisticated investor and has been investing for 40 years. *Id.* at ¶3. Mr. Hagemeister currently resides in Bend, Oregon

and possesses a Bachelor of Arts degree in business administration from California State College. *Id.* at ¶4. He is currently retired, but prior to that, he was an air traffic controller with the Federal Aviation Administration for 32 years. *Id.* at ¶4. Further, he has experience hiring and overseeing attorneys for estate planning matters *Id.* at ¶4. He considers himself to be a sophisticated investor and has been investing for approximately 30 years. *Id.* at ¶4.

On Thursday, June 30, 2022, Mr. Lack and Mr. Hagemeister participated in a conference call with each other and counsel to discuss the allegations and the strength of the claims against defendants; a strategy for prosecuting the Action; the role of the lead plaintiff and the lead plaintiff selection and litigation process; the benefits that the class would receive from the leadership by investors like Mr. Lack and Mr. Hagemeister; a shared desire to achieve the best possible result for the class; their interests in prosecuting the case in a collaborative manner; attorney's fees; and the actions that they will take to continue to ensure that the claims will be zealously and efficiently litigated. *Id.* at ¶7. They both decided to work together in order to collaborate and exercise joint decision making. *Id.* at ¶8. Furthermore, Mr. Lack and Mr. Hagemeister purchased Arqit securities at different times. *Id.* at ¶8. Mr. Lack purchased Arqit securities in December 2021, while Mr. Hagemeister purchased Arqit securities in early September 2021 and toward the end of the Class Period in March 2022. *Id.* at ¶8. Due to the fact that they purchased Arqit securities at different stages in the Class Period, they are able to represent a cross-section of shareholders injured in this Action. *Id.* at ¶8. They agree to work collaboratively to represent all Arqit shareholders who suffered damages during the Class Period and to ensure that the Class achieves the largest recovery possible. *Id.* at ¶8.

Mr. Lack and Mr. Hagemeister each understand that, if appointed, they would act in the best interests of the Class during the course of the litigation to provide effective representation and

11

to ensure that Lead Counsel effectively litigates the Action. *Id.* at ¶9. If appointed as co-lead plaintiffs, they agree to actively manage the prosecution of the Action including reviewing documents, having joint calls, discussing through email any developments, participating in discovery, and exercising joint decision-making to execute a strategy to maximize the recovery of the entire Class. *Id.* at ¶9. They are confident in their ability to reach joint decisions regarding litigation matters and will use consensus decision making to maximize the recovery for the Class. *Id.* at ¶9. However, if ever there is a disagreement between them that cannot be resolved, Mr. Lack will have the deciding vote given his relative larger financial interest in the Action. *Id.* at ¶9.

Through supervision of their chosen counsel, Levi & Korsinsky, Mr. Lack and Mr. Hagemeister will ensure that the Action is prosecuted for the benefit of the Class in an efficient and effective manner. *Id.* at ¶11. They will direct counsel to prosecute the Action in such a way to achieve a fair result for all members of the Class. *Id.* at ¶11. Mr. Lack and Mr. Hagemeister have implemented communication procedures to ensure that they can quickly communicate and make decisions on short notice. *Id.* at ¶11. Mr. Lack and Mr. Hagemeister understand that they may call for a meeting or conference call at any time, including on an emergency basis if necessary. *Id.* at ¶11. They understand that meetings, conference calls, and communications may be conducted without counsel. *Id.* at ¶11. Mr. Lack and Mr. Hagemeister agree to contact one another when necessary to facilitate the best interests of the Class and to prosecute the Action, and do not foresee any problems communicating with one another or staying abreast of the progress of the litigation. *Id.* at ¶11.

Mr. Lack and Mr. Hagemeister, therefore, are the movants for lead plaintiff that have the largest financial interest in the Action and otherwise meet the requirements of Rule 23. Accordingly, Mr. Lack and Mr. Hagemeister are entitled to the presumption that they are the "most

adequate plaintiff[s]" and that they should be appointed as co-lead plaintiffs. 15 U.S.C §78u-4(a)(3)(B)(iii)(II). Once the presumption is triggered, the Court must focus on the presumptive lead plaintiff alone. *See Kasilingam v. Tilray, Inc.,* 1:20-CV-03459-PAC, 2020 U.S. Dist. LEXIS 140885, at *5-6 (S.D.N.Y. Aug. 6, 2020); *Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (citing *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). This presumption may be rebutted only upon ***proof*** by a class member that they "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C §78u-4(a)(3)(B)(iii)(II); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (internal quotation and citation omitted); *see also Omdahl v. Farfetch Ltd.,* No. 19-CV-8657 (AJN), 2020 U.S. Dist. LEXIS 103935, at *6 (S.D.N.Y. June 10, 2020) ("[t]his presumption may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'"); *Jiehua Huang v. Airmedia Grp., Inc.,* No. 1:15-CV-4966 (ALC), 2015 U.S. Dist. LEXIS 178083, at *6-7 (S.D.N.Y. Nov. 10, 2015) ("'speculative and hypothetical' allegations should not prevent the appointment of a lead plaintiff"). This the other movants have not, and cannot, do.

## CONCLUSION

For the reasons set forth above and in the opening motion papers, Mr. Lack and Mr. Hagemeister respectfully request that this Court: (1) appoint them as Co-Lead Plaintiffs for the Class in the Action; and (2) approve Levi & Korsinsky, LLP as Lead Counsel for the Class.

*[Signature on following page]*

| | |
|---|---|
| Dated: July 19, 2022 | Respectfully Submitted, |
| | **LEVI & KORSINSKY, LLP** |
| | By: */s/ Adam M. Apton*<br>Adam M. Apton<br>55 Broadway, 10th Floor<br>New York, NY 10006<br>Tel: (212) 363-7500<br>Fax: (212) 363-7171<br>Email: aapton@zlk.com |
| | *Lead Counsel for Erwin Jay Lack and Patrick L. Hagemeister, and [Proposed] Lead Counsel for the Class* |