UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT GLICK, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>   v.<br><br>ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON,<br><br>   Defendants. | No. 1:22-cv-02604-PKC-MMH |

**CHRIS WEEKS' MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**WOLF POPPER LLP**
Joshua W. Ruthizer
Robert C. Finkel
Matthew Insley-Pruitt
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600
jruthizer@wolfpopper.com
rfinkel@wolfpopper.com
minsleypruitt@wolfpopper.com

*Attorneys for Movant and Proposed Lead Counsel for the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION .......................................................................................................... 1

II.   ARGUMENT .................................................................................................................. 1

      A.    Weeks Should Be Appointed Lead Plaintiff ........................................................ 3

            1.    Weeks has the Largest Financial Interest in the Relief Sought by the Class ........................................................................................................ 4

            2.    Weeks Satisfies the Requirements of Rule 23 ........................................... 5

      B.    The Competing Motions Should Be Denied ......................................................... 6

III.  CONCLUSION ............................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
No. 20-2805-cv,
2022 U.S. App. LEXIS 1271 (2d Cir. Jan. 18, 2022) .................................................. 2

*Cushman v. Fortress Biotech, Inc.*,
20-CV-5767(KAM)(RLM), 2021 U.S. Dist. LEXIS 256466 (E.D.N.Y. Apr. 19, 2021) ........... 8

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................................... 2

*Jonathan Tan v. NIO Inc.*,
No. 19 Civ. 1424 (NGG) (VMS),
2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020) ......................................... 7, 8

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ...................................................................... 7, 8

*Lax v. First Merchants Acceptance Corp.*,
No. 97 Civ. 2715,
1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997) ............................................ 1

*In re Olsten Corporation Securities Litigation*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................ 1, 2

*Rauch v. Vale S.A.*,
378 F. Supp. 3d 198 (E.D.N.Y. 2019) ..................................................................... 2, 5

*Skeels v. Piedmont Lithium Inc.*,
21-CV-4161 (LDH) (PK), 2022 U.S. Dist. LEXIS 30705 (E.D.N.Y. Feb. 4, 2022) .................. 3

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ........................................................................ 8

*Vladimir v. Bioenvision, Inc.*,
No. 07 Civ. 6416 (SHS)(AJP),
2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007) .......................................... 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................. 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................... 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ........................................................................... 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (aa)-(bb ................................................................................. 4

15 U.S.C. §78u-4(e)(1) ............................................................................................................ 9

**<u>Rules</u>**

Rule 23(a) ................................................................................................................................. 6

## I.    <u>INTRODUCTION</u>

On July 5, 2022, Chris Weeks ("Weeks") filed a timely motion under the PSLRA seeking (1) appointment of Weeks as Lead Plaintiff and (2) approval of Weeks' selection of Wolf Popper LLP as Lead Counsel for the class.  Five other investors filed four competing motions for appointment as Lead Plaintiff the same day: (1) Michael Powell ("Powell"), ECF No. 5; (2) Justin Podbielski ("Podbielski"), ECF No. 11; (3) Erwin Jay Lack ("Lack") and Patrick L. Hagemeister ("Hagemeister"), ECF No. 13; (4) and Florent Lilian Janin ("Janin"), ECF No. 16.  Weeks clearly should be appointed Lead Plaintiff.

The PSLRA specifies that the presumptive lead plaintiff in a securities class action is the movant with the largest financial interest that also meets the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  With $148,484 in LIFO losses, Weeks has the largest financial interest in this action of any class member seeking appointment as Lead Plaintiff for the Class Period alleged in the *Glick* action.  Five other investors moved for appointment as lead plaintiff, but three of these (who are no longer seeking appointment) had less than $17,000 in stated losses.  The final two movants (Lack and Hagemeister) have combined losses that are smaller than Weeks', and their losses are even smaller when considered individually.  Weeks remains the movant with the largest financial interest under the *Olsten- Lax* standards.

