**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT GLICK, Individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 1:22-cv-02604-PKC-MMH |
| ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON, | Hon. Marcia M. Henry |
| Defendants. | |

**ERWIN JAY LACK AND PATRICK L. HAGEMEISTER'S REPLY**
**TO COMPETING MOTIONS FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND**
**APPROVAL OF SELECTION OF COUNSEL**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT................................................................................................................................2

    I.    MR. WEEKS CANNOT SERVE AS THE LEAD PLAINTIFF BECAUSE HE IS ATYPICAL AND SUBJECT TO A UNIQUE DEFENSE. ................................................2

    II.    MR. LACK AND MR. HAGEMEISTER ARE THE "MOST ADEQUATE PLAINTIFFS" TO SERVE AS LEAD PLAINTIFF. ............................................................6

CONCLUSION..............................................................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*Alpha Venture Capital Partners LP v. Pourhassan,*
30 F.4th 920 (9th Cir. 2022) ......................................................................................................4

*Andrada v. Atherogenics, Inc.,*
Nos. 05 Civ. 00061 (RJH); 05 Civ. 1938 (RJH), 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y.
Apr. 18, 2005) ........................................................................................................................2, 3

*In re Arakis Energy Corp. Sec. Litig.,*
95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. Apr. 23, 1999) ......................4

*Constance Sczesny Trust v. KPMG LLP,*
223 F.R.D. 319 (S.D.N.Y 2004) ................................................................................................4

*Cook v. Allergan PLC,*
No. 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019)... 2, 3, 4, 5

*Darquea v. Jarden Corp.,*
2008 U.S. Dist. LEXIS 17747 (S.D.N.Y. Mar. 6, 2008) ...........................................................3

*Di Scala v. ProShares Ultra Bloomberg Crude Oil,*
No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020) . 1, 3, 4, 5

*Gross v. AT&T Inc.,*
No. 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 128615 (S.D.N.Y. July 31, 2019)...........1, 5

*In re MetLife Demutualization Litig.,*
229 F.R.D. 369 (E.D.N.Y. 2005) ...............................................................................................3

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.,*
63 F. Supp. 3d 394 (D. Del. 2014) .............................................................................................7

*Patel v. Reata Pharm., Inc.,*
549 F. Supp. 3d 559 (E.D. Tex. 2021) .......................................................................................5

*Rodriguez v. Draftkings Inc.,*
2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021).......................................................3

*Schaffer v. Horizon Pharma PLC,*
No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. June 27, 2016).............1, 5

**Statutes**

15 U.S.C. § 78u-4(a) .............................................................................................................2, 7

**Other Authorities**

Definition of Day Trading, *Investor.gov*, U.S. Securities and Exchange Commission, https://www.investor.gov/introduction-investing/investing-basics/glossary/day-trading (last accessed July 25, 2022)................................................................................................7

## PRELIMINARY STATEMENT

Out of the five movants who initially filed motions for lead plaintiff, only two remain: (1) Erwin Jay Lack and Patrick L. Hagemeister; and (2) Chris Weeks. All other movants have withdrawn their motions.[1] Thus, the only issue left for the Court to decide is whether Mr. Lack and Mr. Hagemeister should be appointed as co-lead plaintiffs due to the fact that Mr. Weeks does not meet Rule 23's adequacy requirements. Mr. Weeks or, to be specific, his wife Judy L. Smith who assigned her claims to Mr. Weeks (*see* ECF No. 10-2 at pp. 19), purchased 100% warrants, and no common stock. This fact makes him subject to a disqualifying "unique defense." For the reasons stated in their opposition and reiterated below, Mr. Lack and Mr. Hagemeister's motion should be granted.

A "unique defense" need not be guaranteed, disqualification is appropriate even if the defense could *potentially* be an issue. *See Schaffer v. Horizon Pharma PLC,* No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175, at *10 (S.D.N.Y. June 27, 2016) ("many courts have rejected appointments of lead plaintiffs based on potential risks."); *see also Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 128615, at *6 (S.D.N.Y. July 31, 2019) ("Before disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed."). Mr. Weeks' "unique defense" certainly meets this threshold.

