UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT GLICK, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON,<br><br>        Defendants. | No. 1:22-cv-02604-PKC-MMH |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF CHRIS WEEKS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, <u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**WOLF POPPER LLP**
Robert C. Finkel
Joshua W. Ruthizer
Matthew Insley-Pruitt
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600
rfinkel@wolfpopper.com
jruthizer@wolfpopper.com
minsleypruitt@wolfpopper.com

*Attorneys for Movant and Proposed Lead Counsel for the Clas*s

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.   INTRODUCTION .................................................................................................................... 1

II.  ARGUMENT ............................................................................................................................ 3

    A.   Weeks is the Most Adequate Plaintiff and Should be Appointed Lead Plaintiff ............. 3

        1.   Weeks Has the Largest Financial Interest ................................................................. 3

        2.   Weeks Has Made a Preliminary Showing of Adequacy and Typicality ................... 3

            a)   Weeks' Claims Are Typical of the Class ........................................................... 3

            b)   Weeks is an Adequate Representative of the Class ........................................... 4

        3.   Lack and Hagemeister Have Failed to Submit Proof to Rebut the Presumption of Most Adequate Plaintiff in Favor of Weeks ............................................................ 5

            a)   Weeks Can Represent a Class Comprised of Purchasers of Arqit Warrants and Arqit Common Stock ........................................................................................ 5

            b)   Lack and Hagemeister's Arguments Concerning Options Investors Are Misplaced and Unsuccessful .............................................................................. 6

    B.   Wolf Popper Should be Appointed Lead Counsel ......................................................... 10

III. CONCLUSION ....................................................................................................................... 10

i

# TABLE OF AUTHORITIES

## Cases

*In re Cendant Corp. Litig.*,
   60 F. Supp. 2d 354 (D.N.J. 1999) ................................................................................. 8

*Cook v. Allergan PLC*,
   No. 18-cv-12089 (CM), 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) .............. 8, 9

*Cosby v. KPMG, LLP*,
   No. 3:16-CV-121-TAV-DCP, 2021 U.S. Dist. LEXIS 87324 (E.D. Tenn. May 7, 2021) ......... 7

*Di Scala v. ProShare Ulta Bloomberg Crude Oil*,
   No. 20-cv-5865 (NRB), 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020). ............... 8

*Flora v. Hain Celestial Grp., Inc.*,
   No. 16-cv-4581 (ADS)(SIL), 2017 U.S. Dist. LEXIS 85517 (E.D.N.Y. June 5, 2017)............. 7

*Goldstein v. Puda Coal, Inc.*,
   827 F. Supp. 2d 348 (S.D.N.Y. 2011) ........................................................................... 7

*Hom v. Vale, S.A.*,
   No. 15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863 (March 7, 2016) ............................. 5, 7

*Moskowitz v. Lopp*,
   128 F.R.D. 624 (E.D. Pa. 1989)................................................................................... 7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ...................................................................................... 6

*In re Oxford Health Plans, Inc. Secs. Litig.*,
   199 F.R.D. 119 (S.D.N.Y. 2001) ................................................................................. 7

*Patel v. Reata Pharm., Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021)........................................................................... 9

*Rauch v. Vale S.A.*,
   378 F. Supp. 3d 198 (E.D.N.Y. 2019) ........................................................................ 3, 4

*In re Schering-Plough Corp.*,
   No. 8-397 (DMC)(JAD), 2012 U.S. Dist. LEXIS 138078 (D.N.J. Sep. 25, 2012) ................... 8

*Teran v. Subaye, Inc.*,
   No. 11-cv-2614 (NRB), 2011 U.S. Dist. LEXIS 105774 (S.D.N.Y. Sept. 16, 2011) ................ 5

*In re Turquoise Hill Res. Ltd.,*
   No. 20-cv-8585 (LJL), 2021 U.S. Dist. LEXIS 8840 (S.D.N.Y. Jan. 15, 2021) ....................... 5

**<u>Statutes</u>**

15 U.S.C. § 78c ............................................................................................................................. 3

15 U.S.C. § 78u-4 ...................................................................................................................... 1, 5

