UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
ROBERT GLICK, *individually and on behalf of* :
*all others similarly situated*,                                 :
                                                                          :
                                          Plaintiff,        :                    MEMORANDUM AND ORDER
                                                                          :
            -against-                                          :                    22-CV-2604 (PKC)(MMH)
                                                                          :
ARQIT QUANTUM INC. F/K/A CENTRICUS :
ACQUISITION CORP., DAVID WILLIAMS, :
NICK POINTON, CARLO CALABRIA,           :
STEPHEN CHANDLER, MANFREDI           :
LEFEBVRE D'OVIDIO, VERALINN              :
JAMIESON, GARTH RITCHIE, and              :
STEPHEN WILSON,                                      :
                                                                          :
                                          Defendants.   :
                                                                          :
-------------------------------------------------------- x
**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Robert Glick ("Glick"), on behalf of himself and others similarly situated,

brought this securities class action against Defendants Arqit Quantum Inc. ("Arqit"), formerly

known as Centricus Acquisition Corp. ("Centricus"); David Williams; Nick Pointon; Carlo

Calabria; Stephen Chandler; Manfredi Lefebvre D'ovidio; VeraLinn Jamieson; Garth Ritchie;

and Stephen Wilson, alleging violations of the Securities Exchange Act of 1934 (the

"Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15

U.S.C. § 78u-4 *et seq.* (the "PSLRA"). (*See generally* Compl., ECF No. 1.)[1]  Five movants

requested appointment as lead plaintiff and of their respective attorneys as lead counsel,

pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended

---

[1] All citations to documents filed on ECF refer to the ECF document number and pagination "___
of ___" unless otherwise indicated.

by the PSLRA.  Three of the five movants subsequently withdrew their motions, which the Court denied as moot.  (ECF Nos. 17, 18, 19; Order, Jan. 5, 2023.)

Before the Court are the remaining motions of Chris Weeks ("Weeks") and co-movants Erwin Jay Lack ("Lack") and Patrick L. Hagemeister ("Hagemeister") to be appointed as lead plaintiff, and to appoint their chosen counsel as lead counsel.  (Weeks' Mot., ECF No. 8; Lack & Hagemeister's Mot., ECF No. 13.)  For the reasons stated below, Weeks' motion is **granted**, Weeks is appointed lead plaintiff, and Wolf Popper LLP is appointed lead counsel.  Lack and Hagemeister's motion is **denied**.

## I.    <u>BACKGROUND</u>

### A.    **Factual Allegations**

As alleged, Arqit is a London-based cybersecurity company that developed QuantumCloud, a unique quantum encryption technology that purportedly protects users from current and future forms of cyberattacks.  (Compl., ECF No. 1 ¶¶ 7, 23.)  Centricus was a special purpose acquisition corporation ("SPAC") formed for merging with Arqit.  (*Id.* ¶ 22.)  Williams was the Chief Executive Officer of Arqit and founder of Arqit Limited, Arqit's predecessor entity.  (*Id.* ¶ 9.)  Pointon was the Chief Financial Officer of Arqit.  (*Id.* ¶ 10.)  When Arqit and Centricus merged, D'ovidio and Ritchie were the Chairman and CEO, respectively, of Centricus.  (*Id.* ¶¶ 13, 15.)  After the merger, D'ovidio, Ritchie, Calabria, Chandler, Jamieson, and Wilson were directors of Arqit.  (*Id.* ¶¶ 9–16.)

According to the Complaint, between May 28, 2021 and July 30, 2021, Arqit filed pre-merger registration and prospectus forms with the U.S. Securities and Exchange Commission ("SEC") containing materially false and misleading statements.  Specifically, the proxy statement and prospectus included misstatements and material omissions regarding the

scalability of Arqit's product given modern telecommunications protocols and infrastructure, its future business prospects, and relevant risk factors affecting Arqit.[2]  (*See id.* ¶¶ 24–29.) Centricus's shareholders approved the merger with Arqit on August 31, 2021.  (*See id.* ¶ 1.)

