**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ROBERT GLICK, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON,

Defendants.

Case No.: 1:22-cv-02604-PKC-MMH

Hon. Pamela K. Chen

### ERWIN JAY LACK AND PATRICK L. HAGEMEISTER'S OBJECTION TO MAGISTRATE JUDGE MARCIA M. HENRY'S ORDER DENYING MOTION FOR LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway, 4th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Jay Lack and Patrick L. Hagemeister and Proposed Lead Counsel for the Class*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

LEGAL STANDARD.............................................................................................................. 4

ARGUMENT .......................................................................................................................... 4

    I.   THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA. ...... 4

    II.  THE CASE LAW REQUIRED MAGISTRATE JUDGE HENRY TO DISQUALIFY MR. WEEKS BECAUSE HE DID NOT PURCHASE ANY ARQIT COMMON STOCK. ................................................................................................................... 6

    III. MR. WEEKS PRESENTS ADDITIONAL COMPLICATIONS FOR THE CLASS DUE TO THE FACT THAT HE MUST RELY ON AN "ASSIGNMENT" TO CLAIM ARTICLE III STANDING TO PURSUE THIS CASE. ................................................... 9

    IV. THE COURT SHOULD APPOINT MR. LACK AND MR. HAGEMEISTER AS THE CO-LEAD PLAINTIFFS............................................................................................ 10

CONCLUSION..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alpha Venture Capital Partners LP v. Pourhassan*,
30 F.4th 920 (9th Cir. 2022) ....................................................................................... 8

*Andrada v. Atherogenics, Inc.*,
No. 05-cv000061 (RJH), 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005).......... 6, 7, 9

*Applestein v. Medivation, Inc.*,
No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sep. 17, 2010).................. 7

*Burnham v. Qutoutiao Inc.*,
No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752 (S.D.N.Y. Nov. 4, 2020).............. 11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................... 5

*China Agritech, Inc. v. Resh,*
138 S. Ct. 1800 (2018) ................................................................................................ 11

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,*
269 F.R.D. 291 (S.D.N.Y. 2010) ................................................................................. 11

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878
(E.D.N.Y. Mar. 2, 2007) .............................................................................. 1, 4, 9

*Cook v. Allergan PLC*,
No. 18-cv-12089 (CM), 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ............. 6, 9

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
No. 20-cv-5865 (NRB), 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020) ........... 6, 9

*Easley v. Cromartie*,
532 U.S. 234 (2001) ..................................................................................................... 4

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 8, 2009) ................ 7

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ..................................................................................... 6

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................... 6

*Hansen v. Ferrellgas Partners, L.P.*,
No. 06-7840, 2017 U.S. Dist. LEXIS 8145 (S.D.N.Y. Jan. 19, 2017) ................................... 12

*In re Hebron Tech. Co. Sec. Litig.*,
2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sep. 16, 2020) .................................................... 11

*In re IMAX Securities Litigation*,
No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) .......................... 10

*Margolis v. Caterpillar, Inc.*,
815 F. Supp. 1150 (C.D. Ill. 1991) ....................................................................................... 7

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018)................. 8

*Mustafin v. Greensky, Inc.*,
No. 18-11071, 2019 U.S. Dist. LEXIS 55296 (S.D.N.Y. Mar. 29, 2019) ............................. 12

*Patel v. Reata Pharm., Inc.*,
549 F. Supp. 3d 559 (E.D. Tex. 2021) ............................................................................... 7, 9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ......................................................................................... 10

*Ri Sau Kuen Chan v. NYU Downtown Hosp.*,
2004 U.S. Dist. LEXIS 16751 (S.D.N.Y. 2004)..................................................................... 4

*Silverberg v. Dryships Inc.*,
No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563 (E.D.N.Y. Aug. 21, 2018) .. 12

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ......................................................................................... 10

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008).................................................................................................. 9

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016)................................................................................................. 10

