UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT GLICK, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARQIT QUANTUM INC. F/K/A CENTRICUS ACQUISITION CORP., DAVID WILLIAMS, NICK POINTON, CARLO CALABRIA, STEPHEN CHANDLER, MANFREDI LEFEBVRE D'OVIDIO, VERALINN JAMIESON, GARTH RITCHIE, AND STEPHEN WILSON, <br><br> Defendants. | No. 1:22-cv-02604-PKC-MMH |

**CHRIS WEEKS' RESPONSE TO OBJECTION TO
ORDER APPOINTING WEEKS LEAD PLAINTIFF**

**WOLF POPPER LLP**
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Sasha Marseille
smarseille@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Attorneys for Lead Plaintiff Chris Weeks and Lead Counsel for the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 4

      A.     Background of Arqit and the Merger.......................................................... 4

      B.     The Allegations of the Complaint............................................................. 5

      C.     Procedural History of the Present Motion ................................................. 6

      D.     Subsequent Procedural History................................................................. 7

ARGUMENT .......................................................................................................................... 8

I.      THE STANDARD OF REVIEW IS CLEAR ERROR AND CONTRARY TO LAW ..... 8

II.     THE LEAD PLAINTIFF PROCEDURE UNDER THE PSLRA ..................................... 9

III.    JUDGE HENRY WAS CORRECT TO CONCLUDE THAT THE PURCHASE OF
       WARRANTS DOES NOT MAKE WEEKS ATYPICAL OR SUBJECT WEEKS TO
       UNIQUE DEFENSES ................................................................................................... 10

IV.   JUDGE HENRY WAS CORRECT TO REJECT THE LH GROUP'S ATTEMPT TO
       COMPARE THIRD PARTY OPTIONS TO ARQIT WARRANTS.............................. 12

V.     JUDGE HENRY DID NOT COMMIT CLEAR ERROR OR RULE CONTRARY TO
       LAW BY DISTINGUISHING THE AUTHORITY PRESENTED BY THE LH GROUP,
       WHICH CONCERNED INVESTORS IN OPTIONS .................................................... 13

      A.     The LH Group Identifies No Precedential Decision that Judge Henry Ignored... 14

      B.     Judge Henry Was Correct to Distinguish *Di Scala* and *Cook* ............................ 15

      C.     Judge Henry Did Not Ignore Any Legal Precedent Presented in the LH Group's
              Motion Papers that Required Weeks' Motion be Denied .................................... 17

VI.   THE ISSUE OF SMITH'S ASSIGNMENT OF CLAIM TO WEEKS IS NOT
       PROPERLY BEFORE THE COURT ........................................................................... 21

VII.  THE COURT SHOULD NOT RECONSIDER THE LH GROUP'S MOTION FOR
       APPOINTMENT AS LEAD PLAINTIFF..................................................................... 23

CONCLUSION.......................................................................................................................... 24

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Anderson v. Phoenix Bev., Inc.*,
   No. 12-CV-1055-DLI-RML,
   2015 U.S. Dist. LEXIS 20897 (E.D.N.Y. Feb. 20, 2015)................................................... 19, 21

*Andrada v. Atherogenics, Inc.*,
   No. 05-cv-000061-RJH,
   2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005)................................................... 17, 19

*Applestein v. Medivation, Inc.*,
   No. C-10-998-MHP,
   2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 20, 2010) ...................................................... 20

*In re Cendant Corp. Litig.*,
   60 F. Supp. 2d 354 (D.N.J. 1999) ........................................................................................ 12

*In re Comverse Tech. Inc. Sec. Litig.*,
   No. 06-cv-1825-NGG-RER,
   2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)................................................... 14, 15

*Cook v. Allergan PLC*,
   No. 18-cv-12089-CM,
   2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ............................................... 15, 16

*Cosby v. KPMG, LLP*,
   No. 3:16-CV-121-TAV-DCP,
   2021 U.S. Dist. LEXIS 87324 (E.D. Tenn. May 7, 2021)....................................................... 12

*Di Scala v. ProShare Ulta Bloomberg Crude Oil*,
   No. 20-cv-5865-NRB,
   2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020) .................................................... 15

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................................ 14

*In re Elan Corp. Sec. Litig.*,
   No. 08-cv-8761-AKH,
   2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 11, 2009) ...................................................... 20

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................ 9, 23

*Faris v. Longtop Fin. Techs. Ltd.,*
   No. 11 Civ. 3658-SAS,
   2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011)............................................ 10, 22, 23

*Fla. Action Comm., Inc. v. Seminole Cnty.*,
No. 6:15-cv-1525,
2016 U.S. Dist. LEXIS 143735 (M.D. Fla. Oct. 18, 2016) .................................................... 19

*Flora v. Hain Celestial Grp., Inc.*,
No. 16-cv-4581-ADS-SIL,
2017 U.S. Dist. LEXIS 85517 (E.D.N.Y. June 5, 2017) ........................................................ 13

*Glick v. Arqit Quantum, Inc.*,
No. 22-cv-2604-PKC-MMH,
Memorandum and Order, ECF No. 24 (E.D.N.Y. Mar. 31, 2023) (the Order) ................ passim

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011) .................................................................................. 13

*Hom v. Vale, S.A.*,
No. 15-cv-9539-GHW,
2016 U.S. Dist. LEXIS 28863 (S.D.N.Y. Mar. 7, 2016) .................................................. 11, 12

*In re Imax Sec. Litig.*,
No. 06-cv-6128,
2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) ...................................................... 23

*JKAYC, LLC v. Noah Bank*,
No. 20-cv-943-PKC-SMG,
2021 U.S. Dist. LEXIS 202385 (E.D.N.Y. Oct. 20, 2021) ...................................................... 8

*Liang Yang v. Trust for Advised Portfolios*,
No. 21-cv-1047-FB-MMH,
2022 U.S. Dist. LEXIS 60375 (E.D.N.Y. Mar. 31, 2022) ...................................................... 23

*Margolis v. Caterpillar, Inc., G.A.*,
815 F. Supp. 1150 (C.D. Ill. 1991) ...................................................................................... 21

*Michael Grecco Productions, Inc. v. Alamy, Inc.*,
No. 18-cv-3260-PKC-RER,
2022 U.S. Dist. LEXIS 11488 (E.D.N.Y. Jan. 21, 2022) ................................................ 2, 3, 14