## II.    <u>ARGUMENT</u>

As stated in Weeks' opening Memorandum, courts in this Circuit have adopted a four-factor test, first promulgated in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997), and later in *In re Olsten Corporation Securities Litigation*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (the "*Olsten-Lax* Factors"), to assess a plaintiff's financial interest:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*In re Olsten Corp.*, 3 F.Supp.2d at 295 (citation omitted); *see also Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 208 (E.D.N.Y. 2019) ("In assessing the financial interests of parties competing for lead plaintiff status, the Court will generally consider" the four Olsten-Lax factors.).

The *Glick* complaint alleges a class period of September 7, 2021, through April 18, 2022, inclusive, with a single disclosure date of April 18, 2022.  ECF No. 1 at ¶ 1, 37, 38.  The class includes investors in Arqit securities, *id.* at ¶ 1; the common stock of Arqit declined $2.57 per share on April 18, *id.* at ¶ 38, while the publicly traded warrants declined $1.45 the same day.[1]

In addition to calculating loss according to the *Olsten-Lax* factors using classic LIFO losses, Courts in the Second Circuit often "disaggregate" losses caused by "disclosures of the truth behind the alleged misstatements" from losses that result from other factors, such as "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events" pursuant to the Supreme Court's ruling in *Dura Pharmaceuticals*.  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 20-2805-cv, 2022 U.S. App. LEXIS 1271, at *4 (2d Cir. Jan. 18, 2022) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005)).  For example, Judge Kuo recently reaffirmed this practice when finding movants were ineligible for appointment because they suffered no losses

---

[1] *See* www.google.com/finance/quote/ARQQW:NASDAQ.

under *Dura*. *Skeels v. Piedmont Lithium Inc.*, 21-CV-4161 (LDH) (PK), 2022 U.S. Dist. LEXIS 30705 (E.D.N.Y. Feb. 4, 2022).

While the certifications of the movants have not all provided *Dura* loss calculations, this can be calculated by multiplying the number of securities held on the sole disclosure date in the *Glick* complaint (April 18, 2021) by the related decline in price at that time (*i.e.*, $1.45 for warrants and $2.47 for common stock). The following chart summarizes the positions of the original six individual movants, including a column for *Dura* losses (with losses rounded to the nearest dollar).

| Movant | Number of Securities Purchased | Net Securities Purchased | Net Funds Expended | LIFO Loss | *Dura* Loss |
|---|---|---|---|---|---|
| Weeks | 23,000 | 23,000 | $183,807 | $148,484 | $33,350 |
| Powell | 750 | 750 | $15,249 | $10,029 | $1,853 |
| Podbielski | 1,400 | 1,400 | $26,702 | $16,961 | $3,458 |
| Lack[2] | 6,000 | 6,000 | $128,460 | $86,743 | $14,820 |
| Hagemeister | 19,209 | 5,349 | $98,476 | $49,494 | $13,212 |
| Janin | 900.23 | 900.23 | $16,592 | $10,234 | $2,224 |

In addition to asserting the largest financial interest of any individual movant, Weeks readily satisfies the typicality and adequacy requirements of Rule 23 and is perfectly situated to represent all class members.

### A.    Weeks Should Be Appointed Lead Plaintiff

In determining which movant is the most adequate plaintiff, the PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff ... is the person or group of persons that ... in the determination of the court, has the largest financial interest in the relief sought by the class; and…otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[2] As discussed below, Lack and Hagemeister have provided no evidence that they are related or that they coordinated their investments.

3

Satisfying each requirement of the PSLRA, Weeks respectfully submits that he is the presumptive "most adequate plaintiff." Weeks has complied with the PSLRA procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements. Moreover, Weeks is a sophisticated investor with the resources, knowledge, and motivation to adequately oversee counsel and ensure that the class's claims are vigorously and efficiently prosecuted. *See* Declaration of Weeks, ECF No. 10-2.

Weeks' claims are also typical of the claims of other members of the proposed class, because, like the rest of the class, he purchased publicly traded Arqit securities at prices inflated by Defendants' alleged omissions of material fact, suffered harm thereby, and seek to recover damages.