Case law holds that a movant is atypical if he/she purchases a significant amount of securities other than common stock. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969, at *10 (S.D.N.Y. Dec. 28, 2020) (declining

---

[1] Movants Justin Podbielski, Florent Lilian Janin, and Michael Powell each filed notices of non-opposition. *See* ECF Nos. 17, 18 and 19.

to appoint movant whose losses "overwhelmingly reflect his sale of put options, raising issues of his typicality and adequacy"); *Andrada v. Atherogenics, Inc.*, Nos. 05 Civ. 00061 (RJH); 05 Civ. 1938 (RJH), 2005 U.S. Dist. LEXIS 6777, at *14-16 (S.D.N.Y. Apr. 18, 2005) (same where movant purchased only call options); *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962, at *7 (S.D.N.Y. Mar. 21, 2019) (same where more than 60% of movant's losses arose from options trading).

The class should not be subjected to the risks presented by Mr. Weeks. He is an atypical class representative susceptible to a unique defense, while Mr. Lack and Mr. Hagemeister stand ready, willing and able to serve as co-lead plaintiffs. Indeed, Mr. Lack and Mr. Hagemeister have the next "largest financial interest" in the litigation once Mr. Weeks is eliminated. With over $137,000 of potentially recoverable losses (*See* ECF No. 15-2), and without being subject to any sort of "unique defense," Mr. Lack and Mr. Hagemeister satisfy the typicality and adequacy requirements of Rule 23 and are by far the "most adequate plaintiff" to serve as co-lead plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Therefore, the Court should grant Mr. Lack and Mr. Hagemeister's motion and approve them and their chosen counsel as co-lead plaintiffs and lead counsel, respectively.

**ARGUMENT**

**I.    MR. WEEKS CANNOT SERVE AS THE LEAD PLAINTIFF BECAUSE HE IS ATYPICAL AND SUBJECT TO A UNIQUE DEFENSE.**

By purchasing 100% warrants and no common stock, Mr. Weeks is subject to a "unique defense" that disqualifies him from meeting Rule 23's adequacy requirements. Where a potential lead plaintiff appears "subject to" a unique defense, he or she is ineligible to represent the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). This is because the "unique defense" will "divert attention"

2

away from the issues common to the class and "distract" the focus of the litigation. *See In re MetLife Demutualization Litig.*, 229 F.R.D. 369, 374 (E.D.N.Y. 2005) ("The presence of unique defenses undermines typicality in that representative members who are subject to unique defenses may threaten to become the focus of the litigation [and] divert attention from the substance of the basic claim.") (internal citations and quotations omitted); *Darquea v. Jarden Corp.,* 2008 U.S. Dist. LEXIS 17747, at *12 (S.D.N.Y. Mar. 6, 2008) ("A plaintiff, subject to a unique defense is not a proper class representative where the unique defense might distract the litigation from the underlying claim of wrongdoing."); *Rodriguez v. Draftkings Inc.*, 2021 U.S. Dist. LEXIS 219489, at *26-27 (S.D.N.Y. Nov. 12, 2021) ("This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may divert attention from the substance of the basic claim, and class members are entitled to be represented by someone unhindered by such distractions.") (internal citations and quotations omitted).

Although Mr. Weeks mentions his wife's warrant purchases in his opposition brief (*see* ECF No. 21 pp. 4-5), he fails to disclose that warrant holders only make up less than 15% of the total class.[2] Based on this information, Mr. Weeks would be considered an atypical movant since the majority of the securities he purchased were securities other than common stock. *See Di Scala*, 2020 U.S. Dist. LEXIS 242969, at *10 (declining to appoint movant whose losses "overwhelmingly reflect his sale of put options, raising issues of his typicality and adequacy"); *Andrada*, 2005 U.S. Dist. LEXIS 6777, at *14-16 (same where movant purchased only call options); *Cook*, 2019 U.S. Dist. LEXIS 51962, at *7 (same where more than 60% of movant's