## I.    INTRODUCTION

The PSLRA[1] instructs that in a federal securities class action, a court **shall** appoint as lead plaintiff the movant who "has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). The presumption in favor of appointing this "most adequate plaintiff" as the lead plaintiff can only be rebutted "upon proof" that the movant "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Only two lead plaintiff movants remain: Chris Weeks and the artificially created "group" of Erwin Jay Lack and Patrick L. Hagemeister. Weeks' wife (Judy Smith, who assigned her claims to Weeks) purchased 23,000 Arqit stock warrants on the open market during the September 7, 2021 through April 18, 2022 Class Period at an average price of $7.90 per warrant, for a total cost of $183,807, and incurred out-of-pocket losses of $148,484. Lack and Hagemeister concede that Weeks has the largest financial interest among the lead plaintiff movants. ECF 20 at 1-2, 5-6.

Weeks has also made the required *prima facie* showing that he satisfies the adequacy and typicality requirements of Rule 23. Weeks' claims arise from the same course of events as the Class of purchasers of Arqit securities (which includes Arqit common stock and warrants); Weeks has no conflicts with the Class; Weeks has retained qualified counsel; and Weeks' significant financial interest ensures that he will vigorously prosecute the claims.

Weeks is therefore entitled to the presumption of most adequate plaintiff, and the only question before the Court is whether Lack and Hagemeister have submitted proof sufficient to rebut the presumption. They have not.

---

[1] All capitalized terms, unless otherwise defined, have the same meaning as in Weeks' opening motion and opposition. ECF 8-10, 21. Similarly, all emphasis is added and citations and quotations are omitted unless indicated.

Lack and Hagemeister have submitted no proof that Weeks is subject to unique defenses or will not adequately represent the Class. Rather, they attempt to rebut the presumption in favor of Weeks by arguing that Weeks is not typical or adequate because Smith purchased Arqit warrants. These arguments are misplaced, rely on distinguishable precedent concerning sellers of stock options, and should be rejected. For example, put options, which were at issue in the decisions cited by Lack and Hagemeister, are very different from the Arqit warrants purchased by Smith. The Arqit warrants were issued directly by Arqit, are long-term securities with a September 3, 2026 expiration date, and are exercisable at $11.50 per share. Profit is made when the price of the warrants increases, and losses sustained when the price decreases. Put options are highly leveraged instruments, customarily of short-term duration. Sellers of put options obtain no benefit if the price of the underlying common shares increases above the put option strike price, and can suffer losses well in excess of the sale prices of the securities if the price of the underlying common stock falls below the put options' exercise price. Moreover, there is currently only one class of warrants outstanding, whereas there are currently tens of different Arqit options contracts (puts and calls) outstanding with various expiration dates and strike prices.

Weeks is not subject to unique defenses, and is an adequate representative and typical of other Class members who purchased Arqit's publicly traded common stock or warrants on the open market. Investors in either security stood to make more money if the ordinary shares increased in value and to lose money if the ordinary shares decreased in value. Also, whoever is appointed lead plaintiff will be responsible for prosecuting both the common stock and warrant claims equally.

Weeks therefore should be appointed lead plaintiff on behalf of the Class, and Weeks' selection of Wolf Popper to act as lead counsel should be approved.

## II.  ARGUMENT

### A.  Weeks is the Most Adequate Plaintiff and Should be Appointed Lead Plaintiff

#### 1.  Weeks Has the Largest Financial Interest

Lack and Hagemeister concede that Weeks has the largest financial interest in the relief sought by the Class. ECF 20 at 1 ("only one other movant [Weeks] has a larger 'financial interest' in the litigation than Mr. Lack and Mr. Hagemeister."), 5 ("Mr. Lack and Mr. Hagemeister have the largest financial interest in the litigation after Mr. Weeks.").

#### 2.  Weeks Has Made a Preliminary Showing of Adequacy and Typicality

"In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 209 (E.D.N.Y. 2019). Weeks has made such a preliminary showing and is the most adequate plaintiff.

##### a)  Weeks' Claims Are Typical of the Class

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Id.* at 210. In this litigation, the alleged "Class" includes all persons who purchased or otherwise acquired ***Arqit securities*** during the Class Period (ECF 1, ¶1), and ***is not*** limited to purchasers of common stock. Weeks' wife, Smith, purchased publicly-traded NASDAQ-listed Arqit warrants during the Class Period. The Exchange Act defines security to include warrants. 15 U.S.C. § 78c(a)(10). Weeks is therefore a member of the Class.