Arqit shares began trading on the public market on September 7, 2021.  (*Id.* ¶ 30.)[3] The Complaint further alleges that Arqit's post-merger SEC filings on September 10, 2021 and December 16, 2021 repeated the false statements in the registration documents without corrections.  (*Id.* ¶¶ 31–35.)  In sum, Plaintiff alleges that these statements failed to disclose that:

> (1) Arqit's proposed encryption technology would require widespread adoption of new protocols and standards of for telecommunications; (2) British cybersecurity officials questioned the viability of Arqit's proposed encryption technology in a meeting in 2020; (3) the British government was not an Arqit customer but, rather, providing grants to Arqit; (4) Arqit had little more than an early-stage prototype of its encryption system at the time of the Merger; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

(*Id.* ¶ 36.)

On April 18, 2022, the *Wall Street Journal* published an article that discredited Arqit's representations about its current revenue sources and the usefulness of its technology, among other issues.  (*Id.* ¶ 37.)  Arqit's share price fell by 17% on the same day.  (*Id.* ¶ 38.)  Plaintiff alleges that these revelations caused a precipitous drop in Arqit's stock price, causing significant losses and damages to Plaintiff and other members of the putative class.

---

[2] The Complaint also asserts that Defendants included false statements in press releases during an unspecified period, but does not include examples of any such press releases.  (*See* Compl., ECF No. 1 at 1 & ¶¶ 46, 71.)

[3] Plaintiff purchased Arqit's securities on or about the following day.  (Compl. Schedule A, ECF 1-1 at 2.)

**B.     Procedural History**

Glick filed this action on May 6, 2022, seeking to recover compensable damages caused by Defendants' alleged violations of the Exchange Act.  (*See generally* Compl., ECF No. 1.) The purported class consists of: (1) any person or entity who purchased or otherwise acquired Arqit securities between September 7, 2021 through April 18, 2022, and (2) all Centricus shareholders as of August 31, 2021, who were entitled to vote on the merger at the shareholders meeting that day.  (*Id.* ¶ 1.)  On the same day that Glick filed the Complaint, notice for the class action was posted on *Business Wire*.  (Finkel Decl. Ex. A (*Business Wire* Article), ECF No. 10-1.)

Thereafter, on July 5, 2022, five individual or groups of putative class members moved to be appointed as lead plaintiff(s) and for the Court to approve their chosen counsel as lead counsel: (1) Michael Powell and his counsel Johnson Fistel, LLP  (ECF Nos. 5–7); (2) Weeks and his counsel Wolf Popper LLP ("Wolf Popper") (ECF Nos. 8–10); (3) Justin Podbielski and his counsel The Rosen Law Firm, P.A. (ECF Nos. 11–12); (4) Lack and Hagemeister and their counsel Levi & Korsinsky, LLP  (ECF Nos. 13–15); and (5) Florent Lilian Janin and his counsel Pomerantz LLP. (ECF Nos. 16–17).

Subsequently, three movants (Janin, Powell, and Podbielski) each notified the Court of their non-opposition because they did not have the largest financial interest in the litigation, as required under the PSLRA. (ECF Nos. 17–19.)  Weeks and Lack and Hagemeister filed oppositions to each other's motions and further replies in support of their own motions.  (ECF Nos. 20–23.)  Weeks and Lack and Hagemeister's competing motions remain before the Court.

## II.   DISCUSSION

### A.   Appointment of Lead Plaintiff

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" in securities class actions.   15 U.S.C. § 78u-4(a)(3)(B)(i).   Congress, in enacting the PSLRA, sought to "prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Somogyi v. Organogenesis Holdings Inc.*, No. 21-CV-6845 (DG)(MMH), 2022 WL 3654646, at *2 (E.D.N.Y. Aug. 25, 2022) (citation omitted).