*Weikel v. Tower Semiconductor, Ltd.*,
183 F.R.D. 377 (D.N.J. 1998)............................................................................................... 7

**Statutes**

15 U.S.C. §78u-4 ......................................................................................................... passim

28 U.S.C. §636............................................................................................................... 1, 4

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ........................................................................ 8

## **PRELIMINARY STATEMENT**

Respectfully, Magistrate Judge Marcia Henry misapplied the relevant case law when deciding to appoint Chris Weeks as the "lead plaintiff" in this class action securities fraud lawsuit instead of Erwin Jay Lack and Patrick L. Hagemeister. The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, requires courts to appoint a lead plaintiff at the outset of every case. According to the statute, the movant with the "largest financial interest" in the outcome of the action will serve as the lead plaintiff unless he or she is atypical of the class or otherwise subject to a unique defense. *Id*. Mr. Weeks, by virtue of the fact that he purchased exclusively warrants and not a single share of common stock, was atypical of the class at large and subject to a unique defense. Pursuant to the relevant case law, Judge Henry should not have appointed him as the lead plaintiff in this lawsuit.

Federal Rule of Civil Procedure 72(a) allows for objections and modifications to non-dispositive magistrate judge orders, such as lead plaintiff orders. *See*, *e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) (vacating magistrate judge order and appointing different movant as lead plaintiff). Reconsideration is appropriate where the magistrate judge's order is "clearly erroneous or contrary to the law." 28 U.S.C. §636(b)(1). Here, Judge Henry's order went against a long line of cases holding that a shareholder cannot be the lead plaintiff in a securities fraud class action lawsuit if he or she has not purchased shares of the common stock at issue in the lawsuit.

Mr. Weeks did not purchase any Arqit common stock. Instead, his wife purchased "warrants" exclusively. Warrants operate similarly to stock options insofar as they vest their owner with the ability to acquire shares of the company's underlying stock in certain circumstances. Numerous cases from around the country, both old and new, hold that a shareholder must have

purchased shares of common stock in order to be an adequate representative of that shareholder class. Mr. Weeks does not meet this basic requirement and, as a result, should not have been appointed as the lead plaintiff.

Mr. Weeks' bid for lead plaintiff was also complicated by the fact that he, individually, did not purchase the warrants in the first place and, therefore, had no Article III standing to pursue the case. Mr. Weeks circumvented this defect by obtaining an "assignment" from his wife, Judy Smith, who was the actual beneficial owner of the warrants. Whether and to what extent Mr. Weeks' "assignment" is valid remains unknown and will most certainly be a point of contention during class certification proceedings. The assignment, on its face, does not identify any consideration given or received by either Mr. Weeks or his wife. Thus, it remains subject to attack as being null and void, thereby jeopardizing the lawsuit and subjecting the class to unnecessary "unique defenses."

Mr. Lack and Mr. Hagemeister meanwhile pose no such risks to the class or the lawsuit. With over $132,000 of potentially recoverable losses, Messrs. Lack and Hagemeister have a strong incentive to vigorously represent the class's claims. In addition, they made the requisite *prima facie* showing of adequacy and typicality under Rule 23 for the purposes of triggering the PSLRA's lead plaintiff presumption. Further, because they purchased Arqit common stock at different times during the Class Period, they can represent a broader cross-section of shareholders injured by Defendants' alleged fraud. Accordingly, Messrs. Lack and Hagemeister respectfully request Judge Henry's decision be modified, and that their motion be granted in its entirety.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Robert Glick filed the complaint on May 6, 2022. Dkt. No. 1. The complaint alleges violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934. *Id*. at ¶2. It asserts

these claims on behalf of a class defined as follows: "(i) all persons or entities who purchased or otherwise acquired Arqit securities between September 7, 2021 and April 18, 2022, inclusive (the "Class Period"); and/or (ii) all holders of Centricus securities as of the record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger between Arqit and Centricus (the "Merger") and entitled to vote on the Merger (the "Class")." *Id.* at ¶1. Being that the complaint alleged claims under the Exchange Act on behalf of a class, the case was and is subject to the PSLRA and its lead plaintiff appointment procedure. *See* 15 U.S.C. §78u-4(a)(3).