*Micholle v. Ophthotech Corp.*,
No. 17-cv-210-VSB,
2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ...................................................... 20

*Moskowitz v. Lopp*,
128 F.R.D. 624 (E.D. Pa. 1989) .......................................................................................... 13

*In re Oxford Health Plans, Inc. Sec. Litig.*,
199 F.R.D. 119 (S.D.N.Y. 2001) .......................................................................................... 13

*Patel v. Reata Pharm., Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021) ......................................................................... 17, 19

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) .................................................................................. 23

*Purcell ex rel. Estate of Tyree v. City of New York*,
   No. 18-cv-3979-PKC-RLM,
   2020 U.S. Dist. LEXIS 147636 (E.D.N.Y. Aug. 17, 2020) ......................................... 8

*In re Schering-Plough Corp.*,
   No. 8-397-DMC-JAD,
   2012 U.S. Dist. LEXIS 138078 (D.N.J. Sep. 25, 2012) .......................................... 12

*In re Spero Therapeutics, Inc. Sec. Litig.*,
   No. 22-cv-3125-LDH-RLM,
   2022 U.S. Dist. LEXIS 168778 (E.D.N.Y. Sept. 19, 2022) ........................................ 8

*Sprint Commc'ns Co. L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ...................................................................................................... 21

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) .................................................................................... 21, 22

*Wallach v. Easton Corp.*,
   837 F.3d 356 (3d Cir. 2016) ........................................................................................ 22

*Weikel v. Tower Semicondcutor, Ltd.*,
   183 F.R.D. 377 (D.N.J. 1998) ................................................................................. 20, 21

*Youngers v. Virtus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016) ......................................................................... 22

## **Statutes**

15 U.S.C. §78u-4(a)(3)(B)(i) ............................................................................................... 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ......................................................................................... 9

15 U.S.C. §78u–4(a)(3)(B)(iii)(II) ....................................................................................... 9

28 U.S.C. §636(b)(1)(A) .................................................................................................. 2, 8

## **Rules**

Fed. R. Civ. P. 72(a) ..................................................................................................... 2, 18

## PRELIMINARY STATEMENT

On March 31, 2023, Magistrate Judge Marcia M. Henry issued a Memorandum and Order (ECF No. 24, the "Order") appointing Chris Weeks as lead plaintiff in this securities class action pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4, and approving Weeks' choice of counsel, Wolf Popper LLP, as lead counsel. Weeks satisfies all requirements of the PSLRA for appointment as lead plaintiff on behalf of the alleged "Class," as defined in the complaint in this action (ECF No. 1, the "Complaint") as consisting of:

> (i) all persons or entities who purchased or otherwise acquired Arqit [Quantum Inc. ("Arqit")] securities between September 7, 2021 and April 18, 2022, inclusive (the "Class Period"); and/or (ii) all holders of Centricus [Acquisition Corp. ("Centricus")] securities as of the record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger between Arqit and Centricus (the "Merger") and entitled to vote on the Merger. [¶1.[1]]

Judy Smith, who is Weeks' wife and assigned her claims to him (ECF No. 10-2, Ex. 3), purchased 23,000 Arqit issued warrants, which were publicly listed and traded on the NASDAQ exchange, and is therefore a member of the Class. Weeks made a timely motion, has the largest financial interest in the relief sought by the Class, and satisfies a preliminary showing of the typicality and adequacy elements of Rule 23. Also, no "proof" was presented to Judge Henry that Weeks was subject to unique defenses or would not fairly or adequacy represent the Class sufficient to rebut the presumption in favor of appointing Weeks lead plaintiff. Therefore, Judge Henry was absolutely correct to appoint Weeks as lead plaintiff.

Erwin Jay Lack and Patrick L. Hagemeister (the "LH Group") filed objections to the Order (ECF No. 25, the "Objections"), contending that the presumption in favor of Weeks was rebutted because Smith purchased Arqit issued exchange traded warrants, rather than Arqit ordinary shares,

---

[1] Unless otherwise noted, references to "¶_" are to the Complaint.

which allegedly renders Weeks atypical and subjects to unique defenses. The LH Group is wrong. Judge Henry was correct to conclude that the LH Group "ha[d] not submitted sufficient evidence to rebut the presumption that Weeks is the most adequate plaintiff." ECF No. 24 (Order) at 11-14. The Objections concern only Judge Henry's determination concerning the LH Group's failure to rebut the presumption in favor of Weeks. All other findings of Judge Henry, including that Weeks has the largest financial interest in the relief sought by the Class (which the LH Group conceded) are not at issue.

Pursuant to Rule 72(a) and 28 U.S.C. §636(b)(1)(A), the LH Group bears a heavy burden to demonstrate that Judge Henry's Order is clearly erroneous or contrary to law. The LH Group has not, and cannot, meet this burden. The PSLRA does not restrict lead plaintiffs to investors who purchased common stock, and no court decision cited by the LH Group in its briefing to Judge Henry or its Objections so holds. The LH Group has identified no decision that was controlling on Judge Henry and that was disregarded or misapplied. The LH Group claims in its Objections that Judge Henry disregarded district court opinions (all from courts outside of the Eastern District of New York). However, as this Court recognized last year in *Michael Grecco Productions, Inc. v. Alamy, Inc.*, "a magistrate judge's decision is contrary to law only where it runs counter to controlling authority," and "district court decisions, even from courts in the same district, are not 'controlling law,' even as to magistrate judges." No. 18-cv-3260-PKC-RER, 2022 U.S. Dist. LEXIS 11488, at *9, 13 (E.D.N.Y. Jan. 21, 2022) (citations omitted). The LH Group does not claim that Judge Henry ignored any essential facts or law. Rather, it simply disagrees with how Judge Henry applied the facts of this case to the correct law. As this Court ruled in *Alamy* when reviewing a decision of Judge Orenstein for clear error, "Judge Orenstein identified the correct

controlling standing…then applied that standard to the facts of this case…. This Court does not find anything clearly erroneous about that conclusion." 2022 U.S. Dist. LEXIS 11488, at *9-10.