The presumption, once triggered in Weeks' favor, may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (aa)-(bb). Given that no "proof" has been—or can be— offered to rebut Weeks' presumptive status, Weeks should be appointed Lead Plaintiff and the competing motions should be denied.

1.     **Weeks has the Largest Financial Interest in the Relief Sought by the Class**

Based on the movants' respective submissions to the Court, it is indisputable that Weeks suffered the largest losses in connection with his Class Period transactions in Arqit securities as illustrated in the chart above. Weeks is seeking appointment of lead plaintiff pursuant to an assignment from his wife, July L. Smith. During the Class Period, Smith purchased 23,000 publicly traded stock warrants in her Rollover IRA; expended $183,807 in purchasing those warrants; retained all of her warrants as of the end of the Class Period; and suffered a total LIFO

loss of approximately $148,484 when she sold her 23,000 warrants on April 22, 2022 for gross proceeds of $35,323. In addition, her *Dura* losses were approximately $33,350 (*i.e.*, 23,000 warrants x $1.45 decline on April 18, 2022 = $33,350).

### 2. Weeks Satisfies the Requirements of Rule 23

"In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Rauch*, 378 F. Supp. 3d at 209. "Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Id.* at 210 (quotation and citation omitted). Weeks' claims are typical of those of the purported class. Smith purchased publicly-traded Arqit securities during the Class Period, at prices alleged to be artificially inflated as a result of the defendants' alleged materially misleading statements concerning Arqit's business. Smith suffered damages when the truth was revealed, and possesses claims against Arqit and certain of its officers and directors under the federal securities laws. Because Weeks' claims arise from the same events and course of conduct as the class claims, Weeks satisfies the typicality requirement of Rule 23(a)(3).

"Adequacy of a proposed lead plaintiff turns on whether that plaintiff will fairly and adequately protect the interests of the class." *Rauch*, 378 F. Supp. 3d at 210 (citation and quotation omitted). "In analyzing the adequacy requirement in the context of appointing lead plaintiff, courts consider: (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." *Id.* (citation and quotation omitted).

Weeks is an adequate representative. Weeks' claims are not antagonistic or in conflict with those of the class. Weeks is not subject to any unique defenses. Further, Weeks' $148,484 loss means he has sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the class, whose interests align directly with his own. Weeks has retained Wolf Popper to act as counsel, and Wolf Popper is experienced in securities litigation having successfully litigated securities actions before this Court. *See* Weeks' Opening Brief, ECF No. 9, at 9-10 (reviewing accomplishments).

Because Weeks' claims are typical of those of the class and Weeks will adequately represent the class, Weeks satisfies the third criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

In sum, Weeks is the presumptively most adequate plaintiff and should be appointed Lead Plaintiff. Weeks timely filed a motion seeking appointment as Lead Plaintiff, has the largest financial interest in the relief sought by the class, and satisfies the requirements of Rule 23(a) of the Federal Rules of Federal Procedure.

### B.      The Competing Motions Should Be Denied

As noted above each movant's claimed losses are smaller than those suffered by Weeks, and no "proof" exists to rebut Weeks' presumptive status as the most adequate plaintiff under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption). Accordingly, under the PSLRA's sequential process, the competing movants' motions for lead plaintiff must be denied. *See Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS)(AJP), 2007 U.S. Dist. LEXIS 93470, at *21-22 (S.D.N.Y. Dec. 21, 2007) ("Once the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone

6

and be limited to determining whether he satisfies the other statutory requirements.") (citation and quotation marks omitted).[3]

Movants Lack and Hagemeister allege losses that are smaller than Weeks even if they are improperly grouped together: $136,237 of LIFO losses for Lack combined with Hagemeister, as compared to Weeks' LIFO loss of $148,484. Similarly, their combined *Dura* loss as measured by the decline in Arqit securities on the disclosure date ($28,032) is still lower than Weeks' losses ($33,350).