---

[2] On September 3, 2021, after Arqit completed its business combination with Centricus, "there were 110,073,430 ordinary shares outstanding" compared to only "14,891,640 warrants outstanding." *See* Arqit Annual Report, Form 20-F, dated Sept. 10, 2021, p. 8 (Supp. Apton Decl., Ex. A).

losses arose from options trading). Although the *Di Scala* and *Cook* cases focus on options, the analyses should be applied to the use of warrants. "Warrants are similar to stock options in that they entitle the warrant-holder to purchase shares of stock of a specified company at a specific exercise price, usually within a specified time period." *Alpha Venture Capital Partners LP v. Pourhassan*, 30 F.4th 920, 923 n.2 (9th Cir. 2022) (citing Black's Law Dictionary, Warrant (11th ed. 2019)). Given the similarities between options and warrants, Mr. Weeks would be subject to the same unique defenses and typicality concerns as the option holders in the cases cited above. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y 2004) ("[lead plaintiff movant] is correct that some courts have dismissed securities fraud claims asserted by option holders, where their losses resulted from alleged omissions."); *In re Arakis Energy Corp. Sec. Litig.*, 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *9 (E.D.N.Y. Apr. 23, 1999) ("The Second Circuit has yet to address the issue of whether option traders have standing to assert Rule 10b-5 claims against companies that issue the common stock underlying the options. And, as defendants concede, the law in this area is unsettled.").

The warrants at issue here create specific issues beyond those that ordinarily exist for movants who purchase options. This is because the exercise price of Arqit's warrants were $11.50. Arqit explained its warrants as follows: "The warrants, which entitle the holder to purchase one ordinary share at an exercise price of $11.50 per share, will become exercisable on February 8, 2022."[3] The trading price of Arqit stock, however, was *above* $11.50/share for *every* day of the Class Period except *one* (*i.e.*, the first day of the Class Period on September 7, 2021).[4] Thus, even though Mr. Weeks could have exercised his warrants at any time after February 8, 2022 for $11.50,

---

[3] *See* Arqit Annual Report, Form 20-F, dated Sept. 10, 2021, p. 7 (Supp. Apton Decl., Ex. A).

[4] *See* Historical Stock Prices, Yahoo! Finance (Supp. Apton Decl., Ex. B).

which was below the market price at that point, he declined to do so. Consequently, his trading strategy will clearly be a focus of the litigation and, as such, a distraction and vulnerability for the Class.

Given the inherent differences between Arqit's common stock and warrants (which effectively operated as a call option with an exercise price at $11.50 per share), Mr. Weeks is not typical of the vast majority of the proposed class and, therefore, cannot fairly and adequately serve as the lead plaintiff. Looking to the precedent set forth by the *Di Scala* and *Cook* courts, Mr. Weeks is atypical, and this Court should rule in the same way. *See Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("some courts have held that lead-plaintiff movants are atypical of or inadequate to represent a class largely consisting of common shareholders when a substantial portion of their losses are based on options […] like in *Cook* and *Di Scala*, the fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class.").

At the lead plaintiff stage of the litigation it does not need to be proven with 100% certainty that Mr. Weeks will be subject to a unique defense. A "unique defense" need not be guaranteed, disqualification is appropriate even if the defense could *potentially* be an issue. *See Schaffer,* 2016 U.S. Dist. LEXIS 83175, at *10 ("many courts have rejected appointments of lead plaintiffs based on potential risks."); *see also Gross*, 2019 U.S. Dist. LEXIS 128615, at *6 ("Before disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed."). While the proposed class in this case consists of purchasers of "Arqit securities" (Dkt. No. 1, ¶1), the fact remains that common stockholders will comprise the overwhelming majority of the class. Mr. Weeks is not typical of the majority of the proposed class and, therefore, cannot fairly and adequately serve as the lead

plaintiff. Since there is a potential risk that Mr. Weeks could be subject to a unique defense due to his purchase of warrants rather than common stock, Mr. Weeks should be considered an inadequate lead plaintiff.