Weeks' claims are also typical of the Class's claims. Smith purchased her publicly-traded Arqit securities on the open market during the Class Period at prices alleged to be artificially inflated as a result of the defendants' alleged materially misleading statements concerning Arqit's business. Smith suffered damages, similar to investors in common stock, when the truth was

revealed, and possesses claims against Arqit and certain of its officers and directors under the federal securities laws. Notably, this is the same argument in favor of typicality raised by Lack and Hagemeister. *See* ECF 20 at 9 ("Mr. Lack and Mr. Hagemeister's claims are typical of those of other Class members because, like other Class members, they purchased ***Arqit securities***"—not simply common stock—"during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Action.").

### b)   Weeks is an Adequate Representative of the Class

"Adequacy of a proposed lead plaintiff turns on whether that plaintiff will fairly and adequately protect the interests of the class." *Rauch*, 378 F. Supp. 3d at 210. Weeks has shown that he meets all three requirements of adequacy.

First, as discussed below (§ II.B) and in Weeks' opening memorandum of law (ECF 9 at 9-10), Weeks' choice of counsel, Wolf Popper, is highly experienced in the area of securities litigation and class actions, and is well-qualified to prosecute this class action.

Second, Weeks has no interests that are antagonistic to the Class. Weeks' claims are based on the allegations that the defendants violated the Exchange Act and SEC Rule 10b-5 by issuing materially false and misleading statements during the Class Period. These are the same claims brought by (and will require the same proof as) the rest of the Class, whether the Class member purchased common stock or warrants; both securities were issued pursuant to the same prospectuses; the warrants are long term securities that do not expire until September 3, 2026 and are exercisable at $11.50 a share; and warrant holders and ordinary shareholders have a similar if not identical interest in the appreciation of the underlying ordinary shares.

Third, Weeks also possess a sufficient interest to insure vigorous prosecution of the Class's claims. Smith suffered a LIFO loss of $148,484 and a *Dura* loss of $33,350, greater than any other

4

loss asserted by any other lead plaintiff movant. Weeks has a sufficient interest in the outcome of the litigation to ensure vigorous advocacy on behalf of the Class.

### 3. Lack and Hagemeister Have Failed to Submit Proof to Rebut the Presumption of Most Adequate Plaintiff in Favor of Weeks

Once established, the presumption that Weeks is the most adequate plaintiff can only be rebutted "upon proof" that Weeks "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). Speculation and conjecture are not sufficient. *See, e.g., In re Turquoise Hill Res. Ltd.,* No. 20-cv-8585 (LJL), 2021 U.S. Dist. LEXIS 8840, at *24-25 (S.D.N.Y. Jan. 15, 2021) ("While presumptive lead plaintiffs may be rejected on the basis of risks of unique defenses, such risks must be supported by proof and rise above the level of mere speculation."); *Teran v. Subaye, Inc.*, No. 11-cv-2614 (NRB), 2011 U.S. Dist. LEXIS 105774, at *28 (S.D.N.Y. Sept. 16, 2011) ("baseless conjecture cannot serve as 'proof' of [movant's] inadequacy."). Lack and Hagemeister have provided no proof, and their arguments are misplaced and unconvincing.  Their arguments should be rejected.

### a) Weeks Can Represent a Class Comprised of Purchasers of Arqit Warrants and Arqit Common Stock

Lack and Hagemeister argue that Weeks is not typical of the proposed class because warrant holders only comprise 15% of the class. ECF 20 at 8. However, "[a] lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement." *Hom v. Vale, S.A.*, No. 15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863, at *18 (March 7, 2016) (appointing investor in preferred American Depository Receipts ("ADRs") as lead plaintiff to represent class that included purchasers in common ADRs, and refusing to appoint a co-lead plaintiff who purchased common ADRs). Rather, "[t]he typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Id.*

5

Lack and Hagemeister provide no proof, as required by the PSLRA, as to why an investment in publicly traded Arqit warrants disqualifies Weeks from acting as a lead plaintiff in a class action on behalf of purchasers of Arqit securities. Lack and Hagemeister simply make a conclusory statement that there are "inherent differences between Arqit's common stock and warrants." ECF 20 at 8. This is not proof to rebut the presumption in favor of Weeks.