In determining which individual or group is best suited to serve as lead plaintiff(s), courts adopt a two-step inquiry.   *Darish v. N. Dynasty Minerals Ltd.*, Nos. 20-CV-5917 (ENV)(RLM) & 20-CV-6126 (ENV)(RLM), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 111–12 (E.D.N.Y. 2012).   First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   Second, if the court is satisfied that there is a presumptively adequate lead plaintiff, it may then determine whether this presumption of adequacy has been rebutted "upon proof by a member of the purported plaintiff class that the presumptively most

adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### 1.    *Notice and Timely Filing*

Under the PSLRA, a plaintiff who files a securities class action must publish:

> in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).  Even though none of the parties have objected to the adequacy of the notice in this case, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA."  *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH)(SJB), 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898 (SAS), 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005)).

The Court finds that the notice meets the PSLRA's requirements.  The notice was filed in *Business Wire* on May 6, 2022, the same date as in the complaint.  (Finkel Decl. Ex. A (*Business Wire* Article), ECF No. 10-1 at 2.)  The notice summarizes the allegations in the complaint, defines the relevant class period, and advises any potential lead plaintiffs to "move the Court no later than July 5, 2022." (*Id.*)  Courts in this circuit frequently find that publication of the required notice in *Business Wire* serves as sufficient notice for the purposes of the PSLRA.  *See, e.g.*, *White v. Nano-X Imaging Ltd.*, Nos. 20-CV-4355 (WFK)(MMH) & 20-

CV-4528 (RRM)(MMH), 2022 WL 3973838, at *5 (E.D.N.Y. Aug. 10, 2022), *adopted by* 2022 WL 3867750 (E.D.N.Y. Aug. 30, 2022) (noting that *Business Wire* is "a widely-circulated, national, business-[oriented] news reporting wire service."); *Chitturi*, 2020 WL 8225336, at *3 ("*Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published."). Further, both remaining movants filed the instant motions on July 5, 2022, in response to the notice, by the relevant deadline. 15 U.S.C. § 78u-4(a)(3)(A)(i); *Chitturi*, 2020 WL 8225336, at *3.

Accordingly, the Court finds that publication of the notice is sufficient, and that movants' applications are timely.

### 2. *Largest Financial Interest*

The second requirement to support the most adequate plaintiff presumption is whether the movant "in the determination of the court, has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). While the PSLRA does not enumerate the factors courts must consider when assessing whether a movant has the largest financial interest, courts in this circuit generally look to:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Yang v. Trust for Advised Portfolios*, No. 21-CV-1047 (FB)(MMH), 2022 WL 970772, at *3 (E.D.N.Y. Mar. 31, 2022) (citing *In re Gentiva Sec. Litig.*, 281 F.R.D. at 112). "Most crucial to the Court's determination is the fourth factor—the approximate financial loss suffered." *Parot v. Clarivate Plc*, No. 22-CV-1371 (ARR)(RLM), 2022 WL 1568735, at *5 (E.D.N.Y.

May 18, 2022); *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, No. 22-CV-9174 (JPC)(SLC), 2023 WL 1879525, at *3 (S.D.N.Y. Feb. 10, 2023) ("[C]ourts have consistently held that the fourth [factor], the magnitude of the loss suffered, is most significant.") (citation omitted); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) ("[M]ost courts 'place the most emphasis on the last of the four factors: approximate loss suffered by the movant.'") (citation omitted).

The Court finds that Weeks has the largest financial interest. Weeks moves as lead plaintiff because his wife, Judy Smith, assigned to him "all rights, title, and interest . . . in any and all claims . . . arising from violations under federal securities law . . . in connection with transactions of publicly traded securities of [Arqit]." (Finkel Decl. Ex. B, ECF No. 10-2 at 14.)[4] Weeks therefore alleges that, during the class period: (1) Smith purchased and netted a total of 23,000 publicly traded stock warrants in her IRA for approximately $183,807, and (2) incurred losses of approximately $148,484 as a result of Defendants' alleged misrepresentations and/or omissions. (Finkel Decl. Ex. B, ECF No. 10-2 at 3 ¶¶ 2–3.)[5] Lack

---

[4] Where, as here, a "spouse purchased shares of [securities] during the class period and then assigned all rights" to a party, that party has sufficient standing to pursue the claims. *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 511 n.6 (S.D.N.Y. 2016) (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("[A]n assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'")).