On July 5, 2022, Mr. Weeks and Messrs. Lack and Hagemeister filed motions for lead plaintiff. Dkt. Nos. 8 (Weeks), 13 (Lack and Hagemeister). Other shareholders filed motions for lead plaintiff too but subsequently withdrew their motions and/or did not oppose the motions filed by Mr. Weeks or Messrs. Lack and Hagemeister. *See* Dkt. Nos. 17, 18, 19. Thus, the lead plaintiff dispute before Judge Henry was limited to Mr. Weeks and Messrs. Lack and Hagemeister. Mr. Weeks' and Messrs. Lack and Hagemeister's respective financial interests in the case are set forth in the below table:

| **Movant** | **Gross Shares** | **Net Shares** | **Net Funds Expended** | **Recoverable Losses** |
|---|---|---|---|---|
| Weeks | 23,000 | 23,000 | $ 183,807 | $ 148,484 |
| Lack and Hagemeister | 25,415 | 11,349 | $228,018.52 | $137,319.46 |

Dkt. Nos. 10-3, 15-2.

On July 6, 2022, the Court referred the motions for lead plaintiff to Judge Henry.

On January 5, 2023, Judge Henry denied the withdrawn motions for lead plaintiff as moot and indicated that a "separate order regarding the remaining motions [Mr. Weeks and Messrs. Lack and Hagemeister] shall follow."

On March 31, 2023, Judge Henry issued a Memorandum and Order granting Mr. Weeks' motion and appointing him lead plaintiff. Dkt. No. 24 (the "Order"). Although Messrs. Lack and

3

Hagemeister had argued that Mr. Weeks should be disqualified from serving as lead plaintiff because neither he nor his wife had purchased Arqit common stock, Judge Henry rejected this argument. In pertinent part, Judge Henry held that the cases cited by Messrs. Lack and Hagemeister for this argument were "distinguishable on their facts." *Id*. at 13. As explained below, Judge Henry mistakenly misapplied the case law on this issue when choosing to distinguish the cases on their facts.

## LEGAL STANDARD

Rule 72(a) of the Federal Rules of Civil Procedure provides that "[a] party may serve and file objections" to a magistrate judge's non-dispositive pretrial order and that "[t]he district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

"A magistrate judge's findings may be considered 'clearly erroneous' where 'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'" *In re Comverse Tech., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *5-6 (quoting *Easley v. Cromartie*, 532 U.S. 234, 243 (2001)). An order is contrary to law "'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id*. (quoting *Ri Sau Kuen Chan v. NYU Downtown Hosp.*, 2004 U.S. Dist. LEXIS 16751, at *9-11 (S.D.N.Y. 2004)).

## ARGUMENT

### I.    THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA.

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice

4

announcing the class action, class members interested in serving as lead plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

Importantly, and relevant to the dispute at bar, if the movant with the "largest financial interest" either fails to "satisf[y] the requirements of Rule 23" or is otherwise at risk of being "subject to a unique defense[]" such that the presumption of "most adequate plaintiff" is rebutted, then that movant is disqualified and the analysis is performed again beginning with the movant with the next "largest financial interest" in the litigation. *See In re Cavanaugh*, 306 F.3d 726, 727 (9th Cir. 2002) ("The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

**II.     THE CASE LAW REQUIRED MAGISTRATE JUDGE HENRY TO DISQUALIFY MR. WEEKS BECAUSE HE DID NOT PURCHASE ANY ARQIT COMMON STOCK.**