Further, the LH Group's comparison of the Arqit warrants to third-party options is misplaced, relies on distinguishable precedent, and should be rejected. The Arqit warrants were issued directly by Arqit, are listed and traded on the NASDAQ exchange, are long-term securities with a September 3, 2026 expiration date, and are exercisable at $11.50 per share. Profit is made when the price of the warrants increases, and losses sustained when the price decreases – the same interest as common stockholders. Options are typically issued by exchanges and trade between counterparties. Moreover, there is currently only one class of warrants in the Class, whereas there are currently tens of different Arqit options contracts (puts and calls) outstanding with various expiration dates and strike prices. The decisions cited by the LH Group typically identify issues relevant to options – such as multiple strike prices and durations, volatility, and interest rates – when finding options investors atypical. These issues are not present here because the Arqit warrants are long term instruments and traded on the NASDAQ along with Arqit common stock.

In any event, Weeks recognizes the benefit to the Class of ensuring broad representation of Class members in a consolidated complaint, and intends to add to the consolidated complaint a named plaintiff who invested in the common stock.

In addition, the LH Group raises in its Objections a new argument, which was not presented to Judge Henry, that the assignment of claim from Smith to Weeks raises unique defenses. As this argument was not presented to Judge Henry, this Court should not consider it. Even so, the assignment of claim is valid, and is for all claims for violations of the U.S. securities laws related to the purchase of Arqit securities, which includes the claims alleged here.

Judge Henry was correct to conclude that Weeks is not subject to unique defenses, and is an adequate representative and typical of other Class members who purchased Arqit's publicly traded common stock or warrants on the open market. The Court should overrule the Objections and affirm Judge Henry's Order.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background of Arqit and the Merger

Arqit is a cybersecurity company that purports to have established a unique quantum encryption technology to secure against current and future forms of cyberattacks. ¶23. The other defendants (collectively, the "Individual Defendants,") are the officers and directors of Arqit. Centricus was a blank check company, or a special purpose acquisition corporation ("SPAC"), "formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses." ¶8.

On May 12, 2021, Arqit and Centricus announced that they had entered into a definitive agreement for the Merger that would result in Arqit merging with Centricus and becoming a publicly listed company.[3] On May 28, 2021, Arqit filed with the SEC on Form F-4 a proposed Joint Registration Statement and Proxy Statement for the Merger (as amended, the "Proxy Statement" or "Registration Statement") for the offering of Arqit common stock and warrants in connection with the Merger. ¶24. The Registration Statement was declared effective on July 30,

---

[2] As discussed herein, since Judge Henry issued the Order appointing Weeks lead plaintiff, Weeks and his counsel have taken actions to proactively represent the Class, including filing a complaint alleging violations of the Securities Act of 1933 in order to toll the relevant statute of limitations and arranging for service of the summonses and complaints in *Glick* and the Securities Act litigation.

[3] Joint Proxy Statement For Extraordinary General Meeting of Shareholders of Centricus Acquisition Corp. and Prospectus for 43,125,000 Ordinary Shares and 14,891,667 Warrants to Purchase Ordinary Shares, In Each Case, of Arqit Quantum Inc. ("Prospectus"), at p. 10, filed with the U.S. Securities & Exchange Commission ("SEC") on July 30, 2021 and available at www.sec.gov/Archives/edgar/data/1859690/000110465921098253/tm2117366-13_424b3.htm (last visited Apr. 24, 2023)

2021,[4] and registered 43,125,000 ordinary shares of Arqit and 14,891,667 warrants to purchase ordinary shares of Arqit.[5] Also on July 30, 2021, Arqit filed the Prospectus for the Merger, which formed part of the Proxy Statement. ¶25.

The Merger closed on September 3, 2021. On September 7, 2021, Arqit ordinary shares and warrants began trading on the NASDAQ exchange under the ticker symbols "ARQQ" and "ARQQW," respectively.[6]

### B.      The Allegations of the Complaint

This Action was filed on behalf of the Class alleging that Arqit and the Individual Defendants made materially false and misleading statements concerning Arqit's business in violation of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b), 78n(a), and 78t(a), and SEC Rules 10b-5 and 14a-9 promulgated thereunder, 17 C.F.R. §§240.10b-5, 240.14a-9. The Complaint alleges that, in Arqit's Proxy Statement and annual/transition report on Form 20-F filed with the SEC on September 10, 2021, the Defendants made materially false and misleading statements and failed to disclose material adverse information regarding Arqit's operations that the Defendants either knew or recklessly disregarded to be false, including:

> (1) Arqit's proposed encryption technology would require widespread adoption of new protocols and standards for telecommunications; (2) British cybersecurity officials questioned the viability of Arqit's proposed encryption technology in a meeting in 2020; (3) the British government was not an Arqit customer but, rather, provid[ed] grants to Arqit; (4) Arqit had little more than an early-stage prototype of its encryption system at the time of the merger; and (5) as a result, Defendants'

---

[4] SEC Notice of Effectiveness (July 20, 2021), available at www.sec.gov/Archives/edgar/data/1859690/999999999521002999/xslEFFECTX01/primary_doc.xml (last visited Apr. 24, 2023).

[5] *See, generally,* Prospectus at Cover Page.

[6] Arqit Form 6-K, filed with the SEC on September 3, 2021, and Press Release of Arqit, dated September 3, 2021, filed as Exhibit 99.1 to the Form 6-K, available at www.sec.gov/Archives/edgar/data/1859690/000110465921112955/tm2126997d1_6k.htm (last visited Apr. 24, 2023).

statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times. [¶36.]

The Complaint further alleges that during the Class Period, Arqit's publicly-traded securities (common stock and warrants) traded at prices inflated by Defendants' false statements. ¶55. On April 18, 2022, *The Wall Street Journal* ("*WSJ*") published an article titled "*British Encryption Startup Arqit Overstates Its Prospects, Former Staff and Others Say*." The *WSJ* article stated, in relevant part:

> When the company secured its Nasdaq listing last autumn, its revenue consisted of a handful of government grants and small research contracts, and its signature product was an early-stage prototype unable to encrypt anything in practical use, according to [former employees and other people familiar with the company]. The encryption technology the company hinges on—a system to protect against next-generation quantum computers—might never apply beyond niche uses, numerous people inside and outside the company warned, unless there were a major overhaul of internet protocols.
>
> * * *
>
> The encryption system—with or without its satellite components—depends on the broad adoption of new protocols and standards for telecommunications, cloud computing and internet services. [¶37.]

On the publication of the *WSJ* article, Arqit's common stock fell $2.57 per share, or 17%, to close at $12.49 per share, and Arqit's warrants fell $1.45 per warrant or 38.7%, to close at $2.40 per warrant on April 18, 2022. Weeks and other Class members suffered significant losses and damages. ¶¶38-39.