However, the Court should reject any effort to combine their losses because they are two unrelated plaintiffs that have been grouped together. ECF No. 13. While the PSLRA permits a "group of persons" to be appointed as lead plaintiff, this court and courts in the Southern District of New York have routinely rejected similar lawyer-driven groupings of lead plaintiffs. *See Jonathan Tan v. NIO Inc.*, No. 19 Civ. 1424 (NGG) (VMS), 2020 U.S. Dist. LEXIS 36623, at *11 (E.D.N.Y. Mar. 3, 2020) (rejecting application of an unnatural group represented by the same firm representing Lack and Hagemeister here); *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015). In determining whether a proposed group will function in a sufficiently cohesive manner to permit its appointment as lead plaintiff, courts consider: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *See Cushman v. Fortress Biotech, Inc.*, 20-CV-5767(KAM)(RLM), 2021 U.S. Dist. LEXIS 256466, at *14 (E.D.N.Y. Apr.

---

[3] Movants Powell, Podbielski, and Janin each alleged losses of less than $17,000. Each one submitted a notice of non-opposition. ECF No. 17, 18, 19.

19, 2021) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008)).

In support of their motion for appointment of lead plaintiff, Lack and Hagemeister submitted a joint declaration establishing that the two movants who lived in different states were first introduced to each other by their counsel and confirmed that they lacked a pre-litigation relationship. ECF 15-4, ¶ 6; *see also NIO*, 2020 U.S. Dist. LEXIS 36623, at *11; *Khunt*, 102 F. Supp. 3d at 533 (declining to appoint proposed group as lead plaintiff where they "effectively admit[ted] to having no pre-litigation relationship . . . [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call.").[4] Further, Lack and Hagemeister pursued vastly different investing strategies. Hagemeister was an active day trader who sold during the Class Period the vast majority (13,860) of the total shares he purchased during the Class Period (19,209), as well as shorting the stock and trading options. Lack purchased and held throughout the class period 6,000 ordinary Arqit shares. *See* ECF No. 15-4. The statements by Lack and Hagemeister "represent little more than the type of 'conclusory assurances' the courts have repeatedly rejected as inadequate." *NIO*, 2020 U.S. Dist. LEXIS 36623, at *15.[5]

---

[4] Notably, the joint declaration submitted here on behalf of Lax and Hagemeister is substantively identical to the insufficient declaration submitted in *NIO*. *Compare* ECF No. 15-4 *with Jonathan Tan v. NIO Inc.*, No. 19 Civ. 1424 (NGG) (VMS), ECF No. 20-3 (E.D.N.Y. May 13, 2019).

[5] Moreover, Hagemeister's and Lack's losses are vastly inflated. Among other things, Hagemeister includes in his analyses in and out purchases and sales of shares within the class period; and both Hagemeister and Lack inflated their losses by valuing their shares held at the end of the class period at the average price of Arqit common stock during the 90-day period following the end of the class period, or $6.97 per share, when the closing price of Arqit common stock on April 18, 2022 at the end of the class period and following the alleged disclosure of the fraud was $12.49 per share. The PSLRA provides that "the award of damages to the plaintiff ***shall not exceed*** the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. §78u-4(e)(1) (emphasis added). However, that provision was intended to mitigate damages when the price of a security increases, or "bounces back," during the 90-days following the disclosure of fraud (here, the end

8

## III.   CONCLUSION

For the reasons stated above and in his opening brief, Weeks respectfully requests that the

Court: (1) appoint Weeks as Lead Plaintiff; (2) approve their selection of Wolf Popper LLP as

Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: July 19, 2022                                     Respectfully submitted,
       New York, New York

                                              **WOLF POPPER LLP**

                                              */s/ Robert C. Finkel*
                                              Robert C. Finkel
                                              Joshua W. Ruthizer
                                              Matthew Insley-Pruitt
                                              845 Third Avenue, 12th Floor
                                              New York, New York 10022
                                              Telephone: (212) 759-4600
                                              Facsimile: (212) 486-2093
                                              rfinkel@wolfpopper.com
                                              jruthizer@wolfpopper.com
                                              minsleypruitt@wolfpopper.com

                                              *Attorneys for Movant and Proposed Lead Counsel for the Class*

---

of the class period).  It was not intended to increase losses when the security continues to decline during the 90-days following the disclosure of fraud.