## II.   MR. LACK AND MR. HAGEMEISTER ARE THE "MOST ADEQUATE PLAINTIFFS" TO SERVE AS LEAD PLAINTIFF.

Mr. Lack and Mr. Hagemeister have the largest financial interest once Mr. Weeks is disqualified. Mr. Lack and Mr. Hagemeister satisfy the typicality and adequacy requirements too. Mr. Lack and Mr. Hagemeister's claims are typical of those of other Class members because, like other Class members, they purchased Arqit securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Action. *See* Memorandum in Support of Motion, ECF No. 14. Mr. Lack and Mr. Hagemeister have also made a preliminary showing of adequacy. Mr. Lack and Mr. Hagemeister's choice of counsel, Levi & Korsinsky, LLP, is qualified, experienced, and able to conduct the litigation. *See* ECF. No. 15-5 (Levi & Korsinsky firm resume). Finally, Mr. Lack and Mr. Hagemeister have further demonstrated their adequacy by submitting a joint declaration in support of their Motion, attesting that they are sophisticated investors with approximately 70 years of investing experience and agree to act in the best interests of the Class during the course of the litigation to provide effective representation and to ensure that Lead Counsel effectively litigates the Action. *See* Joint Declaration, ECF No. 15-4. Furthermore, Mr. Lack and Mr. Hagemeister purchased Arqit securities at different times. *Id.* at ¶8. Mr. Lack purchased Arqit securities in December 2021, while Mr. Hagemeister purchased Arqit securities in early September 2021 and toward the end of the Class Period in March 2022. *Id.* at ¶8. Given that they purchased Arqit securities at different

times throughout the Class Period, Mr. Lack and Mr. Hagemeister will be able represent a more diverse group of shareholders injured in this Action. *Id.* at ¶8.

Mr. Lack and Mr. Hagemeister, therefore, are the movants for lead plaintiff that have the largest financial interest in the Action and otherwise meet the requirements of Rule 23. Accordingly, Mr. Lack and Mr. Hagemeister are entitled to the presumption that they are the "most adequate plaintiff" and that they should be appointed as co-lead plaintiffs. 15 U.S.C § 78u-4(a)(3)(B)(iii)(II). [5]

## CONCLUSION

For the reasons set forth above and in the opening motion papers, Mr. Lack and Mr. Hagemeister respectfully request that this Court: (1) appoint them as Co-Lead Plaintiffs for the Class in the Action; and (2) approve Levi & Korsinsky, LLP as Lead Counsel for the Class.

*[Signature on Following Page]*

---

[5] Mr. Weeks also makes the claim that Mr. Hagemeister is an "active day trader." Dkt. No. 21, p. 8. This is not true. "Day traders rapidly buy, sell and short-sell stocks throughout the day in the hope that the stocks continue climbing or falling in value for the seconds or minutes they hold the shares, allowing them to lock in quick profits." *See* Definition of Day Trading, *Investor.gov*, U.S. Securities and Exchange Commission, https://www.investor.gov/introduction-investing/investing-basics/glossary/day-trading (last accessed July 25, 2022). Courts do not disqualify movants like Mr. Hagemeister unless the trading data shows without question that he or she is, in fact, a day trader as that term is defined. *See, e.g., OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 410 (D. Del. 2014) ("Absent actual evidence that plaintiff did not rely on market price, the characterization of the presumptive lead plaintiff as a 'day trader' does not prove that the presumptive lead plaintiff 'is subject to a unique defense to rebut the presumption.'"). Mr. Hagemeister purchased shares throughout the Class Period and held them for days, weeks, and months at a time. Indeed, Mr. Hagemeister held 5,349 shares of Arqit stock at the end of Class Period. *See* Dkt. No. 13-2.

Dated: July 26, 2022

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Erwin Jay Lack and*
*Patrick L. Hagemeister, and [Proposed]*
*Lead Counsel for the Class*