Even so, this argument cannot rebut the presumption in favor of Weeks. Both the warrants and ordinary shares were issued by Arqit pursuant to the same prospectus and listed on the NASDAQ. All class members purchased Arqit securities (which includes Arqit warrants and common stock) during the Class Period at prices alleged to be artificially inflated as a result of the defendants' alleged materially false and misleading statements concerning Arqit's business. Smith, just like other Class Members, suffered damages when the truth was revealed, and possesses claims against Arqit and certain of its officers and directors under the federal securities laws. Smith's claims arise from the same events and course of conduct as the Class's claims. Thus, Weeks satisfies the typicality requirement of Rule 23(a)(3). *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 148-149 (2d Cir. 2012) (finding that plaintiff has Rule 23 standing to assert the claims of purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates, because such claims implicate "the same set of concerns" as plaintiff's claims).[2]

**b) Lack and Hagemeister's Arguments Concerning Options Investors Are Misplaced and Unsuccessful**

Lack and Hagemeister also argue that warrants are similar to options, and that some courts have declined to appoint investors in options as lead plaintiff. This argument fails for a number of

---

[2] Notably, Hagemeister shorted Arqit's common stock in March 2022. ECF 15-1. Hagemeister's investment therefore would ***benefit*** from the ***decline*** in the price of Arqit's stock.

reasons. First, Smith did not invest in Arqit options, and warrants and options are not identical. Notably, the warrants here were issued directly by Arqit (as opposed to options, which are issued by exchanges and trade between counter-parties). The Arqit warrants are singular, long-term instruments that do not expire until September 3, 2026, unlike options, which are manifold with different strike prices and expiration dates, of various lengths of short-term duration.

Second, even if the analogy between warrants and options was correct, which it is not, "investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here, whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct." *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011). Courts, including the Eastern District of New York, have appointed investors in options as lead plaintiffs and class representatives.[3]

Further, if Lack and Hagemeister's arguments are accepted, then an investor in any security other than common stock could never be appointed lead plaintiff in a class action alleging claims on behalf of purchasers of a company's "securities," as investors in common stock would almost always be the majority of any such class. There is no such requirement in the PSLRA. Courts have appointed investors in securities other than common stock as lead plaintiff to represent investors in common stock and vice versa.[4]

---

[3] *See Flora v. Hain Celestial Grp., Inc.*, No. 16-cv-4581 (ADS)(SIL), 2017 U.S. Dist. LEXIS 85517, at *6-7 (E.D.N.Y. June 5, 2017) ("the fact that Rosewood only purchased options during the class period does not rebut the presumption in its favor."); *In re Oxford Health Plans, Inc. Secs. Litig.,* 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives in action proceeding under fraud on the market theory); *Moskowitz v. Lopp,* 128 F.R.D. 624, 631 (E.D. Pa. 1989) (holding that options trader could rely upon the fraud on the market presumption and was an adequate class representative).

[4] *See, e.g., Hom*, 2016 U.S. Dist. LEXIS 28863, at *20 (appointing investor in preferred ADRs as lead plaintiff to represent class that included purchasers in common ADRs); *see also Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2021 U.S. Dist. LEXIS 87324, at *14-16 (E.D. Tenn. May 7, 2021) (certifying class of investors in both common and preferred stock of the defendant

Third, the decisions that Lack and Hagemeister have cited in support of their argument that options investors are atypical involve issues that were factually specific to the movants in those cases. They do not hold that an investor in publicly traded NASDAQ listed warrants (or even options) cannot be appointed lead plaintiff on behalf of a class of investors in all of a company's securities. In *Di Scala v. ProShare Ulta Bloomberg Crude Oil*, Judge Buchwald declined to appoint the presumptive most adequate plaintiff Edmund Jin because his "losses overwhelmingly reflect[ed] his sale of put options," which raised questions about whether he was a member of the alleged class of **purchasers of securities** and whether he "motivated by the same market incentives as class members who traded shares on the open market." No. 20-cv-5865 (NRB), 2020 U.S. Dist. LEXIS 242969, at *10-11 (S.D.N.Y. Dec. 28, 2020). Here, Weeks did not write put options and is clearly a member of the Class. Finally, there are no questions about whether Smith was motivated by the same market incentives as the rest of the Class. Smith purchased the warrants on the open market and held with the goal of the price of Arqit securities increasing, the same incentive as those Class members who purchased common stock. *See* ECF 10-2, ¶2 (Smith purchased Arqit warrants because she and Weeks believed cybersecurity to be "a profitable filed in which to make investments.").