[5] Weeks calculates losses based on two methods. The "last in, first out" ("LIFO") methodology "calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale" and is most commonly used in this Circuit. *See Somogyi*, 2022 WL 3654646, at *4 n.2. The second method derives from *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), which held that "a plaintiff in a private securities action can recover only if the plaintiff adequately alleges and proves that the defendant's fraudulent conduct proximately caused the plaintiff's economic loss." *Skeels v. Piedmont Lithium Inc.*, No. 21-CV-4161 (LDH)(PK), 2022 WL 1236797, at *3 (E.D.N.Y. Feb. 4, 2022) (citing *Dura*, 544 U.S. at 345–48.) "Courts in this Circuit, thus, apply *Dura* to adjust LIFO calculations by removing any losses arising from

8

and Hagemeister concede that Weeks has a larger financial interest based on the total recoverable loss. (*See* Lack & Hagemeister's Opp'n Mem., ECF No. 20 at 10–11.)

Accordingly, the Court finds that Weeks has the largest financial interest in the litigation of any putative lead plaintiff.

### 3. *Rule 23 Requirements*

The Court must also determine whether the proposed lead plaintiff "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Darish*, 2021 WL 1026567 at *6. "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements— typicality and adequacy—are satisfied." *Yang*, 2022 WL 970772, at *3 (quoting *Chitturi*, 2020 WL 8225336, at *5); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 30 (E.D.N.Y. 2019) (noting a requirement of "only . . . a preliminary showing of typicality and adequacy at this stage of the litigation") (internal quotations omitted).

"Lead plaintiffs' claims are typical where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420 (PAE), 2020 WL 5548856, at *5 (S.D.N.Y. Sept. 16, 2020) (internal quotations omitted). "Courts in this circuit have clarified, however, that a lead plaintiff's claims need not be identical to the claims of the class, and that similarity of legal theory may control even in the face of differences of fact." *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018) (cleaned up). Weeks

---

securities bought and sold before the defendant's corrective disclosure." *Skeels*, 2022 WL 1236797, at *4 (citing cases). Applying either method, Weeks still has a larger financial interest than Lack and Hagemeister. (*See* Weeks Mem., ECF No. 21 at 7 (chart reflecting higher LIFO loss and *Dura* loss than Lack and Hagemeister).)

meets this requirement because he alleges that, like all members of the purported class, his claims arise from purchasing publicly-traded Arqit securities during the class period (via Smith's assignment) and that Defendants' material misrepresentations and omissions caused the price of the securities to decline sharply, financially damaging him and other investors. (Weeks' Reply Mem., ECF No. 23 at 7–8; Weeks' Opp'n Mem., ECF No. 21 at 9.) "That 'is all that is required to demonstrate typicality at this stage.'" *In re Hebron Tech. Co.*, 2020 WL 5548856, at *5 (quoting *In re Petrobas Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015)).

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the [proposed lead plaintiff] and class [have] a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Yang*, 2022 WL 970772, at *4 (quoting *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT)(RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011), *adopted by* 2011 WL 3511045 (E.D.N.Y. Aug. 10, 2011)).