Mr. Weeks is not "typical" of the class and, as a result, should not have been appointed to represent it as the lead plaintiff. "The typicality threshold is satisfied 'where the claims arise from the same conduct from which the other class members' claims and injuries arise.'" *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)). Where, as here, a shareholder purchases securities other than the company's common stock, these purchases "introduce factual issues irrelevant to the stockholder class members" and ultimately "subject[s] the class to unique defenses, causing unnecessary conflicts." *Cook v. Allergan PLC*, No. 18-cv-12089 (CM), 2019 U.S. Dist. LEXIS 51962, at *7 (S.D.N.Y. Mar. 21, 2019); *see also Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20-cv-5865 (NRB), 2020 U.S. Dist. LEXIS 242969, at *10 (S.D.N.Y. Dec. 28, 2020) ("Appointing Jin, whose losses overwhelmingly reflect his sale of put options, raises issues of his typicality and adequacy. . . . Undoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification.).

Judge Henry declined to follow this rule because *Cook* and *Di Scala* involved option sales (as opposed to warrant purchases) and were therefore "distinguishable on their facts." Order at 13. Respectfully, by distinguishing these cases on their facts and disregarding them, Judge Henry overlooked the larger body of case law that *Cook* and *Di Scala* represented. Importantly, both *Cook* and *Di Scala* cite *Andrada v. Atherogenics, Inc.*, No. 05-cv000061 (RJH), 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005), which analyzed the "typicality and adequacy" requirements in the context of a lead plaintiff movant that "*only* purchased call options and not any of the underlying

6

[company] common stock that most putative class members purchased." *Id*. at *14 (emphasis in original).[1] The court disqualified this lead plaintiff movant because "[w]ere South Ferry [the movant] to be appointed lead plaintiff for the entire class, factual issues specific to South Ferry in determining the precise value of the options . . . would likely threaten to become the focus of the litigation." *Id*. at *14-15 (internal quotations omitted).

Numerous cases from around the country, both old and new, stand for the premise that a shareholder who does not buy stock cannot serve as the lead plaintiff or class representative in a shareholder class action lawsuit. The following are several examples:

- *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) (rejecting certification of class representative who had only purchased Euro Options where factual issues regarding value of options and damages would divert focus from the underlying securities litigation);

- *Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150, 1156 (C.D. Ill. 1991) (since option holder's claim was "not typical of stock purchaser's claim," option holder could "only represent a class of option holders, not stock holders");

- *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. May 8, 2009) ("Kleinman traded exclusively in call options, not common stock or ADRs. . . . Kleinman is thus an atypical and inadequate plaintiff, as he would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict");

---

[1] Messrs. Lack and Hagemeister cited *Andrada* in opposition and reply on the underlying motions. *See* Dkt. No. 20 at 2 (opposition brief); Dkt. No. 22 at 2, 3 (reply brief).

- *Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("like in *Cook* and *Di Scala*, the fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class");

- *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *12 (N.D. Cal. Sep. 17, 2010) ("the nature of Slotkin's options trading and the information he used to make investment decisions could become the focus of the litigation, distracting from the central issue: did Medivation commit a fraud on the market? Accordingly, because Slotkin traded only in options, the court holds that Slotkin should not be appointed lead counsel"); and

- *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at *24 (S.D.N.Y. Mar. 13, 2018) ("the Wang Group traded almost exclusively in put and call options, making Wang and Zhao atypical plaintiffs. . . . Because options traders may 'introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and could subject the class to unique defenses, causing unnecessary conflict,' the Wang Group fails to satisfy Rule 23 and will not be appointed lead plaintiff").

While the Class in this case includes "all persons or entities who purchased or otherwise acquired Arqit securities," the fact remains that common stockholders will comprise the overwhelming majority of the class. On September 3, 2021, after Arqit completed its business combination with Centricus, "there were 110,073,430 ordinary shares outstanding" compared to only "14,891,640 warrants outstanding." *See* Arqit Annual Report, Form 20-F, dated Sept. 10, 2021, p. 8. Thus, the warrant holders at most make up less than 15% of the total class. Given the inherent differences between Arqit's common stock and warrants (which effectively operated as a

8

call option with an exercise price at $11.50 per share[2]), Mr. Weeks is not typical of the vast majority of the proposed class and, therefore, cannot fairly and adequately serve as the lead plaintiff.