### C.    Procedural History of the Present Motion

On July 5, 2022, Weeks and four other class members filed timely motions for appointment as lead plaintiff and approval of their selection of counsel. ECF Nos. 5-17. Weeks moved for appointment as lead plaintiff pursuant to an assignment from his wife, Judy Smith. ECF No. 10-2, Ex. 3. On July 6, 2022, this Court referred the lead plaintiff motions to Judge Henry.

Three lead plaintiff movants subsequently filed notices of non-opposition. ECF Nos. 17-19. Judge Henry denied these three motions as moot on January 5, 2023.

Weeks and the LH Group filed opposition memoranda of law to each other's motions and reply memoranda of law in support of their motions. ECF Nos. 20-23. The motions were fully briefed as of July 26, 2022.

On March 31, 2023, Judge Henry issued the Order granting Weeks' motion, appointing Weeks as lead plaintiff for the Class, and appointing Wolf Popper as lead counsel. ECF No. 24. Judge Henry correctly found that Weeks was entitled to the presumption as the most adequate plaintiff because Weeks filed a timely motion, through assignment from Smith had the largest financial interest in the relief sought by the Class (which the LH Group conceded), and Weeks made a preliminary showing that he met the typicality and adequacy requirements of Rule 23. *Id.* at 8-11. Judge Henry also rejected the LH Group's arguments that Weeks was subject to unique defenses and was atypical because Weeks purchased Arqit publicly listed exchange traded warrants rather that common stock, and concluded that the LH Group has not rebutted the presumption in favor of appointing Weeks as lead plaintiff. *Id.* at 11-14.

On April 12, 2023, the LH Group filed its Objections to the Order.

### D.    Subsequent Procedural History

Since being appointed lead plaintiff, Weeks has acted proactively to represent the Class. On April 14, 2023, Weeks filed a related class action, *Weeks v. Arqit Quantum, Inc.*, No. 23-cv-2806 (E.D.N.Y.) (the "Securities Act Class Action"), on behalf of a Class of all persons or entities who purchased or otherwise acquired Arqit securities pursuant or traceable to the Form F-4 Registration Statement. The Securities Act Class Action alleges claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k, 77l(a)(2), 77o, and alleges, among other things, materially false and misleading statements in the Registration

Statement. Securities Act Class Action ECF No. 1, ¶¶1-2. Weeks filed that action as a related to *Glick* and to toll the statute of limitations for claims under the Securities Act in anticipation of filing a motion to consolidate *Glick* and *Weeks* and a consolidated complaint. *Id.* ¶6.

Lead counsel has taken steps to effect service of the summons and complaint in the initial *Glick* action (which was not completed) and in the *Weeks* action.

## ARGUMENT

The LH Group has not, and cannot, meet its heavy burden of showing the Order is clearly erroneous or contrary to law. The Court should overrule the Objections and affirm the Order.

## I.   THE STANDARD OF REVIEW IS CLEAR ERROR AND CONTRARY TO LAW

Appointing a lead plaintiff pursuant to the PSLRA is a non-dispositive matter. *In re Spero Therapeutics, Inc. Sec. Litig.*, No. 22-cv-3125-LDH-RLM, 2022 U.S. Dist. LEXIS 168778, at *2 n.2 (E.D.N.Y. Sept. 19, 2022). On a non-dispositive matter, "[t]he district court may vacate the magistrate judge's decision 'where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'" *JKAYC, LLC v. Noah Bank*, No. 20-cv-943-PKC-SMG, 2021 U.S. Dist. LEXIS 202385, at *9 (E.D.N.Y. Oct. 20, 2021) (quoting 28 U.S.C. §636(b)(1)(A)).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and quotation marks omitted). "Under the contrary to law standard of review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure." *Id.* at *10. As this Court has recognized, these standards are "highly deferential and thus the movant carries a heavy burden." *Purcell ex rel. Estate of Tyree v. City of New York*, No. 18-cv-3979-PKC-RLM, 2020 U.S. Dist. LEXIS 147636, at *2 (E.D.N.Y. Aug. 17, 2020).

## II.    THE LEAD PLAINTIFF PROCEDURE UNDER THE PSLRA

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter referred to as the 'most adequate plaintiff')." 15 U.S.C. §78u-4(a)(3)(B)(i).

As correctly recognized by Judge Henry, "[i]n determining which individual or group is best suited to serve as lead plaintiff(s), courts adopt a two-step inquiry." ECF No. 24 (Order) at 5. "First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that '(aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23.'" *Id.* (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)). "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Id.* at 9. "Second, if the court is satisfied that there is a presumptively adequate lead plaintiff, it may then determine whether this presumption of adequacy has been rebutted 'upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id.* at 5-6 (quoting 15 U.S.C. §78u–4(a)(3)(B)(iii)(II)).

The PSLRA determination is sequential, and "does not depend on the court's judgment of which party would be [the] best lead plaintiff for the class, but rather which candidate fulfils the requirements of the Act." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98-99 (S.D.N.Y. 2005); *see also Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658-SAS, 2011 U.S. Dist. LEXIS 112970, at

*11 (S.D.N.Y. Oct. 4, 2011) ("The process is sequential and does not leave any room for a relative comparison of the movants by the court.")

As relevant to the LH Group's Objections, Judge Henry concluded that "because Weeks has the largest financial interest and satisfies the PSLRA Rule 23 requirements, he is entitled to the PSLRA rebuttable presumption as the most adequate lead plaintiff." ECF No. 24 (Order) at 11. Judge Henry then considered whether the LH Group's arguments that Weeks was subject to unique defenses because Smith purchased warrants, not common stock, rebutted the presumption. *Id.* 11-13. Judge Henry concluded that the LH Group did "not submit[] sufficient evidence to rebut the presumption that Weeks is the most adequate plaintiff." *Id.* at 14.

The LH Group's Objections, therefore, concern only whether the LH Group submitted "proof" sufficient to rebut the presumption in favor of appointing Weeks as lead plaintiff.

## III.   JUDGE HENRY WAS CORRECT TO CONCLUDE THAT THE PURCHASE OF WARRANTS DOES NOT MAKE WEEKS ATYPICAL OR SUBJECT WEEKS TO UNIQUE DEFENSES

The LH Group claims that Judge Henry erred in appointing Weeks as lead plaintiff because

> warrant holders at most make up less than 15% of the total class. Given the inherent differences between Arqit's common stock and warrants (which effectively operated as a call option with an exercise price at $11.50 per share), Mr. Weeks is not typical of the vast majority of the proposed class and, therefore, cannot fairly and adequately serve as the lead plaintiff. [ECF No. 25 (Objections) at 9.]