Similarly, in *Cook v. Allergan PLC*, the alleged class was "all investors who purchased or otherwise acquired Defendant Allergan plc common stock between May 9, 2017 and December

---

company); *In re Schering-Plough Corp.*, No. 8-397 (DMC)(JAD), 2012 U.S. Dist. LEXIS 138078, at *31 (D.N.J. Sep. 25, 2012) ("The gravamen of Plaintiffs' allegation is the same whether Lead Plaintiffs purchased common stock, preferred stock, or options."); *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 376 (D.N.J. 1999) ("Plaintiffs may represent purchasers of securities other than common stock because the claims of those purchasers arise from the same alleged fraud as the claims of the common stock purchasers. Where the claims of absentee class members arise out of the same basic allegations of fraud as those of the lead plaintiff, the lead plaintiff may adequately represent the interests of those absentee class members.").

19, 2018, inclusive." No. 18-cv-12089 (CM), ECF 6, ¶1 (S.D.N.Y. Dec. 21, 2018). Judge McMahon declined to appoint lead plaintiff movant Ge Zhou because, as a seller of both puts and calls during the class period who suffered 60% of his losses as a result of options trading, he was not "an investor whose claims will turn out to be typical of the average common stockholder." 2019 U.S. Dist. LEXIS 51962, at *7 (S.D.N.Y. Mar. 21, 2019). Judge McMahon also reasoned that his appointment would likely introduce issues irrelevant to the alleged common stockholder class. *Id.* This is a completely different situation from the case at bar, where the Class is alleged to include purchasers of Arqit securities (both warrants and common stock). Second, Class members who purchased Arqit warrants and common stock have substantially similar if not identical interests—proving violations of the federal securities laws and a decline in the price of the security once the truth was revealed. The extraneous issues the Court identified in *Cook*, including strike price, duration, maturity, and interest rates on multiple option contracts, are not consequential here for singular Arqit warrants, which have a five-year duration. Third, it was argued in *Cook* that Zhou had "self-contradictory and unusual trading patterns" that "render[ed] his claims atypical of those of the average class member," *id.* at *6, which raises the question of a unique trading strategy that was not typical of class of common stockholders. Here, there are no claims that Smith had a unique or atypical trading strategy.[5] Ironically, Hagemeister is the movant who purchased options, not Weeks. ECF 15-1 at 3.

---

[5] Lack and Hagemeister also cite to *Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559 (E.D. Tex. 2021). While the *Patel* Court did find that a lead plaintiff movant who purchased both options and common stock was inadequate to serve as lead plaintiff, the Court also stated that "even if the Court were to conclude that Massar satisfies typicality, thus making him the presumptive lead plaintiff, that presumption would be rebutted because Massar's trading practices subject him to 'unique defenses' concerning damages." *Id.* at 568. Here, no unique defenses or unique issues related to damages to investors in Arqit warrants have been proved or even identified.

### B.   Wolf Popper Should be Appointed Lead Counsel

No lead plaintiff movant has objected to Weeks' request that Wolf Popper be appointed as lead counsel. Wolf Popper is well-qualified to serve as lead counsel. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors in Courts throughout the country, including actions before this Court. *See Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.), ECF 9 at 9-10, ECF 10-4.

## III.   CONCLUSION

For the foregoing reasons, Weeks respectfully requests that this Court: (1) appoint him as lead plaintiff for the Class and (2) approve Wolf Popper LLP as lead counsel for the Class.

Dated:  July 26, 2022                                         Respectfully submitted,
       New York, New York

                                                 **WOLF POPPER LLP**

                                                */s/ Robert C. Finkel*
                                                Robert C. Finkel
                                                Joshua W. Ruthizer
                                                Matthew Insley-Pruitt
                                                845 Third Avenue, 12th Floor
                                                New York, New York 10022
                                                Telephone: (212) 759-4600
                                                Facsimile: (212) 486-2093
                                                rfinkel@wolfpopper.com
                                                jruthizer@wolfpopper.com
                                                minsleypruitt@wolfpopper.com

                                                *Attorneys for Movant and Proposed Lead Counsel for the Class*

10