Weeks also meets the adequacy standard. First, Weeks' selected counsel, Wolf Popper, has demonstrated that it is qualified and has substantial experience litigating securities fraud cases and serving as lead counsel. (*See* Finkel Decl. Ex. D, ECF No. 10-4 at 2–8 (listing multiple cases in which Wolf Popper were appointed lead counsel in securities fraud litigations).) Second, "[c]ourts find that a plaintiff's interests are not antagonistic to the class where, as here, the case is 'based on alleged violations of the Securities Act where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value' as a result of the false or misleading statements." *Skeels*, 2022 WL 1236797, at *6 (quoting *Xiangdong Chen v. X Fin.*, No. 19-CV-

10

6908 (KAM)(SJB), 2020 WL 2478643, at *4 (E.D.N.Y. May 13, 2020)).   Third, Weeks indicates his willingness to vigorously advocate on behalf of the members of the putative class. (*See* Finkel Decl. Ex. B, ECF No. 10-2 at 4 ¶ 5.)  Weeks is a sophisticated investor who, after sustaining significant financial losses, considered his duties as lead plaintiff and is willing to accept them.  (*See* Finkel Decl. Ex. B, ECF No. 10-2 at 3-4 ¶¶ 2–6.)  Because Weeks has the largest financial stake in the outcome of this litigation, he will be motivated to vigorously pursue recovery on behalf of all class members.  *Atanasio*, 331 F.R.D. at 30.  Weeks has made a sufficient showing at this stage of his adequacy to represent the proposed class.

Therefore, because Weeks has the largest financial interest and satisfies the PSLRA Rule 23 requirements, he is entitled to the PSLRA rebuttable presumption as the most adequate lead plaintiff.  *Id.*

### 4. Rebuttal of the Presumption

The presumption in favor of the most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Emerson v. Mut. Fund Series Tr.*, No. 17-CV-2565 (ADS)(GRB), 2018 WL 10667922, at *1 (E.D.N.Y. Jan. 8, 2018).

Lack and Hagemeister argue that Weeks is an atypical class representative subject to "a unique defense" because Weeks (via Smith) purchased "a significant amount of securities other than common stock"—i.e., solely warrants.  (Lack & Hagemeister's Opp'n Mem., ECF No. 20 at 11; Lack & Hagemeister's Reply Mem., ECF No. 22 at 6.)  According to Lack & Hagemeister, "warrant holders make up less than 15% of the total class," thus making Weeks

an atypical representative that courts have routinely rejected.  (Lack & Hagemeister's Reply Mem., ECF No. 22 at 7–8 (citing cases & Apton Dec., ECF No. 22-1 Ex. A).)

The Court is not persuaded.  "[A] lead plaintiff's claims 'need not be identical' to the claims of the class," and "'similarity of legal theory may control even in the face of differences of fact.'"  *Brady*, 324 F. Supp. 3d at 350.   Here, the proposed class members, including Weeks via assignment, purchased Arqit *securities*—not stocks—during the relevant time period, acted in reliance on Defendants' material misrepresentations, and suffered financial losses as a result.  (*See* Compl., ECF No. 1 ¶ 1.)  The factual differences in the securities at issue do not change the theory of liability against Arqit.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (for securities class actions, "in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement"); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 266 (S.D.N.Y. 2019) (finding that movant who purchased a single type of security, "and not any other [defendant] securities, does not bar him from serving as lead plaintiff on behalf of a class comprised of those who bought securities generally"); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14-CV-8495 (RMB), 2015 WL 1345931, at *5 (S.D.N.Y. Mar. 19, 2015) ("[P]laintiffs who . . . purchased certain securities ha[ve] class standing to assert claims on behalf of purchasers of other related securities where the allegedly fraudulent conduct was a nearly identical misrepresentation . . . common to every . . . registration statement.") (cleaned up).

The Court also disagrees that Weeks' warrants should be treated similarly to options and therefore disqualify him as lead plaintiff.  (*See* Lack & Hagemeister's Opp'n Mem., ECF No. 20 at 11–13; Lack & Hagemeister's Reply Mem., ECF No. 22 at 7–8.)   Lack and