Messrs. Lack and Hagemeister made this argument to Judge Henry and supported it with citations to not just *Cook* and *Di Scala* but *Andrada* and *Patel* as well. *See* Dkt. No. 20 at 2, 7-8; Dkt. No. 22 at 1-5. Judge Henry "distinguish[ed]" *Cook* and *Di Scala* on their facts but overlooked *Andrada*, *Patel*, and the body of case law they represented. These cases hold that a shareholder cannot be the lead plaintiff for a shareholder class if he or she has not purchased stock in the company. *See*, *e.g.*, *Andrada*, 2005 U.S. Dist. LEXIS 6777, at *14. By "fail[ing] to apply" this "case law," Judge Henry's order was "contrary to the law" and must be modified. *See In re Comverse Tech., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *5-6 (citing FED. R. CIV. P. 72(a)).

## III.    MR. WEEKS PRESENTS ADDITIONAL COMPLICATIONS FOR THE CLASS DUE TO THE FACT THAT HE MUST RELY ON AN "ASSIGNMENT" TO CLAIM ARTICLE III STANDING TO PURSUE THIS CASE.

A shareholder must have constitutional standing in order to pursue claims under the Exchange Act. *See W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008). This is referred to as Article III standing and it requires a lead plaintiff to have sustained an "injury-in-fact," meaning that he or she has "personally suffered an injury." *Id*. at 107. Mr. Weeks did not own any Arqit securities. *See* Dkt. No. 10-2 at 11, ¶5 ("I did not separately transact in Arqit securities that are the subject of this action."). Mr. Weeks did not purchase any

---

[2] "Warrants are similar to stock options in that they entitle the warrant-holder to purchase shares of stock of a specified company at a specific exercise price, usually within a specified time period." *Alpha Venture Capital Partners LP v. Pourhassan*, 30 F.4th 920, 923 n.2 (9th Cir. 2022) (citing Black's Law Dictionary, Warrant (11th ed. 2019)).

Arqit securities and did not suffer any injury. Thus, to satisfy the Article III and "injury-in-fact" requirements, Mr. Weeks obtained an "assignment" from his wife. *See id*. at 4, ¶4 (". . . I had my wife assign me her claims. Accordingly, I am moving for lead plaintiff by way of an assignment.").

Mr. Weeks' "assignment" from his wife, Judy Smith, raises unique defenses in addition to those concerning the atypicality discussed above. Specifically, the assignment makes no mention of consideration, which jeopardizes the validity of the assignment itself and will be challenged by defendants at the class certification stage. *See Wallach v. Eaton Corp.*, 837 F.3d 356, 361 (3d Cir. 2016) (defendants arguments regarding consideration to confer standing by way of assignment became major focus of an antitrust claim); *see also Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) ("At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class."). "[I]rrespective of whether the assignments of claim cure [lead plaintiff's] deficient Article III standing, [it] now faces unique legal issues that other class members do not. Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk." *In re IMAX Securities Litigation*, No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. June 29, 2009) (quoting *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009)).

IV.     **THE COURT SHOULD APPOINT MR. LACK AND MR. HAGEMEISTER AS THE CO-LEAD PLAINTIFFS.**

"[B]ecause the PSLRA requires proof that the movant is merely 'subject to' unique defenses, 'many courts have rejected appointments of lead plaintiffs based on potential risks.'

10

Thus, '[b]efore disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed.' Rather, it must only find 'at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses.' This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions." *In re Hebron Tech. Co. Sec. Litig.*, 2020 U.S. Dist. LEXIS 169480, at *17 (S.D.N.Y. Sep. 16, 2020) (citations omitted).