The LH Group is incorrect and Judge Henry was correct to reject this argument.

Weeks' claims are typical of the Class's claims. Weeks (through Smith) is a member of the Class. Both the warrants and ordinary shares were issued by Arqit pursuant to the same prospectus and listed on the NASDAQ. All Class members purchased Arqit securities (which includes Arqit warrants and common stock) on the initial offering or during the Class Period on the open market at prices alleged to be artificially inflated as a result of the defendants' alleged materially false and misleading statements concerning Arqit's business. Smith, just like other Class Members, suffered

damages as a result of the purchase of her Arqit securities at inflated prices when the truth was revealed and the price of the warrants declined, and possesses claims against Arqit and certain of its officers and directors under the federal securities laws. Smith's claims arise from the same events and course of conduct as the Class's claims. Thus, Weeks satisfies the typicality requirement of Rule 23(a)(3).

Judge Henry correctly stated the law: "a lead plaintiff's claims 'need not be identical' to the claims of the class" and "the PSLRA does not require the lead plaintiff in a class action to be only an investor in common stock." ECF No. 24 (Order) at 12, 13 n.7; *see also Hom v. Vale, S.A.*, No. 15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863, at *18 (S.D.N.Y. Mar. 7, 2016) ("A lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement;" appointing investor in preferred American Depository Receipts ("ADRs") as lead plaintiff to represent class that included purchasers in common ADRs, and refusing to appoint a co-lead plaintiff who purchased common ADRs)). Judge Henry also correctly identified that:

> the proposed [C]lass members, including Weeks via assignment, purchased Arqit *securities* – not stocks – during the relevant time period, acted in reliance on Defendants' material misrepresentations, and suffered financial losses as a result. The factual differences in the securities at issue do not change the theory of liability against Arqit. [ECF No. 24 (Order) at 12.]

Judge Henry was therefore correct to conclude that the interests of Weeks and all Class members are the same. Weeks therefore is typical, and Judge Henry was correct to reject the LH Group's argument otherwise.

Also, if the LH Group's arguments are accepted, then an investor in any security other than common stock could never be appointed lead plaintiff in a class action alleging claims on behalf of purchasers of a company's "securities," as investors in common stock would almost always be the majority of any such class. Courts have appointed investors in securities other than common

11

stock as lead plaintiff to represent investors in common stock and vice versa.[7] In any event, Weeks intends to add to a consolidated complaint a named plaintiff who purchased Arqit common stock to double-ensure the full breadth of representation on behalf of the Class.

## IV. JUDGE HENRY WAS CORRECT TO REJECT THE LH GROUP'S ATTEMPT TO COMPARE THIRD PARTY OPTIONS TO ARQIT WARRANTS

The LH Group argues that third-party options are the same as Arqit warrants (ECF No. 25 at 6-7), and concerns that Courts have raised about unique factual issues related to options investors should apply to purchasers of company issued exchange traded warrants. Simply put, the LH Group is wrong, and Judge Henry was correct to reject this argument. *See* ECF No. 24 (Order) at 12-13.

Warrants and options are not the same. Notably, the warrants here were issued directly by Arqit (as opposed to options, which are issued by exchanges and trade between counter-parties). The Arqit warrants are singular, long-term instruments that do not expire until September 3, 2026, unlike options, which are manifold with different strike prices and expiration dates, of various lengths of short-term duration. Investors in options can also have varying interests based on the expiration date, strike prices, and instrument type. For example, a buyer of a put option will make a profit if the price of the underlying security goes down. This is contrary to the interest of Weeks and the rest of the Class, who were *damaged* by the decline in the price of Arqit securities.

---

[7] *See Vale,* 2016 U.S. Dist. LEXIS 28863, at *18; *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2021 U.S. Dist. LEXIS 87324, at *14-16 (E.D. Tenn. May 7, 2021) (certifying class of investors in both common and preferred stock of the defendant company); *In re Schering-Plough Corp.*, No. 8-397-DMC-JAD, 2012 U.S. Dist. LEXIS 138078, at *31 (D.N.J. Sep. 25, 2012) ("The gravamen of Plaintiffs' allegation is the same whether Lead Plaintiffs purchased common stock, preferred stock, or options."); *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 376 (D.N.J. 1999) ("Plaintiffs may represent purchasers of securities other than common stock because the claims of those purchasers arise from the same alleged fraud as the claims of the common stock purchasers. Where the claims of absentee class members arise out of the same basic allegations of fraud as those of the lead plaintiff, the lead plaintiff may adequately represent the interests of those absentee class members.").

Even if the analogy between warrants and options was correct, which it is not, "investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here, whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct." *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011). Courts, including the Eastern District of New York, have appointed investors in options as lead plaintiffs and class representatives.[8]

## V. JUDGE HENRY DID NOT COMMIT CLEAR ERROR OR RULE CONTRARY TO LAW BY DISTINGUISHING THE AUTHORITY PRESENTED BY THE LH GROUP, WHICH CONCERNED INVESTORS IN OPTIONS

The LH Group claims, in error, that "Judge Henry's [O]rder went against a long line of cases holding that a shareholder cannot be the lead plaintiff in a securities fraud class action lawsuit if he or she has not purchased shares of the common stock at issue in the lawsuit." ECF No. 25 (Objections) at 1; *see also id.* at 7 ("Numerous cases from around the country…stand for the premise that a shareholder who does not buy stock cannot serve as the lead plaintiff or class representative in a shareholder class action lawsuit."); *id.* at 9 ("These cases hold that a shareholder cannot be the lead plaintiff for a shareholder class if he or she has not purchased stock in the company.").

The LH Group's argument fails for several reasons. They have identified no controlling precedent that Judge Henry ignored. Judge Henry properly distinguishes the decisions cited by the LH Group concerning options. The new cases that the LH Group cites in its Objections, and that

---

[8] *See Flora v. Hain Celestial Grp., Inc.*, No. 16-cv-4581-ADS-SIL, 2017 U.S. Dist. LEXIS 85517, at \*6-7 (E.D.N.Y. June 5, 2017) ("the fact that Rosewood only purchased options during the class period does not rebut the presumption in its favor."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives in action proceeding under fraud on the market theory); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989) (holding that options trader could rely upon the fraud on the market presumption and was an adequate class representative).

it did not cite to Judge Henry, cannot constitute clear error because Judge Henry was never presented with them, and in any event do not concern investors in warrants and are distinguishable. Because no error exists, the Court should overrule the Objection and affirm the Order.