Hagemeister rely on *Di Scala v. Proshares Ultra Bloomberg Crude Oil*, No. 20-CV-5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) and *Cook v. Allergn PLC*, No. 18-CV-12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019), but these cases are distinguishable on their facts. In both cases, the courts rejected the proposed lead plaintiffs because their unique transactional activities as third-party options sellers were materially different from purchasers of the defendants' standard securities. *See Di Scala*, 2020 WL 7698321, at *4; *Cook*, 2019 WL 1510894, at *2.[6] Here, no such unusual transactions occurred because Weeks did not purchase or sell third-party options. He (via assignment) purchased warrants issued by Arqit, listed on the NASDAQ, and subject to the same registration statements and prospectus as Arqit stock investors. (Weeks Decl., ECF No. 10-2 at 3 ¶¶ 2–3; Apton Suppl. Decl., ECF No. 22-2 at 4 (noting Arqit that shares *and* warrants are listed on NASDAQ).) Moreover, Weeks' warrants' value is directly impacted by the price of Arqit stock. These facts undermine any argument that he was motivated by different market incentives than class members who traded shares on the open market.[7]

---

[6] Notably, the movant in *Cook* was rejected on other grounds: namely, he was the only individual investor movant, while the other candidates were experienced institutional investors, and he did not have the greatest financial loss. *Cook*, 2019 WL 1510894, at *2-4.

[7] As Weeks correctly notes, even assuming the Court accepted Lack and Hagemeister's arguments, the PSLRA does not require the lead plaintiff in a class action to be only an investor in common stock. *See, e.g.*, *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (rejecting appointment of a "niche" lead plaintiff because "option investors and shareholders are not sufficiently differentiated" where options holders alleged that "defendants made affirmative misrepresentations in [their] public securities filings,"); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 WL 1021819, at *3 (E.D.N.Y. Apr. 27, 1999) ("Because Congress modified the definition of a 'security' in 1982 expressly to include all types of options, and because a complaint alleging intentional misrepresentation satisfies the scienter requirement of a Section 10(b) action, an action by an option holder alleging affirmative misrepresentation falls squarely within the parameters of Section 10(b).") (cleaned up)

In sum, Lack and Hagemeister have not submitted sufficient evidence to rebut the presumption that Weeks is the most adequate plaintiff.

### B.    Approval of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v). "The lead plaintiff's right to select and retain counsel is not absolute."  *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, No. 08-CV-1418 (LDW)(ETB), 2009 WL 10709107, at \*5 (E.D.N.Y. Mar. 9, 2009) (citations omitted), *adopted by* 2009 WL 10750336 (E.D.N.Y. Mar. 16, 2009).  However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class."  *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 211 (E.D.N.Y. 2019); *see also Brady*, 324 F. Supp. at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (internal quotations omitted).   "In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience."  *Darish*, 2021 WL 1026567, at \*8; *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) ("When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience."); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (approving lead counsel selection where the firm had "extensive experience in prosecuting securities fraud actions.").

Weeks argues that "Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and

14

securities fraud class actions on behalf of investors." (Weeks' Mem., ECF No. 9 at 11.) In support of the application, Weeks includes his chosen counsel's detailed resume describing the firm's experience with securities class actions. (Finkel Decl. Ex. D, ECF No. 10-4 at 2– 14.) "Having reviewed [Weeks'] Memorandum of Law, as well as the Finkel Declaration and the firm resume attached as Exhibit D to the Finkel Declaration, I find that Wolf Popper is well qualified to serve as lead counsel in the instant case." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *4 (S.D.N.Y. Apr. 4, 2018); *see also, e.g.*, *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 209 (S.D.N.Y. 2012) (appointing Wolf Popper as lead counsel). The Court therefore approves Weeks' selection of Wolf Popper as lead plaintiffs' counsel.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Chris Weeks' motion for appointment as lead plaintiff and approval of lead plaintiff's counsel at ECF No. 8 is **granted**, Weeks is appointed lead plaintiff, and Wolf Popper LLP is appointed lead counsel. Lack and Hagemeister's motion at ECF No. 13 is **denied**.

<b>SO ORDERED.</b>

Brooklyn, New York
March 31, 2023

                /s/Marcia M. Henry
                MARCIA M. HENRY
                United States Magistrate Judge