As demonstrated above, Mr. Weeks is unquestionably subject to unique defenses, thereby endangering the recovery for the entire Class if allowed to proceed as the lead plaintiff. There is no reason to insert this risk into the litigation when, as a matter of fact, Messrs. Lack and Hagemeister are ready, willing and able to proceed as the lead plaintiffs. The two shareholders collectively lost approximately $140,000, which is substantially similar to Mr. Weeks' wife's loss and ensures they will take whatever steps necessary to prosecute this case. *See Burnham v. Qutoutiao Inc.,* No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at *6-7 (S.D.N.Y. Nov. 4, 2020). Further, Messrs. Lack and Hagemeister satisfy the typicality and adequacy requirements necessary under Rule 23 at this stage of the litigation. Their choice of counsel, Levi & Korsinsky, LLP, is qualified, experienced, and able to conduct the litigation. *See* ECF. No. 15-5 (Levi & Korsinsky firm resume). This will further ensure the vigorous and adequate prosecution of the Class's claims. *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,* 269 F.R.D. 291, 297 (S.D.N.Y. 2010).

As courts within this Circuit and throughout the country have recognized, the PSLRA expressly endorses the appointment of a group of class members as lead plaintiff where, as here,

11

the group is small, cohesive, and has demonstrated a willingness and ability to manage the litigation. 15 U.S.C. §78u-4(a)(3)(B)(i)-(iii); *see also China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups."); *Mustafin v. Greensky, Inc.*, No. 18-11071, 2019 U.S. Dist. LEXIS 55296, at *15 (S.D.N.Y. Mar. 29, 2019) ("[T]he PLSRA . . . expressly permits 'a group of persons' to be appointed lead plaintiff."); *Silverberg v. Dryships Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563, at *24 (E.D.N.Y. Aug. 21, 2018); *Hansen v. Ferrellgas Partners, L.P.*, No. 06-7840, 2017 U.S. Dist. LEXIS 8145, at *12-13 (S.D.N.Y. Jan. 19, 2017) ("[A]s the statute makes clear, groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff.").

Messrs. Lack and Hagemeister submitted a joint declaration in support of their initial motion. *See* Joint Declaration, ECF No. 15-4. The declaration provided background information about themselves, including where they reside, investment experience, and occupational history. *Id*. at ¶¶3-4. It also detailed their communications with each other and counsel about the litigation. *Id*. at ¶¶7-8. Importantly, they explained in the declaration that they purchased Arqit securities at different times and, as a result, believed they were better able to represent a cross-section of shareholders injured in this action. *Id.* at ¶8. Their declaration also detailed their plans for joint decision-making throughout the course of the litigation and how they intended to supervise counsel as the matter progressed. *Id*. at ¶¶9, 11.

## CONCLUSION

Respectfully, Judge Henry misapplied the law concerning Mr. Weeks' lack of stock purchases. The absence of any stock purchases prevents him from serving as the lead plaintiff in this lawsuit. His dependence on the validity of his wife's assignment only adds to the complications his appointment would face. Given that Messrs. Lack and Hagemeister stand ready, willing and

12

able and suffer from none of the same defects, it was error for Judge Henry to deny their motion for lead plaintiff.

Dated: April 12, 2023                                    Respectfully Submitted,

                                                                   **LEVI & KORSINSKY, LLP**

                                                                   By: */s/ Adam M. Apton*
                                                                   Adam M. Apton
                                                                   55 Broadway, 4th Floor
                                                                   New York, NY 10006
                                                                   Tel: (212) 363-7500
                                                                   Fax: (212) 363-7171
                                                                   Email: aapton@zlk.com

                                                                   *Attorneys for Jay Lack and Patrick L.*
                                                                   *Hagemeister and Proposed Lead Counsel*
                                                                   *for the Class*

13