A.     **The LH Group Identifies No Precedential Decision that Judge Henry Ignored**

All of the alleged "long line of decisions" that the LH Group claims Judge Henry ignored or improperly distinguished were issued by district courts outside of the Eastern District of New York. None of these decisions are precedential decisions of the Second Circuit or the Supreme Court. As this Court recognized just last year in *Alamy*, "a magistrate judge's decision is contrary to law only where it runs counter to controlling authority," and "district court decisions, even from courts in the same district, are not 'controlling law,' even as to magistrate judges." 2022 U.S. Dist. LEXIS 11488, at *9, 13. Therefore, Judge Henry's Order cannot be contrary to law for allegedly ignoring these decisions.

This point is well evidenced by examining *In re Converse Tech. Inc. Sec. Litig.*, No. 06-cv-1825-NGG-RER, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007), which the LH Group cites in support of its motion. In *Converse,* Judge Garaufis vacated the decision of Magistrate Judge Reyes on a lead plaintiff motion because Judge Garaufis concluded that Judge Reyes had failed to consider the binding U.S. Supreme Court precedent of *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 344-47 (2005), which held that:

> plaintiffs can recover in fraud-on-the-market cases only if a specific loss was proximately caused by a defendant's misrepresentations. In so ruling, the Court held that a plaintiff cannot prove loss causation merely by establishing that a defendant's misconduct artificially inflated the price of the target company's stock on the date the plaintiff purchased its shares. Instead, a plaintiff must also prove that the company's stock price later declined (and thus caused plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public.

*Converse Tech.*, 2007 U.S. Dist. LEXIS 14878, at *12-13. Judge Garaufis concluded that Judge Reyes had calculated the financial interests of the competing lead plaintiff movants in a manner

contrary to *Dura* by including non-recoverable losses that occurred before the alleged corrective disclosure. *Id.* at *12-18. This is a completely different situation from the case at bar, where the LH Group claims that Judge Henry ignored or misapplied decisions from various district courts that are not controlling law. *See, e.g., id.* at *22 ("Here, it is clear that the court cannot decline to consider the implications of loss causation when applying the PSLRA standard without running afoul of the principles set forth in *Dura* and its progeny.").

### B. Judge Henry Was Correct to Distinguish *Di Scala* and *Cook*

Before Judge Henry, the LH Group relied on *Di Scala v. ProShare Ulta Bloomberg Crude Oil*, No. 20-cv-5865-NRB, 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020) and *Cook v. Allergan PLC*, No. 18-cv-12089-CM, 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019). The LH Group claims that Judge Henry committed error by distinguishing these decisions. ECF No. 25 (Objections) at 6. The LH Group is wrong. Contrary to the LH Group's arguments, these cases *do not* hold that all investors who purchase securities other than common stock are subject to unique defenses and cannot serve as lead plaintiff on behalf of a class that includes investors in common stock. These cases *do not* hold that an investor in publicly traded NASDAQ listed warrants (or even options) cannot be appointed lead plaintiff on behalf of a class of investors in all of a company's securities, and concern vastly different factual situations. Judge Henry was correct to distinguish them.

In *Di Scala*, Judge Buchwald declined to appoint the presumptive most adequate plaintiff Edmund Jin because his "losses overwhelmingly reflect[ed] his sale of put options," which raised questions about whether he was a member of the alleged class of purchasers of securities and whether he "motivated by the same market incentives as class members who traded shares on the open market." 2020 U.S. Dist. LEXIS 242969, at *10-11. Here, Weeks did not write put options and is clearly a member of the Class. Also, there are no questions about whether Smith was

motivated by the same market incentives as the rest of the Class. Smith purchased the warrants on the open market with the goal of the price of Arqit securities increasing, the same incentive as those Class members who purchased common stock. *See* ECF 10-2, ¶2 (Smith purchased Arqit warrants because she and Weeks believed cybersecurity to be "a profitable field in which to make investments.").

Similarly, in *Cook*, the alleged class was "all investors who purchased or otherwise acquired Defendant Allergan plc common stock between May 9, 2017 and December 19, 2018, inclusive." *Cook v. Allergan PLC*, No. 18-cv-12089-CM, ECF No. 6, ¶1 (S.D.N.Y. Dec. 21, 2018). Judge McMahon declined to appoint lead plaintiff movant Ge Zhou because, as a seller of both puts and calls during the class period who suffered 60% of his losses as a result of options trading, he was not "an investor whose claims will turn out to be typical of the average common stockholder." *Cook,* 2019 U.S. Dist. LEXIS 51962, at *7. Judge McMahon also reasoned that his appointment would likely introduce issues irrelevant to the alleged common stockholder class. *Id.* This is a completely different situation from the case at bar, where the Class is alleged to include purchasers of Arqit securities (both warrants and common stock). <u>*Second*</u>, Class members who purchased Arqit warrants and common stock have substantially similar if not identical interests— proving violations of the federal securities laws and a decline in the price of the security once the truth was revealed. The extraneous issues the Court identified in *Cook*, including strike price, duration, maturity, and interest rates on multiple option contracts, are not consequential here for singular Arqit warrants, which have a five-year duration. <u>*Third*</u>, it was argued in *Cook* that Zhou had "self-contradictory and unusual trading patterns" that "render[ed] his claims atypical of those of the average class member," *id.* at *6, which raises the question of a unique trading strategy that

was not typical of class of common stockholders. Here, there are no claims that Smith had a unique or atypical trading strategy.

Judge Henry correctly recognized these essential differences between *Di Scala* and *Cook*, on the one hand, and this case, on the other hand, and correctly concluded that *Di Scala and Cook* did not support a conclusion that Weeks' could not be appointed lead plaintiff:

> In both cases, the courts rejected the proposed lead plaintiffs because their unique transactional activities as third-party options sellers were materially different from purchasers of the defendants' standard securities….Here, no such unusual transactions occurred because Weeks did not purchase or sell third-party options. He (via assignment) purchased warrants issued by Arqit, listed on the NASDAQ, and subject to the same registration statements and prospectus as Arqit stock investors. … Moreover, Weeks' warrants' value is directly impacted by the price of Arqit stock. ***These facts undermine any argument that he was motivated by different market incentives than class members who traded shares on the open market***. [ECF No. 24 at 13 (emphasis added, citations and footnote omitted).]

There is no error in Judge Henry's reasoning concerning *Di Scala* and *Cook.* The Objections on this point should therefore be overruled.

### C.    Judge Henry Did Not Ignore Any Legal Precedent Presented in the LH Group's Motion Papers that Required Weeks' Motion be Denied

The LH Group claims that Judge Henry committed clear error not only in distinguishing *Cook* and *Di Scala* (an argument, as stated above, that fails), but also by "overlook[ing]" *Andrada v. Atherogenics, Inc.*, No. 05-cv-000061-RJH, 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005), *Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559 (E.D. Tex. 2021), and "the larger body of case law that *Cook* and *Di Scala* represented." ECF No. 25 (Objections) at 6, 9. The LH Group claims, wrongly, that "[t]hese cases hold that a shareholder cannot be the lead plaintiff for a shareholder class if he or she has not purchased stock in the company," and that " [b]y 'fail[ing] to apply' this 'case law,' Judge Henry's order was "contrary to the law" and must be modified. ECF No. 25 at 9. Again, this argument is misplaced and must be rejected.

Putting aside the fact that none of the decisions identified in the LH Group's Objections are precedential or controlling on Judge Henry, and therefore the Order cannot be contrary to law under Rule 72(a) for allegedly overlooking them, the LH Group's arguments to Judge Henry focused primarily on *Cook* and *Di Scala See* ECF No. 20 (LH Group Opp.) at 7 ("The facts at hand are similar to the *Di Scala* and *Cook* cases."); *id.* at 8 ("Looking to the precedent set forth by the *Di Scala* and *Cook* courts, Mr. Weeks is atypical, and this Court should rule in the same way."); ECF No. 22 (LH Group Reply) at 5 (same); *id.* at 4 ("Although the *Di Scala* and *Cook* cases focus on options, the analyses should be applied to the use of warrants."). *Andrada* was cited twice in passing in the LH Group's opposition brief (ECF No. 22), once as part of a string cite with a parenthetical (*id.* at 2) and again to state that *Cook* cited *Andrada* (*id.* at 7). *Andrada* was cited in two string cites with parentheticals in the LH Group's reply brief (ECF No. 22 at 2, 3). *Patel* also was cited only as a parenthetical in both the LH Group's opposition brief (ECF No. 20 at 8) and reply brief (ECF No. 22 at 5) as a case that applied *Cook* and *Di Scala.* Judge Henry should not be found to have committed clear error or ruled contrary to law by purportedly ignoring decision that were presented in string cites and parentheticals.

*Patel* and *Andrada* also ***do not*** hold that only investors in common stock can serve as lead plaintiff for a class that includes investors in multiple securities including common stock, and are distinguishable on their facts as they concern options, not exchange traded warrants. While the *Patel* court did find that a lead plaintiff movant who purchased both options and common stock was inadequate to serve as lead plaintiff, the Court also stated that "even if the Court were to conclude that [the movant] satisfies typicality, thus making him the presumptive lead plaintiff, that presumption would be rebutted because [the movant's] trading practices subject him to 'unique

defenses' concerning damages." *Patel*, 549 F. Supp. 3d at 568. Here, no unique defenses or unique issues related to damages to investors in Arqit warrants have been proved or even identified.

In *Andrada*, the Court refused to appoint a purchaser of call options because "factual issues specific to [the movant] in determining the precise value of the options – e.g., the maturity, the volatility of the price of the Atherogenics stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded – would likely threaten to become the focus of the litigation." 2005 U.S. Dist. LEXIS 6777, at \*14. None of these issues are present in this case. The warrants were issued by Arqit and were listed and traded on the NASDAQ exchange, and had a readily ascertainable value.

The LH Group also cannot meet its heavy burden of clear error or contrary to law by pointing to five other decisions it did not cite to Judge Henry. The Court should not consider these cases because a party cannot raise an argument for the first time in an objection to a Magistrate Judge's ruling, and it cannot be clear error for Judge Henry to have purportedly ignored case law that was not presented in the LH Group's motions papers. *See, e.g., Fla. Action Comm., Inc. v. Seminole Cnty.*, No. 6:15-cv-1525, 2016 U.S. Dist. LEXIS 143735, at \*9 n.3 (M.D. Fla. Oct. 18, 2016) ("[i]t of course defies logic to claim that the Magistrate Judge erred by failing to consider legal authority which was never offered for h[er] consideration, and the undersigned will decline to entertain new arguments which should have been raised to the Magistrate Judge."); *Anderson v. Phoenix Bev., Inc.*, No. 12-CV-1055-DLI-RML, 2015 U.S. Dist. LEXIS 20897, at \*7 (E.D.N.Y. Feb. 20, 2015) ("Courts generally do not entertain new legal arguments not presented to the magistrate judge;" refusing to consider an argument not raised to the magistrate premised on a decision not presented to the magistrate). These five decisions are also all of district courts outside

the Eastern District of New York, and are not controlling on Judge Henry. As such the Order cannot be contrary to law for purportedly ignoring them.

In any event, each of these decisions do not evidence any error by Judge Henry. These decisions concern investors in options and are distinguishable on their facts.

*In re Elan Corp. Securities Litigation*, No. 08-cv-8761-AKH, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 11, 2009) and *Micholle v. Ophthotech Corp.*, No. 17-cv-210-VSB, 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) are distinguishable for the same reasons as *Andrada*. In *Elan*, the court relied on *Andrada* and found that the unique factual issues related to options "like strike price, duration, maturity, volatility, and interest rates, [] could subject the class to unique defenses." 2009 U.S. Dist. LEXIS 39859, at *6. *Micholle* relied on and quoted this passage from *Elan*. 2018 U.S. Dist. LEXIS 41120, at *24. Again, none of these issues are relevant to the Arqit warrants that Smith purchased, which are long-term instruments, traded on the NASDAQ, and issued by Arqit.

In *Applestein v. Medivation, Inc.*, No. C-10-998-MHP, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 20, 2010), the court denied the lead plaintiff motion of an investor who traded primarily in "naked-put option contracts, although he also invested in call options." *Id.* at *11. The Court found that the "nature of [the movant's] options trading and the information he used to make investment decisions could become the focus on the litigation." *Id.* at 12. Again, these issues are not present here due to nature of the Arqit warrants as a company issued NASDAQ traded security.

In *Weikel v. Tower Semicondcutor, Ltd.*, 183 F.R.D. 377, 382 (D.N.J. 1998), the purported class included purchasers of stock and call options. The Court refused to appoint an investor who purchased European call options ("Euro Options"), not U.S. call options, as a class representative for several reasons, including that there were questions whether the fraud on the market theory

would apply to the Euro Options, and the Euro Options were so unique that this particular investor may have been the only person that purchased them. *Id.* at 390-93. These concerns are not present here as Smith purchased Arqit issued warrants on the NASDAQ exchange.

In *Margolis v. Caterpillar, Inc., G.A.*, 815 F. Supp. 1150, 1152 (C.D. Ill. 1991), which was decided before enactment of the PSLRA, the purported class was persons who "who purchased or otherwise acquired the common stock." The Court did not certify an investor who purchased only options as a class representative of this class. *Id.* at 1156. Similarly to *Cook* and *Di Scala*, this decision is not relevant here, because the Class includes investors in all Arqit securities – common stock and warrants – and Weeks, through Smith, is a member of the Class.

## VI. THE ISSUE OF SMITH'S ASSIGNMENT OF CLAIM TO WEEKS IS NOT PROPERLY BEFORE THE COURT

For the first time, the LH Group raises issues with Smith's assignment of claim to Weeks. The LH Group cannot raise the issue for the first time in its Objections. As such the Court should not consider the argument and should reject it out of hand. *See Phoenix Bev.*, 2015 U.S. Dist. LEXIS 20897, at *7 ("Courts generally do not entertain new legal arguments not presented to the magistrate judge.").

However, in the event the Court decides to consider the LH Group's argument, it should be rejected as incorrect and misplaced. "The Supreme Court [has] held that an assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (citing *Sprint Commc'ns Co. L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 271, 285-89 (2008)). The LH Group's concerns of consideration for the assignment are therefore misplaced. Weeks also received an assignment of claim, not a power of attorney. The Second Circuit ruled in *Huff* that a plaintiff

needs an assignment of claim to proceed in the shoes of another, and could not sue on another's behalf merely by a power of attorney. *Id.*

In addition, the assignment is valid, and includes the claims at issue in this case. Weeks obtained an assignment of "all rights, title, and interest that [Smith] ha[s] or may have in any and all claims, demands and causes of action of any kind whatsoever arising from violations under the federal securities laws of the United States of America in connection with transactions in publicly traded securities of Arqit." ECF No. 10-2. Similar assignments have been found to be valid and provide constitutional standing for lead plaintiff applicants under the PSLRA. *See Longtop Fin. Tech.,* 2011 U.S. Dist. LEXIS 112970, at *17 ("The Assignment transfers to Danske 'for purposes of prosecution and collection, all rights, title and interest of the Funds in the Funds' claims, demands or causes of action against any defendant relating to any security issued by Longtop Financial Technologies Limited.' The Assignment is virtually identical to the assignment found to be valid by the Supreme Court in *Sprint.*" (footnote omitted)).

Relying on *Huff,* Judge Henry correctly concluded that Weeks had standing to pursue the Exchange Act claims alleged in the Complaint. *See* ECF No. 24 (Order) at 8 n.4 ("Where, as here, a "spouse purchased shares of [securities] during the class period and then assigned all rights" to a party, that party has sufficient standing to pursue the claims." (quoting *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 511 n.6 (S.D.N.Y. 2016) (citing *Huff*, 549 F.3d at 108))).

The decisions cited by the LH Group do not cast any doubt on the assignment from Smith to Weeks. In *Wallach v. Easton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016), the Third Circuit held that "that consideration is not required under federal common law to give effect to an otherwise express assignment." *See also id.* ("there is no dispute that [the] assignment of its [] claims [] was both written and express, meaning that it is valid with or without consideration. Consequently, the

22

District Court erred in concluding the absence of consideration invalidated the assignment."). *Wallach*, therefore, directly refutes the LH Group's arguments questioning the validity of the assignment due to lack of consideration. In *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011), the movant in question did not have an assignment, and instead relied on a Swedish law expert that it was "the only entity permitted to bring suit on behalf of the funds it managed." In *In re Imax Securities Litigation*, No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. June 29, 2009), the lead plaintiffs obtained an assignment of claim after moving for lead plaintiff in light of the Second Circuit's decision in *Huff*. Here, Weeks obtained the assignment of claim before he moved for appointment as lead plaintiff. This is an essential difference, as plaintiff must have standing when it commences suit. *See Liang Yang v. Trust for Advised Portfolios*, No. 21-cv-1047-FB-MMH, 2022 U.S. Dist. LEXIS 60375, at *12 n.3 (E.D.N.Y. Mar. 31, 2022) ("the Court notes that the cases Defendants cite involve lead plaintiffs whose assignments were completed after their appointment as lead plaintiffs, while [movant's] assignments were obtained before they filed the instant motion.").

## VII.   THE COURT SHOULD NOT RECONSIDER THE LH GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

The LH Group argues that the Court should appoint the LH Group as co-lead plaintiffs instead of Weeks. The Court however should not even reach this question. The lead plaintiff process under the PSLRA is sequential. Once a presumptive lead plaintiff is identified, the Court should not proceed to consider any other lead plaintiff movants unless the presumption has been rebutted. *See In re eSpeed,* 232 F.R.D. at 98-99; *Longtop Fin. Techs.*, 2011 U.S. Dist. LEXIS 112970, at *11.

Because Weeks is the most adequate plaintiff and the LH Group has not met its burden to show the Order was clearly erroneous or contrary to law in finding the presumption had not been rebutted, the LH Group's request for appointment as co-lead plaintiff must be denied.

## CONCLUSION

For the reasons stated above, Chris Weeks respectively requests that the Court overrule the Objections and affirm Judge Henry's Order appointing Weeks as lead plaintiff for the Class and appointing his Wolf Popper as lead counsel for the Class.

Dated: April 26, 2023
     New York, New York

Respectfully submitted,

**WOLF POPPER LLP**

*/s/ Joshua W. Ruthizer*
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Sasha Marseille (admission pending)
smarseille@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600

*Attorneys for Lead Plaintiff Chris Weeks and
Lead Counsel for the Class*