**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ARQIT QUANTUM INC. SECURITIES LITIGATION | No. 1:22-cv-02604-PKC-SDE <br><br> <u>CLASS ACTION</u> |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of January 9, 2026 (the "**Settlement Agreement**"), in the above-captioned Action is entered into between (i) Lead Plaintiff Chris Weeks ("**Weeks**" or "**Lead Plaintiff**") and Named Plaintiffs Patrick Hagemeister ("**Hagemeister**"), Erwin Jay Lack ("**Lack**"), and Walter Littlejohn III ("**Littlejohn**," and collectively with Lead Plaintiff, Hagemeister, and Lack, "**Plaintiffs**"), on behalf of themselves and the other members of the Settlement Classes (as defined in paragraph 1.70, below); (ii) defendant Arqit Quantum Inc. ("**Arqit**" or the "**Company**") formerly known to investors as Centricus Acquisition Corp. ("**Centricus**"), and (iii) defendants David Williams, Nick Pointon, Carlo Calabria, Stephen Chandler, Manfredi Lefebvre d'Ovidio, Lt. General VeraLinn Jamieson (Ret.), Garth Ritchie, and Gen. Stephen Wilson (Ret.) (collectively, the "**Individual Defendants**," and together with the Company, "**Defendants**"), and embodies the terms and conditions of the settlement of the above-captioned Action.

This Settlement Agreement is intended to fully, finally and forever settle, resolve, and dismiss with prejudice the above-captioned, consolidated Action[1] and all Released Claims against the Released Parties (as those terms are defined below), subject to the approval of the Court and the terms and conditions set forth in this Settlement Agreement.

**WHEREAS:**

A.     On May 6, 2022, *Glick v. Arqit Quantum Inc., et al.*, No. 1:22-cv-02604 (E.D.N.Y.) was filed against Defendants, alleging violations of Sections 10(b), 14(a) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "**Exchange Act**"). *Glick* ECF 1.

B.     On April 14, 2023, Chris Weeks filed a separate action titled *Weeks v. Arqit Quantum Inc., et al.*, No. 1:23-cv-02806 (E.D.N.Y.) against Defendants, alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (the "**Securities Act**"). *Weeks* ECF 1.

C.     On May 16, 2023, the Court consolidated the *Weeks* and *Glick* actions under the above-referenced case caption. ECF 30.

---

[1] For the avoidance of doubt, this Settlement Agreement resolves both *Glick v. Arqit Quantum Inc., et al.*, No. 1:22-cv-02604 (E.D.N.Y.), and *Weeks v. Arqit Quantum Inc., et al.*, No. 1:23-cv-02806 (E.D.N.Y.).

D.   On June 5, 2023, the Court appointed Plaintiff Weeks as Lead Plaintiff and Wolf Popper LLP as Lead Counsel.

E.   On September 8, 2023, Plaintiffs filed a Consolidated Class action Complaint for Violations of the Federal Securities Laws (ECF 43, the "**Complaint**"), which alleges, among other things, that, in connection with the Merger and during the September 7, 2021 through December 13, 2022 putative Class Period, Defendants misrepresented that: (a) Arqit had "pioneered a unique quantum encryption technology which makes the communications links of any networked device secure against current and future forms of cyber-attack – even an attack from a quantum computer;" (b) Arqit's technology and software "has been launched live to customers" and is "being sold to and used by customers today;" (c) QuantumCloud, as designed to include the use of satellites, would create encryption keys "that are low cost," "in infinite volumes at minimal cost," and was "easily scalable," including that Arqit itself was "capable of hyper scaling" its operations; (d) QuantumCloud "solves all previously known problems of quantum key distribution"; and (e) Arqit had a "backlog of $130 million of binding revenue contracts…where the revenues will definitely be delivered." *E.g.* ECF 43 ¶ 9.

F.   The Complaint alleged claims for (1) violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 on behalf of the Section 10(b) Class (as defined herein) against the Section 10(b) Defendants (as defined herein); (2) violations of Sections 11, 12(a)(2), and 15 of the Securities Act on behalf of the Securities Act Class (as defined herein) against the Securities Act Defendants (as defined herein); and (3) violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 on behalf of the Section 14(a) Class (as defined herein) against the Section 14(a) Defendants (as defined herein).

G.   Pursuant to Rule 3.D of the Court's Individual Practices and Rules, Defendants served a motion to dismiss the Complaint on January 12, 2024. ECF 55, 59. Plaintiffs served an opposition to the motion to dismiss on March 12, 2024. ECF 57, 60. Defendants served a reply in support of the motion to dismiss on April 26, 2024. ECF 61. All papers regarding the motion to dismiss were filed with the Court on April 26, 2024. On March 28, 2025, the Court issued a Memorandum and Order denying Defendants' motion to dismiss in its entirety. ECF 65.

H.   The Parties stipulated to a confidentiality order, which the Court entered on April 17, 2025. ECF 70.

I.   The Parties to this Settlement Agreement began exploring the possibility of a settlement in early April 2025, and jointly sought a 90-day stay from the Court for purposes of facilitating the Parties' settlement discussions.  The Court granted the requested 90-day stay, and, at the Parties' request, granted a further stay through August 25, 2025. ECF 66, 72-73.

J.   The Parties agreed to engage in private mediation and retained Robert Meyer, Esq., of JAMS, to act as mediator in the Action.  In advance of the confidential mediation, Defendants produced various categories of documents requested by Plaintiffs for mediation purposes only. On June 30, 2025, following the exchange and submission of mediation

statements, counsel for the Parties participated in a full-day mediation session before Mr. Meyer. The session ended without any agreement being reached. Following the mediation, the Parties exchanged and submitted supplemental mediation statements, and the Parties continued to negotiate a potential settlement through the mediator.

K.      As the Parties did not reach a settlement prior to August 25, 2025, the stay of the Action expired, and Defendants filed their Answers to the Complaint on August 25, 2025. ECF 77-78, 80-82, 84-85.

L.      On September 5, 2025, the Parties filed a Discovery Plan and Proposed Scheduling Order with the Court, in which the parties set out their respective positions concerning, among other things, proposed schedules for pre-trial proceedings, motions for class certification, and whether class and merits discovery should be bifurcated. ECF 87.

M.      On September 9, 2025, Plaintiffs provided their FRCP 26(a)(1) Initial Disclosures to Defendants, and on September 19, 2025, Defendants provided their FRCP 26(a)(1) Initial Disclosures to Plaintiffs.

N.      On September 9, 2025, Plaintiffs served their First Set of Requests for Production of Documents to All Defendants. On October 9, 2025, Defendants served their Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents to All Defendants.

O.      On September 26, 2025, Defendants served their First Set of Class Certification Interrogatories and First Set of Class Certification Requests for Production.

P.      Following extensive arm's-length negotiations conducted with the assistance and facilitation of the mediator in July, August, September and October 2025, the Parties reached agreement in principle to settle this Action in its entirety for $7,000,000 in cash. The Parties notified the Court of this agreement via a joint status letter filed October 17, 2025. ECF 90.

Q.      The Parties executed a term sheet by counsel for the settlement of this Action on October 20, 2025, which included the Parties' binding agreement to settle and release all claims against Defendants and Defendants' Releasees (defined below) in return for a cash payment of $7,000,000 by or on behalf of Defendants for the benefit of the Settlement Classes, subject to, among other things, certain terms and conditions, and which contemplated the execution of definitive settlement documentation, and the requisite Court approval.

R.      Based upon their investigation, prosecution, and mediation of the case, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to Plaintiffs and the other Settlement Class Members, and in the best interests of the Settlement Class Members. Based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, Plaintiffs have agreed to settle and release the Settlement Class Claims pursuant to the terms and provisions of this Settlement Agreement, after considering, among other things: (a) the substantial financial benefit that Plaintiffs and the other Settlement Class Members

will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial, including Plaintiffs' ability to enforce a monetary judgment entered against Defendants.

S. Defendants are also party to a related state litigation, *Justin Podbielski v. Arqit Quantum Inc. f/k/a Centricus Acquisition Corp. et al.*, 153555/2023, in the Commercial Division of the Supreme Court, New York County (the "**State Court**"). The State Court action alleged that it "is a class action alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k, 77l(a)(2), and 77o on behalf of a class consisting of all persons and entities other than [d]efendants who purchased or otherwise acquired [Arqit Securities] pursuant and/or traceable to the F-4 Registration Statement and Prospectus for the offering [] of Arqit [] ordinary shares in connection with the merger between Arqit [] and Centricus in 2021 [] seeking to recover compensable damages and/or recission." Amended Complaint for Violations of the Federal Securities Laws at ¶ 2, *Podbielski v. Arqit Quantum Inc. f/k/a Centricus Acquisition Corp.*, No. 153555/2023 (Sup. Ct. N.Y. Cnty. Oct. 2, 2023), NYSCEF 14. The State Court has stayed the state action pending final adjudication of the Action in light of the State Court's determination that both actions "arise from the same underlying events and allege the same harm." Decision & Order on Motion at 1, *Podbielski v. Arqit Quantum Inc. f/k/a Centricus Acquisition Corp.*, No. 153555/2023 (Sup. Ct. N.Y. Cnty. Jan. 10, 2024), NYSCEF 41. The Parties acknowledge and agree that the putative class members alleged in the State Court action fall entirely within the Settlement Classes herein.

T. This Settlement Agreement constitutes a compromise of all matters that are in dispute between the Parties. Defendants are entering into this Settlement Agreement solely to eliminate the uncertainty, burden, distraction, and expense of further protracted litigation. Each of the Defendants denies any wrongdoing, and this Settlement Agreement shall in no event be construed or deemed to be evidence of, or an admission or concession on the part of Defendants with respect to any claim or allegation of, any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants expressly deny that Plaintiffs have asserted any valid claims, expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever, and maintain that their conduct was at all times proper and in compliance with applicable provisions of law. Similarly, this Settlement Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiffs of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

**NOW THEREFORE**, **IT IS HEREBY STIPULATED AND AGREED**, by and among Plaintiffs (individually and on behalf of all Settlement Class Members) and Defendants, by and through their respective undersigned attorneys that, subject to the approval of the Court pursuant to FRCP 23(e), in consideration of the benefits flowing to the Parties from the Settlement, the Action and the Released Claims shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Settlement Agreement.

# SECTION 1: DEFINITIONS

1.1     As used in this Settlement Agreement and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

1.2     "**Action**" or "**Litigation**" means the above-captioned consolidated securities class action.

1.3     "**Arqit**" or the "**Company**" has the meaning set forth in the Preamble.

1.4     "**Arqit Securities**" mean publicly traded Arqit ordinary shares (NASDAQ: ARQQ) and publicly traded Arqit warrants (NASDAQ: ARQQW).

1.5     "**Authorized Claimant**" means a Settlement Class Member who submits a Proof of Claim to the court-approved Claims Administrator and who is approved for payment from the Net Settlement Fund.

1.6     "**CAFA Notice**" means the form of notice that Defendants must provide to satisfy the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-1715 ("CAFA").

1.7     "**Centricus**" has the meaning set forth in the Preamble.

1.8     "**Centricus Securities**" mean the formerly publicly traded Centricus units (NASDAQ: CENHU), Centricus Class A ordinary shares (NASDAQ: CENH), and Centricus warrants (NASDAQ: CENHW).

1.9     "**Claim(s)**" means a paper claim submitted on a Claim Form or an electronic claim that is submitted to the Claims Administrator.

1.10    "**Claimant**" means a potential Settlement Class Member who or which submits a Proof of Claim to the Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

1.11    "**Claims Administrator**" means Kroll Settlement Administration LLC, who has been retained by Plaintiffs' Counsel, subject to approval of the Court, to administer the Settlement, including distributing and arranging for publication of the Notices approved by the Court to potential Settlement Class Members, processing Claims, and performing such other administrative functions as are required under this Settlement Agreement.

1.12    "**Class Distribution Order**" means the Order approving the Claims Administrators' administrative determinations concerning the acceptance and rejection of the claims submitted by potential Settlement Class Members; approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator; and directing the distribution of the Net Settlement Fund to Authorized Claimants.

1.13    "**Class Period**" means the period from September 7, 2021 through December 13, 2022, both dates inclusive.

1.14    "**Complaint**" has the meaning set forth in Whereas ¶ E.

1.15    "**Court**" means the United States District Court for the Eastern District of New York.

1.16    "**Defendants**" has the meaning set forth in the Preamble.

1.17    "**Defendants' Counsel**" means McDermott Will & Schulte LLP and White & Case LLP.

1.18    "**Defendants' Releasees**" means Defendants and all of Defendants' past and present officers, directors, employees, insurers, reinsurers, parents, subsidiaries, affiliates, successors, representatives, auditors, attorneys, underwriters, and agents, and the heirs, predecessors, and assigns of the foregoing.

1.19    "**Effective Date**" means the first date by which all of the following events and conditions have been met/occurred: (a) the Court has entered the Preliminary Approval Order; (b) the Settlement Amount has been deposited into the Escrow Account; (c) Arqit has not exercised its option to terminate the Settlement Agreement pursuant to the Supplemental Agreement; and (d) the Court has entered the Judgment, and the Judgment has become Final.

1.20    "**Escrow Account**" means an interest-bearing account established by the Escrow Agent wherein the Settlement Amount shall be deposited and held in escrow under the control of Plaintiffs' Counsel, pursuant to the terms of this Settlement Agreement.

1.21    "**Escrow Agent**" means Huntington Bank.

1.22    "**Escrow Agreement**" means the agreement between Plaintiffs' Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

1.23    "**Excluded Persons**" has the meaning set forth in ¶ 1.70.

1.24    "**Exchange Act**" has the meaning set forth in Whereas ¶ A.

1.25    "**Exchange Act Defendants**" means the Section 10(b) Defendants and the Section 14(a) Defendants.

1.26    "**FDIC**" means the Federal Deposit Insurance Corporation.

1.27    "**Fee and Expense Application**" means any application for a Fee and Expense Award.

1.28    "**Fee and Expense Award**" means the attorneys' fees, reimbursement of litigation costs and expenses, and PSLRA Reimbursement Awards that may be awarded by the Court to Plaintiffs' Counsel and Plaintiffs.

1.29    "**Final**," with respect to the Judgment or, if applicable, any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, i.e., thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, or expenses, or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

1.30    "**FRCP**" means the Federal Rules of Civil Procedure.

1.31    "**Individual Defendants**" has the meaning set forth in the Preamble.

1.32    "**Judgment**" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

1.33    "**Lead Counsel**" means the law firm Wolf Popper LLP.

1.34    "**Lead Plaintiff**" or "**Weeks**" has the meaning set forth in the Preamble.

1.35    "**Longform Notice**" means the Notice of (i) Pendency of Class Action, Certification of Settlement Classes, and Proposed Settlement; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached as Exhibit A-3.

1.36    "**Merger**" has the meaning set forth in ¶ 1.70.

1.37    "**Named Plaintiffs**" has the meaning set forth in the Preamble.

1.38    "**NASDAQ**" has the meaning set forth in ¶ 1.70.

1.39    "**Net Settlement Fund**" means the Settlement Fund less any Taxes and Tax Expenses; Fee and Expense Award; and Notice and Administration Costs.

1.40    "**Notices**" or "**Notice Program**" means the full program to provide notice of pendency of the Settlement to the Settlement Classes as approved by the Court, including the Postcard Notice, the Summary Notice, the Longform Notice, and the Settlement Website.

1.41    "**Notice and Administration Costs**" means the costs, fees, and expenses associated with the Notice Program or otherwise administering or carrying out the terms of the Settlement Agreement. Such costs may include, without limitation: the cost of identifying and locating Members of the Settlement Classes; mailing and/or publishing any Notice (such amounts shall include, without limitation, the actual costs of publication in national newswires, printing and mailing Notices, and reimbursement to nominee owners for forwarding Notice to their beneficial

owners); communicating with Persons regarding the proposed Settlement and claims administration process and assisting with the submission of Claims; processing Proof of Claim and Release Forms; administering and distributing the Net Settlement Fund to Authorized Claimants; and paying Escrow Account or Escrow Agent fees and costs, if any. Fee and Expense Awards, which are payable to Plaintiffs' Counsel, are exclusive of Notice and Administration Costs.

1.42 **"Notice Date"** means the date or dates by which Plaintiffs are required to cause, as directed by the Preliminary Approval Order, the Claims Administrator to mail, by first-class mail, postage prepaid, or where practicable, email, a copy of the Postcard Notice to each Member of the Settlement Classes and third-party nominees and custodians who can be identified by the Parties using reasonable effort; publish the Summary Notice; and publish the Settlement Website.

1.43 **"Offering"** means the September 2, 2021 offering of Arqit Securities in connection with the Merger.

1.44 **"Offering Materials"** has the meaning set forth in ¶ 1.70.

1.45 **"Parties"** means Defendants and Plaintiffs, on behalf of themselves and the Settlement Class Members.

1.46 **"Plaintiffs"** has the meaning set forth in the Preamble.

1.47 **"Plaintiffs' Counsel"** means the law firm Wolf Popper LLP and the law firm Levi & Korsinsky, LLP.

1.48 **"Person"** means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and for each of them their respective heirs, successors-in-interest, or assigns.

1.49 **"Plaintiffs' Releasees"** means Plaintiffs, Plaintiffs' Counsel, and all other Settlement Class Members, and their respective past and present officers, directors, employees, insurers, investigators, confidential witnesses referred to in the Complaint, reinsurers, subsidiaries, affiliates, successors, representatives, auditors, attorneys, and agents, and the heirs, predecessors, and assigns of the foregoing.

1.50 **"Plan of Allocation"** means the proposed plan or formula of allocation of the Net Settlement Fund to Authorized Claimants, to be designed by Plaintiffs' Counsel in their sole discretion, and subject to the approval of the Court. Any Plan of Allocation is not part of this Settlement Agreement and none of Defendants' Releasees shall have any responsibility or liability with respect thereto.

1.51 **"Postcard Notice"** means the Postcard Notice of Proposed Settlement of Class Action, substantially in the form attached as Exhibit A-1.

1.52 **"Preliminary Approval Order"** means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement,

certifying the Settlement Classes for settlement purposes only, and directing dissemination of Notice to the Settlement Class Members.

1.53 "**Proof of Claim**" or "**Claim Form**" means the Proof of Claim and Release form that a Claimant must complete and submit should that Claimant seek to share in a distribution of the Net Settlement Fund, substantially in the form attached as Exhibit A-4.

1.54 "**PSLRA**" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 and 15 U.S.C. § 77z-1, as amended.

1.55 "**PSLRA Reimbursement Awards**" means reimbursement of the Plaintiffs, which is approved by the Court pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), 15 U.S.C. § 77z-1(a)(4), of the Plaintiffs' reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

1.56 "**Released Claims**" means the Released Defendants' Claims and Released Plaintiffs' Claims, including Unknown Claims.

1.57 "**Released Defendants' Claims**" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, against Plaintiffs' Releasees that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation. "Released Defendants' Claims" shall not include, and nothing in this Settlement Agreement or the Judgment shall release or affect, any claims, demands, rights, or causes of action by any of Defendants' Releasees to effectuate the protections from liability granted hereunder or otherwise enforce the terms of this Settlement Agreement or the Judgment.

1.58 "**Released Parties**" means Defendants' Releasees and Plaintiffs' Releasees.

1.59 "**Released Plaintiffs' Claims**" means the Settlement Class Claims, including Unknown Claims.

1.60 "**Releases**" means the release of Released Claims against Released Parties pursuant to ¶¶ 4.1-4.4.

1.61 "**Request for Exclusion**" has the meaning set forth in ¶ 1.70.

1.62 "**SEC**" means the U.S. Securities and Exchange Commission.

1.63 "**Section 10(b) Defendants**" means Defendants Arqit, Williams, and Pointon.

1.64 "**Section 14(a) Defendants**" means Defendants Arqit, Williams, Pointon, Lefebvre, Ritchie, Jamieson, and Wilson

1.65 "**Securities Act**" has the meaning set forth in Whereas ¶ B.

1.66 "**Securities Act Defendants**" means Defendants Arqit, Williams, Pointon, Calabria, Chandler, Lefebvre, Jamieson, Ritchie, and Wilson.

1.67  "**Settlement**" means the resolution of the Action in accordance with the terms and provisions of this Settlement Agreement.

1.68  "**Settlement Agreement**" has the meaning set forth in the Preamble.

1.69  "**Settlement Amount**" means the consideration for a full and complete settlement of all Released Plaintiffs' Claims being paid or caused to be paid by the Company in the amount of seven million U.S. dollars ($7,000,000) in cash.

1.70  "**Settlement Classes**" means, for settlement purposes only, collectively:

(a)  "**Section 14(a) Class**": all beneficial holders of Centricus units or Centricus Class A ordinary shares as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger between Arqit and Centricus (the "**Merger**"), which resulted in the public listing of Arqit's ordinary shares and warrants on the NASDAQ Global Markets exchange ("**NASDAQ**") on September 7, 2021;

(b)  "**Section 10(b) Class**": all persons or entities who purchased or otherwise acquired Arqit Securities in connection with the Merger or on a U.S. stock exchange between September 7, 2021 and December 13, 2022, inclusive (the Class Period); and

(c)  "**Securities Act Class**": all persons or entities who purchased or otherwise acquired Arqit Securities pursuant or traceable to the effective "**Registration Statement**" and "**Prospectus**" (collectively the "**Offering Materials**") filed with the SEC for the September 2, 2021 Offering of Arqit securities in connection with the Merger.

Certain of the Settlement Classes overlap, so that a Settlement Class Member could be a member of more than one Settlement Class.

Excluded from the Settlement Classes are Defendants, the current and former officers, directors, and employees of Arqit, Arqit Limited, and Centricus, (the "**Excluded Persons**"), members of Defendants' and Excluded Persons' immediate families, legal representatives, heirs, successors or assigns, D2BW Limited, Notion Capital Managers LLP, Notion Capital II GP LLP, NML Limited, MNL Nominees Limited, Centricus Heritage LLC, the Heritage Group, any other entity in which Defendants or the Excluded Persons have or had a controlling interest, and any Settlement Class Member who timely files a request for exclusion from the Settlement Classes in accordance with the provisions of the Preliminary Approval Order and the notice given pursuant thereto (a "**Request for Exclusion**") that is accepted by the Court.

1.71  "**Settlement Class Claims**" means any and all claims, demands, losses, rights, and causes of action of every nature and description, whether known or Unknown, whether arising under federal, state, common, or foreign law, that Plaintiffs or any other Member of the Settlement Classes (a) asserted in the Complaint, or (b) could have asserted in the Complaint or another action, or could in the future assert in any court or forum that (i) arise out of or relate to any of the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, or referred to in the Complaint and (ii) relate in any way, directly or indirectly, to the purchase or acquisition of the Company's ordinary shares or warrants, or those of the Company's predecessor, Centricus, the voting of Centricus's Class A ordinary shares in connection with the

Merger, or the decision to hold Centricus Securities through the Merger. "Settlement Class Claims" shall not include, and the release of the Settlement Class Claims shall not cover, include, or release (1) any claims relating to the enforcement of this Settlement Agreement; (2) any claims of any person or entity that submits a Request for Exclusion from the Settlement Classes that is accepted by the Court; or (3) any ERISA or derivative claims.

1.72    "**Settlement Class Member**" or "**Member of the Settlement Classes**" means any Person who falls within the definition of the Settlement Classes.

1.73    "**Settlement Hearing**" means a hearing to be held by the Court under FRCP 23(e)(2) to determine whether the proposed Settlement on the terms and conditions provided for in this Settlement Agreement is fair, reasonable, and adequate to each of the Settlement Classes and should be approved by the Court; to determine whether a Judgment as provided in the Settlement Agreement should be entered; to determine whether the proposed Plan of Allocation should be approved; to determine any amount of fees, costs and expenses that should be awarded to Plaintiffs' Counsel; to hear any objections by Settlement Class Members to the Settlement Agreement, Plan of Allocation, or any award of fees and expenses to Plaintiffs' Counsel; and to consider such other matters as the Court may deem appropriate.

1.74    "**Settlement Fund**" means the Settlement Amount plus all interest accrued to the Settlement Amount.

1.75    "**Settlement Website**" means www.arqitsecuritiessettlement.com, a website created by the Claims Administrator in connection with administration of the Settlement.

1.76    "**Summary Notice**" means the Summary Notice of Proposed Settlement of Class Action, substantially in the form attached as Exhibit A-2.

1.77    "**Supplemental Agreement**" has the meaning set forth in ¶ 11.1.

1.78    "**Tax**" or "**Taxes**" means all federal, state, and/or local taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind imposed by any governmental authority arising with respect to any income earned by the Settlement Fund, together with any interest, penalties, or additions to tax imposed with respect to them.

1.79    "**Tax Expenses**" means the reasonable and necessary costs and expenses incurred in connection with the implementation of ¶¶ 7.3-7.9 of the Settlement Agreement, including, without limitation, the reasonable and necessary costs and expenses of tax attorneys and accountants.

1.80    "**Term Sheet**" means the term sheet with respect to the settlement of this Action executed by counsel for the Parties on October 20, 2025.

1.81    "**Unknown Claims**" in reference to Released Claims means and includes any and all Settlement Class Claims that Plaintiffs or any Settlement Class Member do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement, or might

have affected his, her or its decision not to object to the Settlement or seek exclusion from the Settlement Classes.

With respect to the Released Claims, the Parties stipulate and agree that upon the Effective Date, each Settlement Class Member and other Released Party shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by California Civil Code § 1542, or any law of any state or territory of the United States or principle of common law, that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly, fully, finally, and forever settle and release, and each of Plaintiffs' Releasees, including each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, and Defendants shall expressly, fully, finally, and forever settle and release, and each of Defendants' Releasees, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, in each case known or Unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and the Settlement Class Members and the other Released Parties, by operation of the Judgment, shall be deemed to have acknowledged, that the foregoing waiver and inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and is a material element of the Settlement of which these releases are a part.

## SECTION 2: CLASS CERTIFICATION

2.1     Solely for purposes of the Settlement and for no other purpose, Defendants stipulate and agree to certification of the above-defined Settlement Classes.

2.2     Solely for purposes of the Settlement and for no other purpose, Defendants stipulate to the appointment of Plaintiffs as the Class Representatives, and to the appointment of Plaintiffs' Counsel as Class Counsel.

## SECTION 3: PRELIMINARY APPROVAL OF SETTLEMENT

3.1     Following the execution of this Settlement Agreement, Plaintiffs' Counsel will file a motion with the Court for preliminary approval of the Settlement, certification of the Settlement Classes for Settlement purposes only, authorization to provide notice of the Settlement to the

Settlement Classes, and the scheduling of a Settlement Hearing for consideration of final approval of the Settlement, which motion shall be unopposed by Defendants.

3.2     Concurrently with the motion for preliminary approval, Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

3.3     As part of the motion for preliminary approval, Plaintiffs' Counsel shall request that, after Notice is given and following the filing of this Settlement Agreement, the Court schedule and hold the Settlement Hearing and approve the Settlement of the Litigation as set forth herein. Plaintiffs' Counsel shall request that the Court schedule the Settlement Hearing for a date that is no earlier than ninety (90) calendar days after the entry of the Preliminary Approval Order. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

## SECTION 4: RELEASE OF CLAIMS

4.1     The obligations incurred pursuant to this Settlement Agreement are in consideration of: (a) the full and final disposition of the Action as against Defendants; and (b) the Releases provided for herein.

4.2     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees, in any court or other forum, regardless of whether such claims are currently pending, and regardless of whether such Settlement Class Members execute and deliver a Proof of Claim Form or share in the Settlement Fund. For the avoidance of doubt, no Judgment shall issue releasing Released Defendants' Claims or Released Plaintiffs' Claims until the full Settlement Amount is paid into the Escrow Account.

4.3     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees, in any court or other forum, regardless of whether such claims are currently pending. For the avoidance of doubt, no Judgment shall issue releasing Released Defendants' Claims or Released Plaintiffs' Claims until the full Settlement Amount is paid into the Escrow Account.

4.4     Notwithstanding the provisions of ¶¶ 4.1-4.3 above, nothing in the Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Settlement Agreement or the Judgment.

## SECTION 5: THE SETTLEMENT CONSIDERATION

5.1     In consideration of the settlement of the Settlement Class Claims against Defendants and the other Defendants' Releasees, Arqit agrees to pay, or to cause to be paid, on behalf of all Defendants, seven million dollars ($7,000,000) in cash to resolve the Action.

5.2     The Settlement Amount will be paid into an interest-bearing escrow account overseen by an escrow agent and controlled by Plaintiffs' Counsel within fifteen (15) business days after the later of: (i) entry of a Preliminary Approval Order; or (ii) provision by Plaintiffs' Counsel to Defendants' counsel of complete and accurate payment instructions, including contact information for a person to provide verbal verification of the wire instructions, and a W-9 for the Settlement Fund.

5.3     Defendants' sole financial obligation to Plaintiffs, the Settlement Class Members and Plaintiffs' Counsel under this Settlement Agreement shall be as set forth in ¶¶ 5.1-5.2, and under no circumstances shall Defendants have any obligation to make any other or greater payment to them for any purpose pursuant to the Settlement. All payments made to Authorized Claimants pursuant to the Plan of Allocation as approved by the Court, the Fee and Expense Award by Court to Plaintiffs' Counsel, and all administrative and other approved expenses of the Settlement, including Taxes and Tax Expenses, shall be paid from the Settlement Fund.

5.4     The Parties acknowledge and agree that the payment(s) to be made under this Settlement Agreement are made for fair consideration and reasonably equivalent value. The Parties further represent and warrant that the payment(s) are not intended to hinder, delay, or defraud any creditor, and that such payment(s) do not constitute a fraudulent transfer or conveyance under the United States Bankruptcy Code (11 U.S.C. §§ 548 *et seq.*), any applicable state fraudulent conveyance or transfer laws, or any similar applicable law.

5.5     Each Party acknowledges that it is entering into this Settlement Agreement in good faith and that the Settlement contemplated herein is the result of an arm's-length negotiation (conducted through a mediator, *see supra* at Whereas ¶¶ J, P), made in the ordinary course of business, and constitutes a settlement of a bona fide dispute.

## SECTION 6: USE OF SETTLEMENT FUND

6.1     The Settlement Fund shall be used to pay: (a) any Taxes and Tax Expenses; (b) any Notice and Administration Costs; (c) any Fee and Expense Award; and (d) any other costs and fees approved by the Court. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided herein.

6.2     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of

this Settlement Agreement and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof (or a mutual fund invested 95% or more in such instruments), and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC. In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or invested in instruments backed by the full faith and credit of the United States. Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or invested in instruments backed by the full faith and credit of the United States. The Escrow Account shall require a signature from a partner of Lead Counsel to release any portion of the Settlement Fund.

6.3     The Parties agree that the Settlement Fund is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and that Plaintiffs' Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Plaintiffs' Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. Defendants' Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, Defendants will provide to Plaintiffs' Counsel the statement described in Treasury Regulation § 1.468B-3(e). Plaintiffs' Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

6.4     All Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund, and shall be paid out of the Settlement Fund, and shall be timely paid, or caused to be paid, by Plaintiffs' Counsel and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Plaintiffs' Counsel or their agents with respect to the payment of Taxes, as described herein.

6.5     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Settlement Classes as are consistent with the terms of this Settlement Agreement. The Escrow Agent shall not disburse any part of the Settlement Fund except as provided in this Settlement Agreement, by an order of the Court, or with the written agreement of Defendants' Counsel and Plaintiffs' Counsel. Defendants, Defendants' Counsel, and the Released Parties have no responsibility for, interest in, or liability

whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Defendants, Defendants' Counsel and the Released Parties harmless for any transaction executed by the Escrow Agent.

6.6     No monies will be disbursed from the Settlement Fund until after the Effective Date except regarding Notice and Administration Costs pursuant to ¶¶ 7.1-7.2, Taxes and Tax Expenses pursuant to ¶¶ 6.4, 7.3-7.9, and attorneys' fees and expenses pursuant to ¶ 8.2.

6.7     This is not a claims-made settlement. As of the Effective Date, the Defendants' Releasees, and/or any other Person funding the Settlement on their behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason, and shall not have any liability should Claims made exceed the amount available in the Settlement Fund for payment of such Claims. Defendants' Releasees shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of Claims, Taxes and Tax Expenses, legal fees, or any other expenses payable from the Settlement Fund.

## SECTION 7: NOTICE AND ADMINISTRATION COSTS; TAXES AND TAX EXPENSES

7.1     Plaintiffs' Counsel may, upon approval from the Court, pay from the Escrow Account actual, reasonable, and necessary Notice and Administration Costs. Before the Effective Date, Plaintiffs' Counsel and the Escrow Agent may pay Notice and Administration Expenses in an amount up to $200,000 out of the Settlement Fund without further approval from Defendants and without further order of the Court.

7.2     Defendants and Defendants' Counsel, and the Released Parties, shall not bear any responsibility or liability for Notice and Administration Costs.

7.3     The Escrow Agent and/or Claims Administrator will, to the extent possible, agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

7.4     The Escrow Agent and/or Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described) shall be consistent with this paragraph, and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties on the income earned) shall be paid out of the Settlement Fund.

7.5     All Taxes and Tax Expenses relating to the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

7.6     Taxes and Tax Expenses shall be treated as and considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court but shall not be considered or treated as part of the Notice and Administration Costs.

7.7     Defendants, Defendants' Counsel, and Defendants' Releasees shall have no liability or responsibility for Taxes and Tax Expenses. The Escrow Agent shall indemnify and hold Defendants, Defendants' Counsel, Released Parties, Plaintiffs, Settlement Class Members, and Plaintiffs' Counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).

7.8     The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay expenses relating to the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Neither Defendants, Defendants' Counsel, Released Parties, Plaintiffs, Settlement Class Members, nor Plaintiffs' Counsel are responsible therefor, nor shall they have any liability with respect thereto.

7.9     The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 7 of the Settlement Agreement.

**SECTION 8: ATTORNEYS' FEES**

8.1     Plaintiffs' Counsel will file a Fee and Expense Application with the Court. Any Fee and Expense Award will be paid solely from (and out of) the Settlement Fund. Plaintiffs' Counsel's application for a Fee and Expense Award is not the subject of any agreement between Defendants and Plaintiffs other than what is expressly set forth in this Settlement Agreement.

8.2     The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.

8.3     Any attorneys' fees and reimbursement of litigation costs and expenses that are awarded by the Court shall be paid to Plaintiffs' Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Settlement Agreement or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or costs is reduced or reversed and such order reducing or reversing the award has become Final. Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or costs has become Final.

8.4     An award of attorneys' fees and/or costs is not a necessary term of this Settlement Agreement and is not a condition of the Settlement embodied herein. Neither Plaintiffs nor

Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or costs.

8.5    Defendants, Defendants' Counsel and Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or costs. The attorneys' fees and/or costs that are awarded to Plaintiffs' Counsel shall be payable solely from the Escrow Account.

## SECTION 9: NOTICE AND SETTLEMENT ADMINISTRATION

9.1    As part of the Preliminary Approval Order, Plaintiffs' Counsel shall seek appointment of the Claims Administrator. The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims, under Plaintiffs' Counsel's supervision and subject to the jurisdiction of the Court. Other than Arqit's obligation to provide its shareholder list as provided in ¶ 9.3 below, none of the Defendants, nor any of the other Defendants' Releasees, shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any Person, including, but not limited to, Plaintiffs, any other Settlement Class Members, or Plaintiffs' Counsel in connection with the foregoing. Defendants and Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

9.2    Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, no later than ten (10) calendar days after this Settlement Agreement is filed with the Court, the Company shall complete service of the CAFA Notice on the appropriate federal and state government officials and shall thereafter notify Plaintiffs' Counsel as to completion of such service. The Company shall pay the costs of providing the CAFA Notice required by law. The cost of CAFA Notice shall not be paid from the Settlement Fund or be considered Notice and Administration Expenses.

9.3    For the purposes of identifying and providing notice to the Settlement Classes, within fourteen (14) calendar days of the date of entry of the Preliminary Approval Order, Arqit shall provide or cause to be provided to the Claims Administrator and Plaintiffs' Counsel in electronic format (at no cost to the Settlement Fund, Plaintiffs' Counsel, or the Claims Administrator) a list (consisting of names, mailing addresses, and, if available, email addresses) of the record purchasers of Arqit Securities during the Class Period.

9.4    In accordance with the terms of the Preliminary Approval Order to be entered by the Court, within twenty-eight (28) calendar days of the entry of the Preliminary Approval Order, Plaintiffs' Counsel shall cause the Claims Administrator to mail, or email where necessary, the Postcard Notice to those members of the Settlement Classes as may be identified through reasonable effort (the Notice Date). On or before the Notice Date, the Claims Administrator shall publish the Longform Notice and the Proof of Claim and Release in a form available for download (i.e. PDF) on the Settlement Website. The Claims Administrator shall also mail or email a copy of the Longform Notice and Proof of Claim and Release to any Settlement Class Member that requests one by phone, email, or mail. On or before the Notice Date, the Claims Administrator

shall cause the Summary Notice to be published once over PRNewswire or a similar wire service with similar reach. The cost of providing such Notice shall constitute Notice and Administrative Costs. Subject to the requirements of the Preliminary Approval Order, Plaintiffs' Counsel and the Claims Administrator shall submit to the Court affidavits demonstrating the adequacy of its efforts to provide notice to Settlement Class Members. The Defendants and Defendants' Counsel shall have no responsibility with respect to the tasks enumerated or described in this paragraph.

9.5     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's valid Claim compared to the total valid Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Longform Notice attached hereto as Exhibit A-3, or in such other plan of allocation as the Court approves).

9.6     The Plan of Allocation proposed in the Longform Notice is not a necessary term of the Settlement or of this Settlement Agreement and it is not a condition of the Settlement or of this Settlement Agreement that any particular plan of allocation be approved by the Court. Plaintiffs and Plaintiffs' Counsel may not cancel or terminate the Settlement (or this Settlement Agreement) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Defendants and the other Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action. No Defendant, or any of the other Defendants' Releasees, shall have any involvement with, or liability, obligation or responsibility whatsoever for, the application of the Court-approved plan of allocation.

9.7     If the Settlement contemplated by this Settlement Agreement is approved by the Court, the Parties shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

9.8     Any Settlement Class Member who does not submit a valid and timely Claim will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment to be entered in the Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Settlement Class Claims in the event that the Effective Date occurs with respect to the Settlement.

9.9     Plaintiffs' Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. No Defendant, or Defendants' counsel, or any of Defendants' Releasees, shall be permitted to review, contest, or object to any Claim, or any decision of the Claims Administrator or Plaintiffs' Counsel with respect to accepting or rejecting any Claim for payment. Plaintiffs' Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claims submitted in the interests of achieving substantial justice.

9.10    For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant and the extent to which the Claim made by the Authorized Claimant is a valid Claim, the following conditions shall apply:

(a)    Each Claimant shall be required to submit a Claim in paper form, substantially in the form attached hereto as Exhibit A-4, or in electronic form, in accordance with the instructions for the submission of such Claims, and supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Plaintiffs' Counsel, in their discretion, may deem acceptable. Each Claim must be signed under penalty of perjury;

(b)    All Claims must be submitted within one hundred and ten (110) calendar days after the Notice Date or such other date set by the Court in the Preliminary Approval Order and specified in the Notices. Any Settlement Class Member who fails to submit a Claim by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Settlement Agreement (unless by Order of the Court such Settlement Class Member's Claim is accepted), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any of Defendants' Releasees with respect to any Settlement Class Claim. Provided that it is mailed by the claim submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator. Notwithstanding the foregoing, Plaintiffs' Counsel shall have the discretion (but not an obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion;

(c)    Each Claim shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Settlement Agreement and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph 9.10(e) below as necessary;

(d)    Claims that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph 9.10(e) below; and

(e)    If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice

required in subparagraph 9.10(d) above or a lesser time period if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Plaintiffs' Counsel shall thereafter present the request for review to the Court, and, if applicable, state their position as to whether the claim should be accepted or rejected.

9.11    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the FRCP, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claims.

9.12    Plaintiffs' Counsel will apply to the Court for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account. No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than ten dollars ($10.00) in cash.

9.13    If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall, if feasible and economical, be redistributed in an equitable and economic fashion among Authorized Claimants who have cashed their checks, without further Order of the Court. These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute to Settlement Class Members, without further Order of the Court. Any balance that still remains in the Net Settlement Fund after re-distribution(s) and that is not feasible or economical to reallocate, after payment of Notice and Administration Costs, Taxes and Tax Expenses, and attorneys' fees and expenses, shall be donated to The Bluhm Legal Clinic Complex Civil Litigation and Investor Protection Center at the Northwestern University Pritzker School of Law. The identification herein of a cy pres recipient is not a material term of the Settlement Agreement. Should the Court reject the cy pres proposal herein, the parties will submit a new proposal for the Court's approval. Plaintiffs' Counsel may also seek Court approval to pay additional Notice and Administration Costs accrued by the Claims Administrator. To facilitate the orderly distribution of the Net Settlement Fund under this paragraph, all checks issued to Authorized Claimants shall contain a legend that the check will expire after one hundred eighty (180) calendar days from date of the check.

9.14    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Claimants. All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment to be entered in this Action and the Releases provided for

herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Settlement Class Claims.

9.15    No person or entity shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, or any other Person designated by Plaintiffs' Counsel, or Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Settlement Agreement, the plan of allocation approved by the Court, or any order of the Court. Plaintiffs and Defendants, and their respective counsel, and Plaintiffs' damages expert and all other Released Parties, shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

9.16    All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Settlement Class Members, other Claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## SECTION 10: OBJECTIONS AND REQUESTS FOR EXCLUSION

10.1    Any Settlement Class Member who intends to object to the fairness of the Settlement must do so within the time and in the manner provided by the Court's Preliminary Approval Order. The deadline for submitting objections to the fairness of the Settlement is that they shall be received on or before twenty-one (21) calendar days before the Settlement Hearing, or as the Court may otherwise direct. Any Class Member who fails to timely file and serve a written objection and notice of his, her or its intent to appear at the Settlement Hearing, pursuant to this paragraph and the Preliminary Approval Order, shall not be permitted to object to the approval of the Settlement at the Settlement Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement, by appeal or other means, unless the Court orders otherwise. Any objection to the fairness of the Settlement must be in writing and signed under penalty of perjury by the Class Member, and must include the information required as set forth in the Preliminary Approval Order.

10.2    Eligible Persons requesting exclusion must do so within the time and in the manner provided by the Court's Preliminary Approval Order. The deadline for submitting requests for exclusion is that they shall be received on or before twenty-one (21) calendar days before the Settlement Hearing, or as the Court may otherwise direct. Any Request for Exclusion must be in writing and signed under penalty of perjury by the beneficial owner(s) of the shares of Arqit Securities or Centricus Securities that are the subject of the Request for Exclusion, and must include the information required as set forth in the Preliminary Approval Order.

10.3    The Claims Administrator shall scan and send electronically copies of all requests for exclusion from, and objections to, the Settlement Agreement, Settlement, the Plan of Allocation, or the Fee and Expense Application, in PDF format (or such other format as shall be

agreed), to counsel for Defendants and to Plaintiffs' Counsel, within five (5) calendar days of the Claims Administrator's receipt of such requests for exclusion or objections.

10.4　As part of their reply papers in support of their motion for final approval of the settlement of the Litigation, Plaintiffs' Counsel will provide a list of all Persons who have requested exclusion from the Settlement Classes and all of the information provided to the Claims Administrator under ¶ 10.2 of this Settlement Agreement for those Persons requesting exclusion, and shall certify that all Requests for Exclusion received have been provided to Defendants' Counsel.

## SECTION 11: CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

11.1　If, before the Settlement Hearing, any persons who otherwise would be Settlement Class Members have timely filed for exclusion from the Settlement Classes in accordance with the provisions of the Preliminary Approval Order and the notice given pursuant thereto, and such persons in the aggregate have purchased a number of Company securities during the Class Period and/or owned a number of Centricus Class A ordinary shares or Centricus units as of the July 26, 2021 record date, in an amount greater than the sum specified in a separate Supplemental Agreement (as defined below) between the Parties, Arqit, on behalf of all Defendants shall have the option, after providing reasonable notice to the Individual Defendants, to terminate the Settlement and this Settlement Agreement in accordance with the procedures set forth in the Supplemental Agreement (as defined below). A separate confidential agreement ("**Supplemental Agreement**") between Plaintiffs and Defendants will specify this figure and provide timing and other provisions for the type of purchase/sale data required of proposed opt-outs, the opt-out deadline, and reporting of opt-out data by the Claims Administrator. The Supplemental Agreement shall not be filed with the Court and may be disclosed to the Court only *in camera* and only if a dispute over the terms arises between the Parties, or if all Parties consent to disclosure; however, if the Court issues an order requiring the Supplemental Agreement to be filed, then any Party may so file the Supplemental Agreement in response to that Order without violating this Settlement Agreement.

11.2　Plaintiffs shall have the right to terminate the Settlement and this Settlement Agreement, notwithstanding preliminary approval that may be provided by the Court, by providing written notice of their election to do so to Defendants' Counsel within ten (10) business days of: (a) a decision by the Court declining to enter the Preliminary Approval Order in any material respect; (b) a decision by the Court refusing to approve this Settlement Agreement in any material respect or any material part thereof; (c) a decision by the Court declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Any decision with respect to any Plan of Allocation, or Fee and Expense Award shall not be considered material to this Settlement Agreement and shall not be grounds for termination.

11.3　If the Settlement Amount is not paid into the Escrow Account in accordance with this Settlement Agreement, then Plaintiffs, on behalf of the Settlement Classes, shall have the right to: (a) terminate the Settlement; or (b) apply to the Court to enforce the terms of the Settlement and Settlement Agreement, but only if (i) Plaintiffs' Counsel has first notified Defendants' Counsel

in writing that the entire Settlement Amount has not been paid into the Escrow Account, and (ii) the entire Settlement Amount is not deposited in the Escrow Account within ten (10) business days after Plaintiffs' Counsel has provided such written notice.

11.4    Lead Plaintiff, on behalf of all Plaintiffs, shall have the right to terminate the Settlement if the Settlement Amount is subject to a claw-back, injunction, or other similar order requiring its return or preventing its distribution resulting from a bankruptcy proceeding or other proceeding other than an objection to or appeal of this Settlement.

11.5    If the Court declines to approve the Settlement (or any part of the Settlement), the Court declines to certify one or more of the Settlement Classes, the Settlement (or any part of the Settlement) or certification of the Settlement Classes are reversed on appeal, or the Settlement is terminated pursuant to the terms of the Settlement Agreement, then:

(a)    The Settlement and the relevant portions of this Settlement Agreement shall be canceled and terminated without prejudice, and this Settlement Agreement shall be null and void and shall have no further force or effect (except for ¶¶ 5.4, 6.2-6.5, 7.3-7.6, 7.8, 8.3, 11.5, 12.1, 13.6, 13.13, 13.18. 13.20);

(b)    The Settlement Amount including any interest accrued thereon, less expenses actually incurred or due and owing for the Notice and Administration Costs pursuant to ¶¶ 7.1-7.2 above, less expenses actually incurred or due and owing for Taxes and Tax Expenses pursuant to ¶¶ 6.4, 7.3-7.9, shall be refunded by check or wire transfer within thirty (30) calendar days in accordance with the written instructions to be provided by Defendants' Counsel;

(c)    The Escrow Agent shall return all sums deposited into the Escrow Account plus interest actually earned to Defendants and/or their insurance carriers;

(d)    Plaintiffs' Counsel will return any attorneys' fees or litigation costs and expenses they received; and

(e)    The Parties shall revert to their respective positions in the Action as they existed prior to the date of this Agreement, and counsel for the Parties shall negotiate in good faith a proposed new scheduling order for the Action.

**SECTION 12: NO ADMISSION OF WRONGDOING**

12.1    Neither the Term Sheet, nor the Settlement (whether or not consummated), nor this Settlement Agreement, including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), nor the negotiations leading to the execution of the Term Sheet, the Settlement or this Settlement Agreement, nor any proceedings taken pursuant to or in connection with the Term Sheet, this Settlement Agreement, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)    shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been

or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees, or that any alleged act, statement, omission or conduct by any of the Defendants' Releasees caused injury or damage to Plaintiffs or members of the Settlement Classes;

(b)     shall be in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement;

(c)     shall be offered against any of the Plaintiffs' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount, or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; or

(d)     shall be construed against any of the Released Parties as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

12.2     Notwithstanding the foregoing, however, if the Settlement is approved by the Court, the Parties and the Released Parties and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## SECTION 13: MISCELLANEOUS PROVISIONS

13.1     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Settlement Agreement and the terms of any exhibit attached hereto, the terms of the Settlement Agreement shall prevail.

13.2     Defendants warrant that, as to the payments made or to be made on behalf of them, at the time of entering into this Settlement Agreement and at the time of such payment they, or to the best of their knowledge any persons or entities contributing to the payment of the Settlement Amount, were not insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This representation is made by each of the Defendants and not by their counsel.

13.3     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Plaintiff, Plaintiffs and Defendants shall jointly

move the Court to vacate and set aside the Releases given and the Judgment, if applicable, entered in favor of Defendants and the other Released Parties pursuant to this Settlement Agreement, in which event the Releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 11.5 above and any cash amounts in the Settlement Fund (less any Taxes and Tax Expenses paid, due, or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid, or payable) shall be returned as provided in ¶ 11.5 above.

13.4    The Parties intend this Settlement Agreement and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs and any other Settlement Class Members against the Defendants' Releasees with respect to the Settlement Class Claims. The Parties agree that each Party, and their respective counsel, have complied fully with the strictures of FRCP 11. No Party shall assert any claims of any violation of FRCP 11 relating to the institution, prosecution, defense, or settlement of this Action. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process supervised and conducted by Robert Meyer of JAMS, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

13.5    While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel. The Parties shall, in good faith, endeavor to communicate the terms of the Settlement in a manner that is respectful of the fact that no final adjudication of fault was determined by a court or jury. In all events, Plaintiffs and their counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

13.6    The terms of the Settlement, as reflected in this Settlement Agreement, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of all Parties.

13.7    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

13.8    The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for a Fee and Expense Award and enforcing the terms of this Settlement Agreement, including approval of the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

13.9    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

13.10    This Settlement Agreement and its exhibits and the Supplemental Agreement constitute the entire agreement among Plaintiffs and Defendants concerning the Settlement and this Settlement Agreement and its exhibits. All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Settlement Agreement, its exhibits, or the Supplemental Agreement other than those contained and memorialized in such documents.

13.11    This Settlement Agreement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

13.12    This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

13.13    The construction, interpretation, operation, effect, and validity of this Settlement Agreement, the Supplemental Agreement, and all documents necessary to effectuate it shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.  Any action arising under or to enforce this Settlement Agreement or any portion thereof, shall be commenced and maintained only in the Court.

13.14    This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

13.15    All counsel and any other person executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

13.16    Plaintiffs' Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Settlement Agreement, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

13.17    If any Party is required to give notice to another Party under this Settlement Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt. Notice shall be provided as follows:

If to Plaintiffs or Plaintiffs' Counsel:

Joshua W. Ruthizer and Adam J. Blander
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
jruthizer@wolfpopper.com
ablander@wolfpopper.com

Shannon L. Hopkins and Gregory M. Potrepka
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
shopkins@zlk.com
gpotrepka@zlk.com

If to counsel for Arqit, Carlo Calabria, Stephen Chandler, Manfredi Lefebvre d'Ovidio, VeraLinn Jamieson, Garth Ritchie, and Stephen Wilson:

John P. Nowak, Joel C. Haims and Julia M. Beskin
MCDERMOTT WILL & SCHULTE LLP
919 Third Avenue
New York, NY 10022
john.nowak@srz.com
jhaims@mwe.com
julia.beskin@srz.com

If to counsel for David Williams and Nick Pointon:

Joshua D. Weedman and Susan L. Grace
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
jweedman@whitecase.com
susan.grace@whitecase.com

13.18   Except as otherwise provided herein, each Party shall bear its own costs.

13.19   Whether or not the Settlement Agreement is approved by the Court and whether or not the Settlement Agreement is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Settlement Agreement confidential, except where disclosure may be required by law or may be necessary to effectuate the terms of the Settlement.

13.20   All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

13.21   No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys, as of January 9, 2026.

WOLF POPPER LLP

By: */s/ Joshua W. Ruthizer*
Robert C. Finkel
Joshua W. Ruthizer
Adam J. Blander
Justyn Millamena
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 759-4600
rfinkel@wolfpopper.com
jruthizer@wolfpopper.com
ablander@wolfpopper.com
jmillamena@wolfpopper.com

*Lead Counsel for Lead Plaintiff Chris Weeks*


LEVI & KORSINSKY, LLP

By: */s/ Shannon L. Hopkins*
Shannon L. Hopkins
Gregory M. Potrepka
Andrew E. Lencyk
P. Cole von Richthofen
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
alencyk@zlk.com
cvrichthofen@zlk.com

MCDERMOTT WILL & SCHULTE LLP

By: */s/ Julia Beskin*
John P. Nowak
Julia Beskin
Shannon B. Wolf
919 Third Avenue
New York, NY 10022
Telephone:  (212) 756-2396
john.nowak@srz.com
julia.beskin@srz.com
shannon.wolf@srz.com

Joel C. Haims
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
jhaims@mwe.com

Nathaniel D. Palmer
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone:  (202) 756-8000
Facsimile:  (202) 756-8087
nathaniel.palmer@srz.com

*Counsel for Defendants Arqit Quantum Inc.,
Carlo Calabria, Stephen Chandler, Manfredi
Lefebvre d'Ovidio, Garth Ritchie, VeraLinn
Jamieson, and Stephen Wilson*

WHITE & CASE LLP

By:  */s/ Joshua D. Weedman*
Joshua D. Weedman
Susan L. Grace

*Additional Counsel for Plaintiffs and Putative Class Representatives Patrick L. Hagemeister, Erwin Jay Lack, and Walter Littlejohn III*

1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jweedman@whitecase.com
susan.grace@whitecase.com

*Counsel for Defendants David Williams and Nick Pointon*

# Exhibit A

IN RE ARQIT QUANTUM INC.
SECURITIES LITIGATION

No. 1:22-cv-02604-PKC-SDE

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL PURSUANT TO FED. R. CIV. P. 23(e)(1), CERTIFYING SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES, AND APPROVING FORM OF NOTICE AND DIRECTING NOTICE TO THE SETTLEMENT CLASSES**

WHEREAS, a securities class action is pending in this Court captioned *In re Arqit Quantum Inc. Securities Litigation*, Case No. 22-cv-02604-PKC-SDE (E.D.N.Y.) (the "Action");

WHEREAS, on June 5, 2023, the Court appointed Plaintiff Chris Weeks as Lead Plaintiff ("Weeks" or "Lead Plaintiff") and Wolf Popper LLP as Lead Plaintiff's counsel.

WHEREAS, the Parties to the Action, Lead Plaintiff Weeks and Named Plaintiffs Patrick Hagemeister ("Hagemeister"), Erwin Jay Lack ("Lack"), and Walter Littlejohn III ("Littlejohn," and collectively with Lead Plaintiff, Hagemeister, and Lack, "Plaintiffs"), and Defendant Arqit Quantum Inc. ("Arqit"), formerly known as Centricus Acquisition Corp. ("Centricus"), and Defendants David Williams, Nick Pointon, Carlo Calabria, Stephen Chandler, Manfredi Lefebvre d'Ovidio, Lt. General VeraLinn Jamieson (Ret.), Garth Ritchie, and Gen. Stephen Wilson (Ret.) (collectively, the "Individual Defendants," and together with Defendant Arqit, "Defendants") entered into the Stipulation and Agreement of Settlement dated January 9, 2026 (the "Settlement Agreement"), which is subject to review under Rule 23 of the Federal Rules of Civil Procedure and which, together with the exhibits thereto, sets forth the terms and conditions for the proposed settlement of the claims alleged in the complaints filed in this Action.

WHEREAS, Plaintiffs alleged claims on behalf of the following "Settlement Classes":

(a)    The "Section 14(a) Class": All beneficial holders of Centricus units or Class A ordinary shares as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger between Arqit and Centricus (the "Merger");

(b)    The "Section 10(b) Class": All persons or entities who purchased or otherwise acquired Arqit ordinary shares and/or Arqit warrants ("Arqit Securities") in connection with the Merger or on a U.S. stock exchange between September 7, 2021 and December 13, 2022, inclusive (the "Class Period"); and

(c)    The "Securities Act Class": All persons or entities who purchased or otherwise acquired Arqit Securities pursuant or traceable to the effective "Registration Statement" and "Prospectus" (collectively the "Offering Materials") filed with the Securities and Exchange Commission ("SEC") for the September 2, 2021 Offering of Arqit securities in connection with the Merger.

WHEREAS, Plaintiffs have made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Settlement Agreement and allowing notice of the Settlement to be disseminated to Settlement Class Members as more fully described herein;

WHEREAS, the Parties having consented to the entry of this Order;

WHEREAS, the Court having read and considered: (a) Plaintiffs' unopposed motion for preliminary approval of the Settlement (the "Motion"), and the papers filed and arguments made in connection therewith; and (b) the Settlement Agreement and the accompanying Exhibits attached thereto;

WHEREAS, unless otherwise specified all capitalized terms used, but not otherwise

2

defined, herein have the same meanings as set forth in the Settlement Agreement; and

WHEREAS, the Court preliminarily finds that:

(a)    the Settlement resulted from informed, extensive arm's-length negotiations between experienced counsel, including mediation under the direction of an experienced mediator, Robert Meyer, Esq.;

(b)    the proposed Settlement eliminates the risks to the Parties of continued litigation;

(c)    the Settlement does not provide undue preferential treatment to Plaintiffs or other Settlement Class Members;

(d)    Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Classes;

(e)    the Settlement is not contingent on the extent of compensation to be awarded to Plaintiffs' Counsel; and

(f)    the $7,000,000 Settlement Amount, and the Settlement generally, appear to fall within the range of possible approval and are therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Classes.

**NOW THEREFORE, IT IS HEREBY ORDERED,** this ___ day of _____, 2026 that:

1.    The Court hereby preliminarily approves the Settlement Agreement and the Settlement set forth therein as being fair, reasonable and adequate to Settlement Class Members, subject to further consideration at the Settlement Hearing.

2.    **Settlement Hearing.** A hearing (the "Settlement Hearing") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure is hereby scheduled to be held before the Court on **___, 2026 at     [a.m. / p.m,]** [a date that is no earlier than one hundred and eighteen (118) calendar days after the entry of this Order], **at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Courtroom 4F, Brooklyn, New York 11201** for the following purposes:

3

(a)     To determine whether the proposed Settlement is fair, reasonable, and adequate to Settlement Class Members, and should be approved by the Court;

(b)     To determine whether the Judgment as provided under the Settlement Agreement should be entered and to determine whether the releases by the Settlement Classes of the Released Plaintiffs' Claims, as set forth in the Settlement Agreement, should be provided to the Defendants' Releasees;

(c)     To determine whether the release by the Defendants' Releasees of the Released Defendants' Claims, as set forth in the Settlement Agreement, should be provided to the Plaintiffs' Releasees;

(d)     To determine whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court;

(e)     To consider Plaintiffs' Counsel's application for a Fee and Expense Application of an award of attorneys' fees, reimbursement of litigation costs expenses; and PSLRA Reimbursement Awards;

(f)     To rule upon such other matters as the Court may deem appropriate.

3.      **Certification of the Settlement Classes for Settlement Purposes.** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby grants conditional certification of the Settlement Classes for settlement purposes only. Consistent with the Settlement Agreement, excluded from the Settlement Classes are (i) Defendants, (ii) the current and former officers, directors, and employees of Arqit, Arqit Limited, and Centricus (the "Excluded Persons"), (iii) members of Defendants' and Excluded Persons' immediate families, legal representatives, heirs, successors or assigns, (iv) D2BW Limited, Notion Capital Managers LLP, Notion Capital II GP LLP, NML Limited, MNL Nominees Limited, Centricus Heritage LLC, the Heritage Group, any

other entity in which Defendants or the Excluded Persons have or had a controlling interest, and (v) any Settlement Class Member who timely files a request for exclusion from the Settlement Classes in accordance with the requirements set forth by the Court below.

4.      The Court finds, for the purpose of the Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Settlement Classes; (c) the claims of Plaintiffs are typical of the claims of the Settlement Classes they seek to represent; (d) Plaintiffs and Plaintiffs' Counsel have and will fairly and adequately represent the interests of the Settlement Classes; (e) the questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (f) a class action is superior to other methods for the fair and efficient adjudication of the Litigation.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby preliminarily certifies Wolf Popper LLP and Levi & Korsinsky LLP as Class Counsel and Plaintiffs as Class Representatives.

6.      **Approval of the Form and Manner of Notice and the Notice Program; Appointment of the Claims Administrator and Escrow Agent.**  The Court approves the form, substance, and requirements of Notices and Notice Program, including the Postcard Notice, the Summary Notice, the Longform Notice, and the Proof of Claim form, annexed to the Settlement Agreement as Exhibits A-1, A-2, A-3, and A-4, respectively, and preliminarily finds that the form, content, and mailing and distribution of the Notices, substantially in the manner and form set forth in this Order, the Settlement Agreement, and papers submitted in support of the Motion, (i) meet

the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1 *et seq.*, 78u-4, *et seq.*, as amended, and all other applicable laws and rules; (ii) is the best notice practicable under the circumstances; (iii) constitute due and sufficient notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the releases to be provided thereunder), of the Fee and Expense Application, of their right to exclude themselves from the Settlement Classes, of their right to object to aspects of the proposed Settlement, and of their right to appear at the Settlement Hearing; and (iv) constitute due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement. The date and time of the Settlement Hearing shall be included in the Longform Notice, Summary Notice, and Postcard Notice before they are mailed and published, respectively.

7.      The Court approves the appointment of Kroll Settlement Administrator LLC as the Claims Administrator to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Proof of Claim forms as more fully set forth below.

8.      The Court approves the appointment of Huntington Bank as the Escrow Agent to hold the Settlement Amount in the Settlement Fund. The contents of the Settlement Fund held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further Order(s) of the Court.

9.      Notice of the Settlement and Settlement Hearing shall be given as follows:

(a)      **On or before _____ ____, 2026** [a date that is fourteen (14) days after the entry of this Order], Arqit shall provide or cause to be provided to the Claims

Administrator and Plaintiffs' Counsel in electronic format (at no cost to the Settlement Fund, Plaintiffs' Counsel, or the Claims Administrator) a list (consisting of names, mailing addresses, and, if available, email addresses) of the record purchasers of Arqit Securities during the Class Period, to the extent such lists are reasonably available from Arqit's transfer agent.

(b) **On or before _____ \_\_\_, 2026** [a date that is twenty-eight (28) calendar days after the entry of this Order] (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form attached to the Settlement Agreement as Exhibit A-1, to be mailed by First-Class Mail, or emailed where necessary, to all Settlement Class Members who can be identified through reasonable effort. For all Postcard Notices returned as undeliverable, the Claims Administrator shall use its best efforts to locate updated addresses.

(c) On or before the Notice Date, the Claims Administrator shall publish the Longform Notice and the Proof of Claim and Release, substantially in the form attached to the Settlement Agreement as Exhibits A-3 and A-4 respectively, in a form available for download (i.e. PDF) on the Settlement Website. In addition, the Claims Administrator shall also mail or email a copy of the Longform Notice and Proof of Claim and Release to any Settlement Class Member that requests one by phone, email, or mail.

(d) On or before the Notice Date, the Claims Administrator shall also post the following on the Settlement Website: (i) the Settlement Agreement; (ii) this Order; (iii) the Complaint; (iv) the deadlines for Settlement Class Members to submit claims, objections to the Settlement, and Requests for Exclusion from the

Settlement; (v) the Proof of Claim and Release; and (v) the Motion, and papers filed in support therewith. In addition, once filed, the Claims Administrator shall post Plaintiff's motion for final approval of the Settlement and Fee and Expense Application on the Settlement Website.

(e) On or before the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached to the Settlement Agreement as Exhibit A-2, to be published once over PRNewswire or a similar wire service.

(f) **On or before _____ ___, 2026** [a date that is seven (7) calendar days prior to the Settlement Hearing], Plaintiffs' Counsel shall file with the Court and serve on Defendants' counsel proof, by affidavit or declaration, of the Claims Administrator's mailing and/or publication of the Postcard Notice, Summary Notice, Longform Notice, and Proof of Claim.

10. The Claims Administrator shall use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons or entities who, as record owners but not as beneficial owners, held Centricus Class A ordinary shares or Centricus units as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the Merger or purchased or acquired Arqit Securities through the Merger or during the Class Period. Such nominees and custodians shall WITHIN SEVEN (7) CALENDAR DAYS of their receipt of the Postcard Notice either: (a) provide to the Claims Administrator the name, last known address, and email address of each beneficial owner for whom they are nominee or custodian; (b) request copies of the Postcard Notice for the Claims Administrator sufficient to send to all beneficial owners for whom they are nominee or custodian, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, mail the Postcard Notice directly to all such persons or entities, or

(c) request the link to the Postcard Notice and Proof of Claim and Release form from the Claims Administrator, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, email the link directly to all beneficial owners for whom they are nominee or custodian. Nominees who elect to follow procedure (b) or (c), MUST send a statement to the Claims Administrator confirming that the mailing/emailing was made as directed and keep a record of the names and mailing/emailing addresses used. Upon receipt by the Claims Administrator of proper documentation, nominees may seek reimbursement of their reasonable expenses actually incurred, not to exceed (a) $0.03 per name, mailing address and email address (to the extent available) provided to the Claims Administrator; (b) $0.03 per postcard, plus postage at the pre-sort rate used by the Claims Administrator, for mailing the Postcard Notice; or (c) $0.03 per email for emailing the Postcard Notice and Proof of Claim and Release. Any disputes with respect to the reasonableness or documentation of expenses incurred shall be subject to review by the Court.

11.     All fees, costs, and expenses incurred in identifying and notifying Settlement Class Members shall be paid from the Settlement Fund and in no event shall any of the Defendants' Releasees bear any responsibility or liability for such fees, costs, or expenses. Notwithstanding the foregoing, Arqit shall be responsible for the costs and expenses of providing to Plaintiffs' Counsel and/or the Claims Administrator reasonably available transfer records for purposes of mailing notice to the Settlement Classes (as described in Paragraph 9(a) above), and for providing notice as required by the Class Action Fairness Act (as described in the Settlement Agreement).

12.     Before the Effective Date, Plaintiffs' Counsel and the Escrow Agent may pay Notice and Administration Expenses in an amount up to $200,000 out of the Settlement Fund without further approval from Defendants and without further order of the Court.

13.     The Claims Administrator or the Escrow Agent shall timely and properly file all federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund, to cause any Taxes due and owing to be paid from the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof as contemplated by the Settlement Agreement without further order of the Court.

14.     **Claims Administration and Participation in the Net Settlement Fund by Settlement Class Members.**  In order to be entitled to participate in the Net Settlement Fund, in the event the Settlement is approved, in accordance with the terms and conditions set forth in the Settlement Agreement, each Settlement Class Member shall take the following actions and be subject to the following conditions:

(a)     Each Claimant shall be required to submit a Claim in paper form, substantially in the form attached to the Settlement Agreement as Exhibit A-4, or in electronic form, in accordance with the instructions for the submission of such Claims, and supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Plaintiffs' Counsel, in their discretion, may deem acceptable. Each Claim must be signed under penalty of perjury;

(b)     All Claims must be submitted within one hundred and ten (110) calendar days after the Notice Date**, i.e., _____ 2026**. Any Settlement Class Member who fails to submit a Claim by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to the Settlement Agreement (unless by Order of the Court such Settlement Class Member's Claim is accepted), but shall in all other respects be bound by all of the terms of the Settlement

Agreement and the Settlement, including the terms of the Judgment and the Releases provided for in the Settlement Agreement and Judgment, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any of Defendants' Releasees with respect to any Settlement Class Claim. Provided that it is mailed by the claim submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator. Notwithstanding the foregoing, Plaintiffs' Counsel shall have the discretion (but not an obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion;

(c) Each Claim shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with the Settlement Agreement and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d) Claims that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable

deficiencies. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e) If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above or a lesser time period if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Plaintiffs' Counsel shall thereafter present the request for review to the Court, and, if applicable, state their position as to whether the claim should be accepted or rejected.

15. Any Settlement Class Member who does not submit a valid and timely Claim will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of the Settlement Agreement and the Settlement, including the terms of the Judgment to be entered in the Action and the Releases provided for in the Settlement Agreement and Judgment, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Settlement Class Claims.

16. Settlement Class Members shall be bound by all determinations and judgments in the Action, whether favorable or unfavorable, unless such persons request exclusion from the Settlement Classes in a timely and proper manner, as hereinafter provided.

17. **Requests for Exclusion.** A putative Settlement Class Member wishing to exclude themself from the Settlement Classes shall mail by First Class Mail, send by overnight carrier, or hand deliver the Request for Exclusion to the Claims Administrator so that it is **received no later than twenty-one (21) calendar days prior to the Settlement Hearing, i.e., ___ 2026**, to the address designated in the Longform Notice. The putative Settlement Class Members seeking to exclude themselves from the Settlement Classes shall bear the risk of delivery of the request. A Request for Exclusion must include (a) the name, address, and telephone number of the Person seeking exclusion; (b) the caption of the Action; (c) a list identifying (i) all holdings of Centricus Class A common stock or Centricus units by the Person requesting exclusion as of the July 26, 2021 record date for the special meeting of shareholders on August 31, 2021 to consider approval of the Merger, (ii) all transactions in Centricus Securities by the Person requesting exclusion between July 26, 2021 and September 2, 2021, and (iii) all Arqit Securities received by the Person requesting exclusion through the Merger and all transactions in Arqit Securities by the Person requesting exclusion during the Class Period; (d) for each transaction listed in section (c) of this paragraph, the date of each transaction and the price of each transaction; (e) documentation sufficient to evidence each holding and transaction listed in (c) and (d) of this paragraph; and (f) a statement that the Person wishes to be excluded from the Settlement Classes. Any Request for Exclusion must be in writing and signed under penalty of perjury by the beneficial owner(s) of the shares of Centricus Securities or Arqit Securities that are the subject of the Request for Exclusion.

18.     All Persons who submit valid and timely Request for Exclusion in the manner set forth in Paragraph 17 and in the Longform Notice shall have no rights under the Settlement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Settlement or any final judgment.

19.     **Objections to the Settlement.** Any Settlement Class Member that does not request exclusion from the Settlement Classes may file objections to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application. Any such objections and any supporting papers shall be **filed with the Court at least twenty-one (21) calendar days prior to the Settlement Hearing, i.e.,  ____ 2026** and also delivered by hand, or First-Class Mail, or overnight carrier to Joshua W. Ruthizer, Wolf Popper LLP, 845 Third Avenue, 12th Floor, New York, NY 10022, by that same date.

20.     Any objections, filings, and other submissions by an objecting Settlement Class Member must: (a) state the name, address and telephone number of the Settlement Class Member objecting and must be signed personally under penalty of perjury by the Settlement Class Member; (b) state the caption of the Action; (c) contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention and whether the objections apply only to the objector, a specific subset of the Settlement Classes, or to all Settlement Class Members; (d) contain a list identifying (i) all Centricus Class A common stock or Centricus units held by the objecting Settlement Class Member as of the July 26, 2021 record date for the special meeting of shareholders on August 31, 2021 to consider approval of the Merger, (ii) all transactions in Centricus Securities by the objecting Settlement Class Member between July 26, 2021 and September 2, 2021, and (iii) all Arqit Securities received by the objecting Settlement

Class Member through the Merger and all transactions in Arqit Securities by the Objecting Settlement Class Member during the Class Period; (e) for each transaction listed in section (d) of this paragraph, state the date of each transaction and the price of each transaction; (f) include documents sufficient to prove membership in the Settlement Classes, including documents sufficient to prove all of the objecting Settlement Class Member's holdings and transactions in Centricus Securities and Arqit Securities set forth in sections (d) and (e) of this paragraph, the dates of the transactions, the number of shares purchased or sold or held, and the price paid or received for such purchase or sale.

21.     Persons wishing to be heard orally in opposition to the approval of the Settlement, the Plan of Allocation, and/or the Fee and Expense Application or Fee and Expense Award, are required to indicate in their written objection their intention to appear at the Settlement Hearing and to include in their written objections the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Settlement Hearing. Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.

22.     Any Settlement Class Member who does not make his, her, or its objection in the manner provided herein and in the Longform Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Settlement Agreement, to the Plan of Allocation, or to the Fee and Expense Application or Fee and Expense Award, unless otherwise ordered by the Court. Attendance at the Settlement Hearing is not necessary.

23. **Transmission of Requests for Exclusion and Objections to Plaintiffs' Counsel and Defendants' Counsel.** The Claims Administrator shall scan and send electronically copies of all Requests for Exclusion and objections to the Settlement Agreement, Settlement, the Plan of Allocation, or the Fee and Expense Application, in PDF format (or such other format as shall be agreed), to Defendants' Counsel and to Plaintiffs' Counsel, within five (5) calendar days of the Claims Administrator's receipt of such requests for exclusion or objections. If a Request for Exclusion or an objection is received by Plaintiffs' Counsel, then Plaintiffs' Counsel shall transmit such Request for Exclusion or objection to Defendants' Counsel within five (5) calendar days of receipt.

24. **Plaintiffs' Provision of Request for Exclusion Information to Defendants' Counsel.** No later than fifteen (15) calendar days prior to the Settlement Hearing, Plaintiffs' Counsel shall provide to Defendants' Counsel copies of all Requests for Exclusion.

25. **Schedule for Filing of Motion for Final Approval and Fee and Expense Application.** Plaintiffs' Counsel shall submit their papers in support of final approval of the Settlement, the Plan of Allocation, and any Fee and Expense Application, by no later than _____ \_\_\_, 2026 [a date that is thirty-five (35) calendar days prior to the Settlement Hearing], and any reply papers shall be filed and served no later than _____ \_\_\_, 2026 [a date that is seven (7) calendar days prior to the Settlement Hearing].

26. **Other Matters.** The Defendants' Releasees shall have no responsibility or liability for the Plan of Allocation or any Fee and Expense Application submitted by Plaintiffs' Counsel, and such matters will be considered by the Court separately from the fairness, reasonableness, and adequacy of the Settlement.

27. At or after the Settlement Hearing, the Court shall determine whether the Plan of Allocation proposed by Plaintiffs' Counsel and any Fee and Expense Application should be approved. The Court reserves the right to enter the Judgment finally approving the Settlement regardless of whether it has approved the Plan of Allocation or a Fee and Expense Application.

28. Pending final determination of whether the Settlement should be approved, Plaintiffs, all Settlement Class Members and Defendants' Releasees, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence, or prosecute any action that asserts Released Claims against any Released Party.

29. All proceedings in the Litigation are stayed until further order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Settlement Agreement or this Order. Pending final determination of whether the Settlement should be approved, neither the Plaintiffs nor any Settlement Class Member, either directly, representatively, or in any other capacity shall commence or prosecute any of the Released Plaintiffs' Claims against any of the Defendants' Releasees in any action or proceeding in any court or tribunal.

30. All reasonable costs incurred in identifying Settlement Class Members and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Settlement Agreement. In the event the Court does not approve the Settlement, or the Settlement otherwise fails to become effective, neither Plaintiffs' Counsel nor the Claims Administrator shall have any obligation to repay any amounts actually and properly incurred or disbursed pursuant to ¶¶ 7.1-7.2 of the Settlement Agreement.

31. If (a) the Settlement is terminated by Arqit pursuant to the Settlement Agreement; or (b) any specified condition to the Settlement set forth in the Settlement Agreement is not satisfied and Plaintiffs or Arqit elects to terminate the Settlement as provided in the Settlement

Agreement, then, in any such event, the terms of the Settlement Agreement shall apply, and this Order shall be null and void, of no further force or effect, without prejudice to any Party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity, and each Party shall be restored to their respective position in this Action as it existed prior to January 9, 2026.

32.     Neither this Order, the Settlement Agreement (whether or not approved or consummated), nor their negotiation, nor any proceedings taken pursuant to them: (i) shall be offered against any of the Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Parties with respect to the truth of any fact alleged by Plaintiffs, or the validity of any claim that was or could have been asserted, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind by any of the Released Parties (provided, however, that if the Settlement Agreement is approved by the Court, the Parties and the Released Parties and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement); (ii) shall be construed against any of the Released Parties as an admission, concession, or presumption that the consideration to be given represents the amount which could be or would have been recovered after trial; or (iii) shall be construed against the Plaintiffs or the Settlement Classes to argue that any of their claims are without merit.

33.     The Court reserves the right to alter the time or the date of the Settlement Hearing or to hold the hearing via video or telephone without further notice to Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

34.     The Court reserves the right to approve the Settlement, including, if appropriate, with any such modifications as may be agreed to by the Parties, without further notice to the Settlement Classes. The Court further reserves the right to enter its Judgment approving the Settlement and dismissing the Action on the merits and with prejudice regardless of whether it has approved the Plan of Allocation or any part of the Fee and Expense Application.


SO ORDERED

Brooklyn, NY

Date: _____          _____
                                     The Honorable Pamela K. Chen
                                     United States District Judge

# Exhibit A-1

**EXHIBIT A-1**

## Court-Ordered Notice of Pendency of Class Action, Proposed Settlement, and Settlement Hearing
United States District Court for the Eastern District of New York

*In re Arqit Quantum Inc. Securities Litigation,*
No. 1:22-cv-02604-PKC-SDE

*This Postcard Notice may affect your rights. Please read it carefully.*

This Postcard Notice is directed to the following "Settlement Classes": (1) "Section 14(a) Class" of all beneficial holders of Centricus Acquisition Corp. units or Class A Ordinary Shares ("Centricus Securities") as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger between Arqit Quantum Inc. and Centricus (the "Merger"), which resulted in the public listing of Arqit's ordinary shares and warrants on the NASDAQ Global Markets exchange ("NASDAQ") on September 7, 2021; (2) "Section 10(b) Class" of all persons or entities who purchased or otherwise acquired Arqit ordinary shares or Arqit warrants ("Arqit Securities") in connection with the Merger or on a U.S. stock exchange between September 7, 2021 and December 13, 2022, inclusive (the "Class Period"); and (3) "Securities Act Class" of all persons or entities who purchased or otherwise acquired Arqit Securities pursuant or traceable to the effective Registration Statement and Prospectus (collectively the "Offering Materials") filed with the SEC for the September 2, 2021 Offering of Arqit Securities in connection with the Merger.

If you are a Settlement Class Member you may be eligible for a cash payment. Capitalized terms are defined in the Stipulation and Agreement of Settlement ("Settlement Agreement"), available at www.arqitsecuritiessettlement.com.

**Arqit Quantum Inc. Securities Litigation Settlement**
**c/o Kroll Settlement Administration LLC**
**[Address]**
**[Address]**
**Toll-Free Number: _____**
**Website: www.arqitsecuritiessettlement.com**
**Email: _____**

NOTICE NUMBER «NoticeID»
NoticeID

Postal Service: Please Do Not Mark or Cover Barcode

[NAME1]
[ADDR1]
[CITY] [ST] [ZIP]
[COUNTRY]

**Why Did I Receive This Notice?** The Parties to the action identified in the front of this Postcard Notice (the "Action") have reached a proposed settlement on the terms and conditions set forth in the Settlement Agreement, dated January 9, 2026. This Postcard Notice advises potential Class Members of information about the Action and the proposed Settlement. For all details of the Settlement, read the Settlement Agreement and Longform Notice, which are available for download from www.arqitsecuritiessettlement.com ("Settlement Website"), or by contacting the Claims Administrator (see front of this Postcard Notice).

**What Is The Case About?** Plaintiffs allege, on behalf of themselves and the Settlement Classes, that Defendants violated federal securities laws by making false and misleading statements in connection with the Merger and during the Class Period regarding, among other things, the capabilities of Arqit's technology. Plaintiffs allege that these alleged misrepresentations and omissions caused the price of Arqit Securities to be artificially inflated, until the market learned the truth. Defendants deny any wrongdoing, and the Court has not determined that Defendants did anything wrong.

**What Is The Proposed Settlement?** Defendants have agreed to pay $7,000,000 in cash (the "Settlement Amount"). After deductions of any Court-approved Notice and Administration Costs, Taxes and Tax Expenses, and a Fee and Expense Award of attorneys' fees and expenses and reimbursement for Plaintiffs' costs and expenses relating to their representation of the Settlement Classes, the "Net Settlement Fund" will be divided among all Settlement Class Members who submit a valid Proof of Claim and Release form ("Claim Form") pursuant to the Court-approved Plan of Allocation, in exchange for dismissal of this Action and releases by Settlement Class Members of claims related to this case. The releases are described in detail in the Longform Notice and Settlement Agreement.

**To qualify for payment,** you must submit a completed Claim Form either by mail, or electronically through the Settlement Website. The Claim Form can be downloaded from the Settlement Website, or will be sent to you upon request to the Claims Administrator. Claim Forms must be received by _____, 2026. The amount of any payment to Claimants will be determined under the Plan of Allocation described in the Longform Notice.

**Other Options.** If you do not want to be bound by the Settlement, you must submit a written request to exclude yourself (i.e., "opt out") such that the request is received by _____, 2026. If you opt out, you will receive no benefits from the Settlement but will also retain the right to sue Defendants, subject to any time limitations. If you do not opt out, you will be legally bound by the Settlement and all of its releases. If you do not opt out, you may object to the Settlement, the Plan of Allocation, or the Fee and Expense Application such that it is received by _____, 2026. If you do not provide the required information as set forth in the Longform Notice on pages ___, your request to opt out or object will be rejected.

**Settlement Hearing.** The Court will hold a Settlement Hearing on _____, 2026, to consider (i) whether to approve the Settlement, the Plan of Allocation, and the Fee and Expense Application of up to one third (1/3) of the Settlement Amount and reimbursement of costs and expenses of up to $175,000, plus interest on those amounts at the same rate paid to the Settlement Fund, and PSLRA Reimbursement Awards to the Plaintiffs of up to $7,500 to Lead Plaintiff and $5,000 for each other Plaintiff; and (ii) any objections. You or your lawyer, at your own expense, may attend the hearing, but you are not required to do so.

**Special Notice to Nominees.** If you (i) held the relevant Centricus Securities and/or (ii) purchased or otherwise acquired the relevant Arqit Securities as a nominee for a beneficial owner, then you must, within seven (7) days of receipt of this Postcard, either: (1) send a copy of this Postcard by first-class mail to all such persons or entities; or (2) provide a list of the names and addresses of such persons or entities to the Claims Administrator. More information about this requirement is available on pages ___ of the Longform Notice.

**If you have questions,** you may visit the Settlement Website or contact the Claims Administrator (see front of this Postcard Notice) or Plaintiffs' Counsel: Joshua Ruthizer, Wolf Popper LLP, 845 Third Avenue, New York, NY, 10022, 1- 877-370-7703. **Do not contact the Court or Defendants with questions or regarding this notice.**

# Exhibit A-2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ARQIT QUANTUM INC. SECURITIES LITIGATION | No. 1:22-cv-02604-PKC-SDE |

SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**TO: ALL SETTLEMENT CLASS MEMBERS, I.E., (1) ALL BENEFICIAL HOLDERS OF CENTRICUS ACQUISITION CORP. ("CENTRICUS") UNITS OR CLASS A ORDINARY SHARES AS OF THE JULY 26, 2021 RECORD DATE FOR THE SPECIAL MEETING OF SHAREHOLDERS HELD ON AUGUST 31, 2021 TO CONSIDER APPROVAL OF THE MERGER BETWEEN ARQIT QUANTUM INC. ("ARQIT") AND CENTRICUS (THE "MERGER") ("SECTION 14(a) CLASS"); (2) ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED ARQIT ORDINARY SHARES AND/OR ARQIT WARRANTS ("ARQIT SECURITIES") IN CONNECTION WITH THE MERGER OR ON A U.S. STOCK EXCHANGE BETWEEN SEPTEMBER 7, 2021 AND DECEMBER 13, 2022, INCLUSIVE (THE "CLASS PERIOD") ("SECTION 10(b) CLASS"); AND (3) ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED ARQIT SECURITIES PURSUANT OR TRACEABLE TO THE EFFECTIVE "REGISTRATION STATEMENT" AND "PROSPECTUS" (COLLECTIVELY THE "OFFERING MATERIALS") FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ("SEC") FOR THE SEPTEMBER 2, 2021 OFFERING OF ARQIT SECURITIES IN CONNECTION WITH THE MERGER ("SECURITIES ACT CLASS").**

**THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

Capitalized terms used in this notice that are not otherwise defined are defined in the Stipulation and Agreement of Settlement, dated January 9, 2026 ("Settlement Agreement"), **available at www.arqitsecuritiessettlement.com ("Settlement Website").**

YOU ARE HEREBY NOTIFIED that a hearing will be held on _____, 2026, at _:00

_.m., before the Honorable Pamela K. Chen at the United States District Court, Eastern District of

New York, 225 Cadman Plaza East, Courtroom 4F, Brooklyn, New York 11201, to determine

whether: (1) the proposed Settlement of *In re Arqit Quantum Inc. Securities Litigation*, No. 1:22-

cv-02604-PKC-SDE (E.D.N.Y.) (the "Action") and Plan of Allocation as set forth in the Settlement Agreement should be approved by the Court as fair, reasonable and adequate; (2) to enter the Judgment as provided under the Settlement Agreement dismissing the Action with prejudice; (3) to award Plaintiffs' Counsel attorneys' fees and expenses from the Settlement Fund, and, if so, in what amount; and (4) to award Lead Plaintiff Chris Weeks ("Lead Plaintiff") and Named Plaintiffs Patrick Hagemeister, Erwin Jay Lack, and Walter Littlejohn III (collectively with Lead Plaintiff, "Plaintiffs") costs and expenses (including lost wages) directly relating to their representation of the Class, and if so, in what amount.

IF YOU HELD CENTRICUS CLASS A ORDINARY SHARES OR CENTRICUS UNITS AS OF JULY 26, 2021, OR PURCHASED OR OTHERWISE ACQUIRED ARQIT ORDINARY SHARES OR ARQIT WARRANTS IN THE MERGER OR DURING THE SEPTEMBER 7, 2021 TO DECEMBER 13, 2022, INCLUSIVE, CLASS PERIOD, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION

This Summary Notice advises Settlement Class Members of information about the Action and the proposed Settlement. **For additional details, read the Settlement Agreement and Longform Notice, which are available for download from www.arqitsecuritiessettlement.com ("Settlement Website"), or by contacting the Claims Administrator at the contact information below.**

In the Settlement, Defendants have agreed to pay a Settlement Amount of **$7,000,000** in cash in exchange for a release of Settlement Class Members' claims related to the Action. **The Longform Notice, at ___, describes those releases in detail.** After deductions of any Court-approved Notice and Administration Costs, Taxes and Tax Expenses, and a Fee and Expense Award of attorneys' fees and expenses and reimbursement for Plaintiffs' costs and expenses

relating to their representation of the Class, the Net Settlement Fund will be divided among all Settlement Class Members who submit a valid Proof of Claim and Release form ("Claim Form") pursuant to the Court-approved Plan of Allocation.

To share in the distribution of the Settlement Fund, you must submit a Claim Form and required documentation electronically through www.arqitsecuritiessettlement.com **(no later than _____, 2026)** or by mail **(postmarked no later than _____, 2026)**. Failure to submit a timely Claim Form may preclude you from receiving payment. If you are a Settlement Class Member, and do not request exclusion from the Class, you will be bound by the Settlement and any judgment and release entered in the Action, whether or not you submit a Claim Form.

If you do not want to be legally bound by the Settlement, you **must** submit a written request to exclude yourself (*i.e.* "opt-out") such that it is **received no later than _____, 2026**, and in the manner and form described on pages \_\_\_ of the Longform Notice; otherwise your exclusion request will be rejected.

If you are a Settlement Class Member, you have the right to object to the Settlement, the Plan of Allocation, the request by Plaintiffs' Counsel for an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund and expenses not to exceed $175,000, plus interest on those amounts at the same rate paid to the Settlement Fund, or the Plaintiffs' requests for reimbursement of their reasonable costs and expenses, including lost wages, related to their representation of the Settlement Classes in an amount not to exceed $7,500 for Lead Plaintiff weeks and $5,000 each for the remaining three Named Plaintiffs. Any objections **must** be in writing and filed with the Court and sent to Plaintiffs' and Defendants' Counsel so that it is **received no later than _____, 2026**, in the manner and form explained in pages \_\_\_ of

the Longform Notice; otherwise your objection will be rejected. **Only Settlement Class Members may object. You cannot opt out of the Class and also object to the Settlement.**

If you have not received or downloaded a copy of the Longform Notice, which more completely describes the Litigation, the Settlement, and your rights thereunder (including your right to object to or opt out of the Settlement), and a Claim Form, you may obtain these documents, as well as a copy of the Settlement Agreement (which, among other things, contains definitions for the defined terms used in this Summary Notice) and other Settlement documents, online at www.arqitsecuritiessettlement.com, or by contacting the Claims Administrator at:

Arqit Quantum Inc. Securities Litigation Settlement
c/o Kroll Settlement Administration LLC
PO Box _____
New York, NY _____
www.arqitsecuritiessettlement.com

Inquiries should **not** be directed to Defendants, the Court, or the Clerk of the Court.

Inquiries, other than requests for the Longform Notice, the Settlement Agreement, or for a Claim Form, may be made to Plaintiffs' Counsel:

WOLF POPPER LLP
Joshua W. Ruthizer
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: 877-370-7703.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

DATED: _____  _____
BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# Exhibit A-3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE ARQIT QUANTUM INC.<br>SECURITIES LITIGATION |

No. 1:22-cv-02604-PKC-SDE

NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION

EXHIBIT A-3

**TO:** **(1) ALL BENEFICIAL HOLDERS OF CENTRICUS ACQUISITION CORP. ("CENTRICUS") UNITS OR CLASS A ORDINARY SHARES AS OF THE JULY 26, 2021 RECORD DATE FOR THE SPECIAL MEETING OF SHAREHOLDERS HELD ON AUGUST 31, 2021 TO CONSIDER APPROVAL OF THE MERGER BETWEEN ARQIT QUANTUM INC. ("ARQIT" OR THE "COMPANY") AND CENTRICUS (THE "MERGER"); (2) ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED ARQIT ORDINARY SHARES AND/OR ARQIT WARRANTS ("ARQIT SECURITIES") IN CONNECTION WITH THE MERGER OR ON A U.S. STOCK EXCHANGE BETWEEN SEPTEMBER 7, 2021 AND DECEMBER 13, 2022, INCLUSIVE (THE "CLASS PERIOD"); AND (3) ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED ARQIT SECURITIES PURSUANT OR TRACEABLE TO THE EFFECTIVE "REGISTRATION STATEMENT" AND "PROSPECTUS" (COLLECTIVELY THE "OFFERING MATERIALS") FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ("SEC") FOR THE SEPTEMBER 2, 2021 OFFERING OF ARQIT SECURITIES IN CONNECTION WITH THE MERGER.**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS ACTION. PLEASE NOTE THAT IF YOU ARE A SETTLEMENT CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE. TO CLAIM YOUR SHARE OF THE SETTLEMENT PROCEEDS, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE FORM ("PROOF OF CLAIM") **POSTMARKED OR SUBMITTED ONLINE ON OR BEFORE _____, 2026**.

This Notice of (I) Pendency of Class Action, Certification of Settlement Classes, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of New York (the "Court"). The purpose of this Notice is to inform you of (a) the pendency of this class action (the "Action") between Lead Plaintiff Chris Weeks ("Weeks" or "Lead Plaintiff") and Named Plaintiffs Patrick Hagemeister ("Hagemeister"), Erwin Jay Lack ("Lack"), and Walter Littlejohn III ("Littlejohn," and collectively with Lead Plaintiff, Hagemeister, and Lack, "Plaintiffs"), and Defendant Arqit Quantum Inc., formerly known to investors as Centricus Acquisition Corp., and Defendants David Williams, Nick Pointon, Carlo Calabria, Stephen Chandler, Manfredi Lefebvre d'Ovidio, Lt. General VeraLinn Jamieson (Ret.), Garth Ritchie, and Gen. Stephen Wilson (Ret.) (collectively, the "Individual Defendants," and together with the Company, "Defendants"), and (b) the proposed settlement consisting of seven million U.S. dollars (U.S. $7,000,000) in cash (the "Settlement") and the hearing to be held by the Court on _____, 2026 to consider the fairness, reasonableness, and adequacy of the Settlement as well as the Fee and Expense Application for (i) Plaintiffs' Counsel's fees and expenses and (ii) PSLRA Reimbursement Awards to the Plaintiffs for costs and expenses,

including lost wages, incurred in connection with their representation of the Settlement Classes. This Notice describes what steps you may take in relation to the Settlement and this Action.[1]

This Notice is not intended to be, and should not be construed as, an expression of any opinion by the Court with respect to the truth of the allegations in the Action as to any of the Defendants or the merits of the claims or defenses asserted by or against the Defendants. This Notice is solely to advise you of the pendency and proposed Settlement of the Action and of your rights in connection therewith.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **SUBMIT A PROOF OF CLAIM FORM** | The only way to be eligible to receive a payment from the Settlement. Proof of Claim forms must be postmarked or submitted online on or before _____, 2026. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that would allow you to ever be part of any other lawsuit against the Defendants or any other Released Party about the legal claims being resolved by this Settlement. Should you elect to exclude yourself from the Settlement Classes you should understand that Defendants and the other Released Parties will have the right to assert any and all defenses they may have to any claims that you may seek to assert, including, without limitation, the defense that any such claims are untimely under applicable statutes of limitations and statutes of repose. **Requests for exclusion must be received by the Claims Administrator on or before ____, 2026. Mailing on or before ____, 2026 is not sufficient.** |
| **OBJECT** | Write to the Court about why you do not like the Settlement, the Plan of Allocation, and/or the Fee and Expense Application. You will still be a Member of the Settlement Classes. **Objections must be *received* by the Court and counsel on or before _____, 2026. If you submit a written objection, you may (but do not have to) attend the hearing.** |
| **GO TO THE HEARING ON ____, 2026** | Ask to speak in Court about the fairness of the Settlement. **Requests to speak must be *received* by the Court and counsel on or before ____, 2026.** |
| **DO NOTHING** | Receive no payment. You will, however, still be a Member of the Settlement Classes, which means that you give up your right to ever be part of any other lawsuit against the Defendants or any other Released Parties about the legal claims being resolved by |

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated January 9, 2026 (the "Settlement Agreement"), which is available on the website www.arqitsecuritiessettlement.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| | this Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## SUMMARY OF THIS NOTICE

**Statement of Class Recovery**

Pursuant to the Settlement Agreement described herein, and subject to Court Approval, Plaintiffs, on behalf of the Settlement Classes, have agreed to settle the Action in exchange for a payment of seven million dollars ($7,000,000) in cash (the "Settlement Amount"). The Settlement Amount, minus any Court approved Taxes and Tax Expenses, Notice and Administration Costs, and Fee and Expense Award (the "Net Settlement Fund") will be distributed to Settlement Class Members according to the Court-approved plan of allocation (the "Plan of Allocation"). The proposed Plan of Allocation is set forth on pages [16-27].

**Estimate of Average Recovery Per Share**

Based on Plaintiffs' consultant's estimate of the maximum number of potentially damaged Arqit Securities eligible to recover under the Settlement, Plaintiffs estimate that the Settlement Amount represents an average recovery of approximately $0.23 per Arqit ordinary share and $0.05 per Arqit warrant before deduction of any Taxes, Tax Expenses, Notice and Administration Costs, and the Fee and Expense Award as determined by the Court. **Settlement Class Members should note, however, that these are only estimates.** An individual Settlement Class Member's actual recovery will depend on for example: (i) the total number of claims submitted; (ii) the amount of the Net Settlement Fund; (iii) when the Settlement Class Member purchased or acquired Arqit Securities during the Settlement Class Period; and (iv) whether and when the Settlement Class Member sold or disposed of Arqit Securities. *See* the Plan of Allocation set forth and discussed at pages __ below for more information on the calculation of your claim.

**Statement of Potential Outcome of Case**

Defendants deny that they are liable to the Settlement Classes and deny that the Settlement Classes have suffered any damages.

The Parties disagree on both liability and damages and do not agree on the amount of damages that would be recoverable if the Settlement Classes prevailed on each claim alleged. Defendants expressly deny that Plaintiffs have asserted any valid claims, expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever, and maintain that their conduct was at all times proper and in compliance with applicable provisions of law. The issues on which the Parties disagree are many, but include: (1) whether Defendants engaged in conduct that would give rise to any liability to the Settlement Classes under the federal securities laws, or any other laws; (2) whether Defendants have valid defenses to any such claims of liability; (3) in respect to Plaintiffs' Section 10(b) Claims and Section 14(a) Claims (as described herein), (a) the

appropriate economic model for determining the amount by which the prices of Arqit Securities were allegedly inflated (if at all) during the Class Period and at the time of the alleged corrective disclosures (as described below), and whether Arqit Securities were in fact artificially inflated and if so, the amount of such inflation, (b) the effect of various market forces on the prices of Arqit Securities at various times during the Class Period at the time of the alleged corrective disclosures, and (c) the extent to which external factors influenced the prices of Arqit Securities at various times during the Class Period at the time of the alleged corrective disclosures; (4) with respect to Plaintiffs' Securities Act Claims (as described herein), "the value" of Arqit Securities "as of the time [this] suit was brought," as set forth in 15 U.S.C. § 77k(e), which impacts the potential damages that can be collected by members of the Securities Act Class; (5) the extent to which the various matters that Plaintiffs allege were materially false or misleading influenced (if at all) the prices of Arqit Securities in connection with the Merger and at various times during the Class Period; and (6) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the prices of Arqit Securities in connection with the Merger and at various times during the Class Period.

## Statement of Attorneys' Fees and Expenses Sought

Since the Action's inception, Plaintiffs' Counsel have expended considerable time and effort in the prosecution of this Action on a wholly contingent basis and have advanced the expenses of the Action in the expectation that if they were successful in obtaining a recovery for the Settlement Classes, they would be paid from such recovery. Plaintiffs' Counsel will apply to the Court for a Fee and Expense Award of attorneys' fees not to exceed one third (1/3) of the Settlement Amount, or $2,333,333.33, plus expenses not to exceed $175,000, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. If the amounts requested are approved by the Court, the estimated average cost per damaged Arqit Security is $0.06. Plaintiffs and Plaintiffs' Counsel will also apply to the Court for PSLRA Reimbursement Awards for each Plaintiff to reimburse the Plaintiffs for their reasonable costs and expenses (including lost wages) incurred in their representation of the Class, in an amount not to exceed $7,500 for Lead Plaintiff Weeks and $5,000 each for Named Plaintiffs Hagemeister, Lack and Littlejohn.

## Further Information

For further information regarding the Action, this Notice or to review the Settlement Agreement, please contact the Claims Administrator toll-free at _____, or visit the website www.arqitsecuritiessettlement.com.

You may also contact a representative of counsel for the Classes: Joshua W. Ruthizer, Wolf Popper LLP, 845 Third Avenue, 12th Floor. New York, NY 10022, (877) 370-7703, www.wolfpopper.com.

**Please Do Not Call the Court or Defendants with Questions About the Settlement.**

## Reasons for the Settlement

Based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, Plaintiffs have agreed to settle and release the Settlement Class Claims pursuant

to the terms and provisions of the Settlement Agreement, after considering, among other things: (a) the substantial financial benefit that Plaintiffs and the other Settlement Class Members will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial, including Plaintiffs' ability to enforce a monetary judgment entered against Defendants. Defendants are entering into the Settlement Agreement solely to eliminate the uncertainty, burden, distraction, and expense of further protracted litigation.

## BASIC INFORMATION

| 1. | Why did I get this Notice package? |
|---|---|

This Notice was sent to you pursuant to Court Order because you or someone in your family or an investment account for which you serve as custodian may have (1) held Centricus Securities as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the Merger; (2) purchased or otherwise acquired Arqit Securities in connection with the Merger or on a U.S. stock exchange during the Class Period; or (3) purchased or otherwise acquired Arqit Securities pursuant or traceable to the effective Offering Materials filed with the SEC for the September 2, 2021 Offering of Arqit Securities in connection with the Merger.

This Notice explains the class action lawsuit, the Settlement, Settlement Class Members' legal rights in connection with the Settlement, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the Action is the United States District Court for the Eastern District of New York, and the case is known as *In re Arqit Quantum Inc. Securities Litigation*, No. 1:22-cv-02604-PKC-SDE (E.D.N.Y.). The case has been assigned to the Honorable Pamela K. Chen. The individuals representing the Settlement Classes are the Plaintiffs; and the company, and individuals they sued and who have now settled are called the Defendants.

| 2. | What is this lawsuit about? |
|---|---|

On September 8, 2023, Plaintiffs filed a Consolidated Class action Complaint for Violations of the Federal Securities Laws (ECF 43, the "Complaint"), which alleges, among other things, that, in connection with the Merger and during the September 7, 2021 through December 13, 2022 putative Class Period, Defendants misrepresented that: (a) Arqit had "pioneered a unique quantum encryption technology which makes the communications links of any networked device secure against current and future forms of cyber-attack – even an attack from a quantum computer;" (b) Arqit's technology and software "has been launched live to customers" and is "being sold to and used by customers today;" (c) QuantumCloud, as designed to include the use of satellites, would create encryption keys "that are low cost," "in infinite volumes at minimal cost," and was "easily scalable," including that Arqit itself was "capable of hyper scaling" its operations; (d) QuantumCloud "solves all previously known problems of quantum key distribution"; and (e) Arqit had a "backlog of $130 million of binding revenue contracts…where the revenues will definitely be delivered." *E.g.* ECF 43 ¶ 9.

The Complaint alleged claims for (1) violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 (collectively, "Section 10(b) Claims") on behalf of the Section 10(b) Class (as defined below); (2) violations of Sections 11, 12(a)(2), and 15 ( "Securities Act Claims") of the Securities Act of 1933 ("Securities Act") on behalf of the Securities Act Class (as defined below); and (3) violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 ("Section 14(a) Claims") on behalf of the Section 14(a) Class (as defined below).

The Complaint alleges that the truth concerning the Defendants' alleged false and misleading statements was first revealed through a corrective disclosure on April 18, 2022, when, during pre-market hours, the Wall Street Journal published an Article titled "British Encryption Startup Arqit Overstates Its Prospects, Former Staff and Others Say" ("WSJ Article"). The Complaint further alleges that the WSJ Article revealed, based on interviews with "former employees and other people familiar with the company, and documents viewed by" the WSJ: (a) when Arqit stock started trading in September 2021, "its signature product was an early-stage prototype unable to encrypt anything in practical use," "[n]o commercial customer was using Arqit's encryption system with live data … and the system couldn't meaningfully use any of the common internet protocols required to do nearly anything online," and "its revenue consisted of a handful of government grants and small research contracts;" (b) in April 2021, shortly before the Merger was announced, "Arqit's chief revenue officer [("CRO")] resigned after raising concerns with [Defendant Williams] that [Defendant Williams] was overstating contracts and giving unrealistic revenue projections to potential investors;" and (c) "British cybersecurity officials questioned the viability of Arqit's proposed approach to encryption technology" in the summer of 2020. Complaint ¶ 189. On April 18, 2022, Arqit shares fell $2.57 per share, or 17%, closing at $12.49 per share, and Arqit warrants fell $1.4479 per warrant, or 37.6%, closing at $2.4021 per warrant. Complaint ¶ 190.

The Complaint also alleges that the truth concerning the Defendants' alleged false and misleading statements was also revealed through a corrective disclosure on December 14, 2022, when, during pre-market hours, Arqit announced in its Annual Report for fiscal year ended September 30, 2022 ("2022 20-F"), a press release, and an investor conference call, that it had abandoned its quantum satellite technology, due in part to excessive cost, contrary to prior claims it was "low cost" and "solves all previously known problems" of quantum key distribution. Complaint ¶¶ 201-206. On December 14, 2022, Arqit shares fell $1.10 per share, or 17.6%, closing at $5.15 per share, and Arqit warrants fell $0.418 per warrant, or 34.8%, closing at $0.782 per warrant. Complaint ¶ 207.

Defendants deny each and all of the claims and contentions of wrongdoing alleged by Plaintiffs in the Action, as well as any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct, statements, acts, or omissions that have been alleged, or that could have been alleged, in the Action. Defendants contend that they did not make any materially false or misleading statements, that they disclosed all material information required to be disclosed by the federal securities laws, and that, as relevant to Plaintiffs' Section 10(b) Claims, any alleged misstatements or omissions were not made with the requisite intent or knowledge of wrongdoing. Defendants also contend that any losses allegedly suffered by Members of the Settlement Classes were not caused by any allegedly false or misleading statements by them. Defendants continue to believe that the claims asserted against them in the Action are without

merit and that the Action itself should not be certified as a class action for purposes of trial or adjudication of liability and damages. Defendants also maintain that they have meritorious defenses to all claims that were raised or could have been raised in the Action.

On January 12, 2024, the Defendants moved to dismiss the Complaint. The motion to dismiss made numerous legal arguments as to why the allegations of the Complaint were not sufficient, including that the alleged statements were not false and misleading, the Plaintiffs had not properly pled scienter – an intent to defraud – as required by Section 10(b), and that the Plaintiffs did not have standing to bring certain claims. Plaintiffs opposed that motion. All motion papers were filed with the Court on April 26, 2024. On March 28, 2025, the Court issued a Memorandum and Order denying Defendants' motion to dismiss in its entirety. While the Court denied the motion to dismiss, such a decision concerns only the sufficiency of the Complaint and is not a determinative ruling on the merits in favor of the Plaintiffs or the Defendants.

| 3. | **Why is there a settlement?** |
|---|---|

The Court has not decided in favor of Defendants or of the Plaintiffs and the Classes. Instead, both sides agreed to the Settlement to avoid the distraction, costs, and risks of further litigation, and Plaintiffs agreed to the Settlement in order to ensure that Settlement Class Members will receive compensation.

## WHO IS IN THE SETTLEMENT

| 4. | **How do I know if I am a Member of the Settlement Classes?** |
|---|---|

The Court directed that everyone who falls within at least one of the following Settlement Classes is a Settlement Class Member:

(a) "Section 14(a) Class": all beneficial holders of Centricus Class A ordinary shares and Centricus units as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the Merger, which resulted in the public listing of Arqit's ordinary shares and warrants on the NASDAQ Global Markets exchange ("NASDAQ") on September 7, 2021;

(b) "Section 10(b) Class": all persons or entities who purchased or otherwise acquired Arqit Securities in connection with the Merger or on a U.S. stock exchange between September 7, 2021 and December 13, 2022, inclusive (the Class Period); and

(c) "Securities Act Class": all persons or entities who purchased or otherwise acquired Arqit Securities pursuant or traceable to the effective Offering Materials filed with the SEC for the September 2, 2021 Offering of Arqit Securities in connection with the Merger.

Excluded from the Settlement Classes are Defendants, the current and former officers, directors, and employees of Arqit Quantum, Arqit Limited, and Centricus, (the "Excluded Persons"), members of Defendants' and Excluded Persons' immediate families, legal representatives, heirs, successors or assigns, D2BW Limited, Notion Capital Managers LLP, Notion Capital II GP LLP, NML Limited, MNL Nominees Limited, Centricus Heritage LLC, the

Heritage Group, any other entity in which Defendants or the Excluded Persons have or had a controlling interest, and any Settlement Class Member who timely files a request for exclusion from the Settlement Classes in accordance with the provisions of the Preliminary Approval Order and the requirements set forth in question 11 below (a "Request for Exclusion") that is accepted by the Court.

**Please Note**: Receipt of this Notice or the Postcard Notice does not mean that you are a Settlement Class Member or that you will be entitled to receive a payment from the Settlement. If you are a Settlement Class Member and you wish to be eligible to participate in the distribution of proceeds from the Settlement, you are required to submit the Proof of Claim that is either included with this Notice or available on the Settlement Website, www.arqitsecuritiessettlement.com, and the required supporting documentation as set forth therein postmarked or submitted online on or before _____, 2026.

| 5. | **What if I am still not sure if I am included?** |
|---|---|

If you are still not sure whether you are a Settlement Class Member, you can ask for free help. You can contact the Claims Administrator toll-free at _____, or you can fill out and return the Proof of Claim form enclosed with this Notice package, to see if you qualify.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 6. | **What does the Settlement provide?** |
|---|---|

The Settlement provides that, in exchange for the release of the Released Plaintiffs' Claims (defined below) and dismissal of the Action, Defendants have agreed to provide consideration consisting of seven million dollars ($7,000,000) in cash. The Settlement Amount will be deposited with the Escrow Agent and, after deduction of any Taxes and Tax Expenses, any Notice and Administration Costs, and any Fee and Expense Award, will be distributed *pro rata* to Settlement Class Members who submit valid Proof of Claim forms, in accordance with the Court-approved Plan of Allocation. The Plan of Allocation is described in more detail at page [16-27] of this Notice.

| 7. | **How much will my payment be?** |
|---|---|

Your share of the Net Settlement Fund will depend on several things, including the total claims for Arqit Securities represented by the valid Proof of Claim forms that Settlement Class Members send in, compared to the value of your claim, all as calculated under the Plan of Allocation discussed below.

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

| 8. | **How can I get a payment?** |
|---|---|

To be eligible to receive a payment from the Settlement, you must submit a Proof of Claim form. A Proof of Claim form is enclosed with this Notice or it may be downloaded at www.arqitsecuritiessettlement.com. Read the instructions carefully, fill out the Proof of Claim,

include all the documents the form asks for, sign it, and **mail or submit it online so that it is postmarked or received no later than _____, 2026**. The Proof of Claim form may be submitted online at www.arqitsecuritiessettlement.com.

| 9. | When would I get my payment? |
|---|---|

The Court will hold a Settlement Hearing on _____, 2026, at _.m., to decide whether to approve the Settlement. If the Court approves the Settlement, there might be appeals. It is always uncertain whether appeals can be resolved, and if so, how long it would take to resolve them. It also takes time for all the Proofs of Claim to be processed. Please be patient.

| 10. | What am I giving up to get a payment or to stay in the Classes? |
|---|---|

Unless you timely and validly exclude yourself, you are staying in the Settlement Classes, and that means you cannot sue, continue to sue, or be part of any other lawsuit against Defendants or Defendants' Releasees about the Released Plaintiffs' Claims (as defined below) in this case. It also means that all of the Court's orders will apply to you and legally bind you. If you remain a Settlement Class Member, and if the Settlement is approved, you will give up all "Released Plaintiffs' Claims" (as defined below), including "Unknown Claims" (as defined below), against the "Defendants' Releasees" (as defined below):

- "**Defendants' Releasees**" means Defendants and all of Defendants' past and present officers, directors, employees, insurers, reinsurers, parents, subsidiaries, affiliates, successors, representatives, auditors, attorneys, underwriters, and agents, and the heirs, predecessors, and assigns of the foregoing.

- "**Effective Date**" means the first date by which all of the following events and conditions have been met/occurred: (a) the Court has entered the Preliminary Approval Order; (b) the Settlement Amount has been deposited into the Escrow Account; (c) Arqit has not exercised its option to terminate the Settlement Agreement pursuant to the Supplemental Agreement; and (d) the Court has entered the Judgment, and the Judgment has become Final.

- "**Plaintiffs' Releasees**" means Plaintiffs, Plaintiffs' Counsel, and all other Settlement Class Members, and their respective past and present officers, directors, employees, insurers, investigators, confidential witnesses referred to in the Complaint, reinsurers, subsidiaries, affiliates, successors, representatives, auditors, attorneys, and agents, and the heirs, predecessors, and assigns of the foregoing.

- "**Released Claims**" means the Released Defendants' Claims and Released Plaintiffs' Claims, including Unknown Claims.

- "**Released Defendants' Claims**" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, against Plaintiffs' Releasees that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation. "Released Defendants' Claims" shall not include, and nothing in the Settlement Agreement or the

Judgment shall release or affect, any claims, demands, rights, or causes of action by any of Defendants' Releasees to effectuate the protections from liability granted hereunder or otherwise enforce the terms of the Settlement Agreement or the Judgment.

- "**Released Parties**" means Defendants' Releasees and Plaintiffs' Releasees.

- "**Released Plaintiffs' Claims**" means the Settlement Class Claims, including Unknown Claims.

- "**Settlement Class Claims**" means any and all claims, demands, losses, rights, and causes of action of every nature and description, whether known or Unknown, whether arising under federal, state, common, or foreign law, that Plaintiffs or any other Member of the Settlement Classes (a) asserted in the Complaint, or (b) could have asserted in the Complaint or another action, or could in the future assert in any court or forum that (i) arise out of or relate to any of the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, or referred to in the Complaint and (ii) relate in any way, directly or indirectly, to the purchase or acquisition of the Company's ordinary shares or warrants, or those of the Company's predecessor, Centricus, the voting of Centricus's Class A ordinary shares in connection with the Merger, or the decision to hold Centricus Securities through the Merger. "Settlement Class Claims" shall not include, and the release of the Settlement Class Claims shall not cover, include, or release (1) any claims relating to the enforcement of the Settlement Agreement; (2) any claims of any person or entity that submits a Request for Exclusion from the Settlement Classes that is accepted by the Court; or (3) any ERISA or derivative claims.

- "**Unknown Claims**" in reference to Released Claims means and includes any and all Settlement Class Claims that Plaintiffs or any Settlement Class Member do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement, or might have affected his, her or its decision not to object to the Settlement or seek exclusion from the Settlement Classes.

With respect to the Released Claims, the Parties stipulate and agree that upon the Effective Date, each Settlement Class Member and other Released Party shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by California Civil Code § 1542, or any law of any state or territory of the United States or principle of common law, that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly, fully, finally, and forever settle and release, and each

of Plaintiffs' Releasees, including each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, and Defendants shall expressly, fully, finally, and forever settle and release, and each of Defendants' Releasees, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, in each case known or Unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and the Settlement Class Members and the other Released Parties, by operation of the Judgment, shall be deemed to have acknowledged, that the foregoing waiver and inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and is a material element of the Settlement of which these releases are a part.

## EXCLUDING YOURSELF FROM THE CLASSES

If you do not want to participate in this Settlement, and you want to keep the right to potentially sue the Defendants and the other Defendants' Releasees, on your own, about the claims being released by the Settlement, then you must take steps to remove yourself from the Settlement. This is called excluding yourself – or is sometimes referred to as "opting out." If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this Action, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitation or repose.

| 11. | How do I get out of the Classes and the proposed Settlement? |
|---|---|

To exclude yourself from the Classes and the Settlement, you must send a letter or other document by First-Class Mail, overnight carrier, or hand deliver the letter, stating that you "request exclusion from the Classes in the *Arqit Quantum Settlement*." The Request for Exclusion must include (a) the name, address, and telephone number of the Person seeking exclusion; (b) the caption of the Action; (c) a list identifying (i) all holdings of Centricus Class A common stock or Centricus units by the Person requesting exclusion as of the July 26, 2021 record date for the special meeting of shareholders on August 31, 2021 to consider approval of the Merger, (ii) all transactions in Centricus Securities by the Person requesting exclusion between July 26, 2021 and September 2, 2021, and (iii) all Arqit Securities received by the Person requesting exclusion through the Merger and all transactions in Arqit Securities by the Person requesting exclusion during the Class Period; (d) for each transaction listed in section (c) of this paragraph, the date of each transaction and the price of each transaction; (e) documentation sufficient to evidence each holding and transaction listed in (c) and (d) of this paragraph; and (f) a statement that the Person wishes to be excluded from the Settlement Classes. Any Request for Exclusion must be in writing and signed under penalty of perjury by the beneficial owner(s) of the shares of Centricus Securities or Arqit Securities that are the subject of the Request for Exclusion. You must submit your exclusion request so that it is **received no later than twenty-one (21) calendar days prior to the Settlement Hearing, i.e., _____, 2026** to:

Arqit Securities Litigation
EXCLUSIONS
c/o Kroll Settlement Administration
PO Box _____
New York, NY _____

If you ask to be excluded, you will not get any payment from the Settlement, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue the Defendants and the other Released Parties about the Released Claims in the future.

---

**12.     If I do not exclude myself, can I sue the Defendants and the other Defendants' Releasees for the same thing later?**

---

No. Unless you exclude yourself, you give up any rights you may potentially have to sue the Defendants and the other Defendants' Releasees for any and all Released Plaintiffs' Claims. If you have a pending lawsuit against the Defendants' Releases, speak to your lawyer in that case immediately. You must exclude yourself from the Settlement Classes in this Action to continue your own lawsuit. Remember, the exclusion deadline is _____, 2026.

---

**13.     If I exclude myself, can I get money from the proposed Settlement?**

---

No. If you exclude yourself, you should not send in a Proof of Claim to ask for any money. But you may have the right to potentially sue or be part of a different lawsuit against the Defendants and the other Defendants' Releasees.

## THE LAWYERS REPRESENTING YOU

---

**14.     Do I have a lawyer in this case?**

---

The Court ordered that the law firms of Wolf Popper LLP and Levi & Korsinsky, LLP represent the Settlement Class Members, including you. These lawyers are called Plaintiffs' Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

---

**15.     How will the lawyers be paid?**

---

Plaintiffs' Counsel will apply to the Court for a Fee and Expense Award for (a) an award of attorneys' fees not to exceed one third (1/3) of the Settlement Amount, and (b) expenses, costs and charges in an amount not to exceed $175,000 in connection with prosecuting the Litigation, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund. The Fee and Expense Application will also ask the Court to award PSLRA Reimbursement Awards to each Plaintiff in an amount not to exceed $7,500 for Lead Plaintiff Weeks and $5,000 each for Named Plaintiffs Hagemeister, Lack and Littlejohn, to reimburse the Plaintiffs for their reasonable costs and expenses (including lost wages) directly relating to the representation of the Settlement Classes. Such sums as may be approved by the Court will be paid from the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or any part of it.

| 16. | How do I tell the Court that I object to the proposed Settlement? |
|---|---|

If you are a Settlement Class Member, you can comment on or object to the proposed Settlement, the proposed Plan of Allocation and/or the Fee and Expense Application. You can write to the Court setting out your comment or objection. The Court will consider your views. To comment or object, you must send a letter or other document saying that you wish to comment on or object to the proposed Settlement in the *Arqit Quantum Inc. Securities Litigation Settlement*. Any objection must (a) state the name, address and telephone number of the Settlement Class Member objecting and must be signed personally under penalty of perjury by the Settlement Class Member; (b) state the caption of the Action; (c) contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention and whether the objections apply only to the objector, a specific subset of the Settlement Classes, or to all Settlement Class Members; (d) contain a list identifying (i) all Centricus Class A common stock or Centricus units held by the objecting Settlement Class Member as of the July 26, 2021 record date for the special meeting of shareholders on August 31, 2021 to consider approval of the Merger, (ii) all transactions in Centricus Securities by the objecting Settlement Class Member between July 26, 2021 and September 2, 2021, and (iii) all Arqit Securities received by the objecting Settlement Class Member through the Merger and all transactions in Arqit Securities by the Objecting Settlement Class Member during the Class Period; (e) for each transaction listed in section (d) of this paragraph, state the date of each transaction and the price of each transaction; (f) include documents sufficient to prove membership in the Settlement Classes, including documents sufficient to prove all of the objecting Settlement Class Member's holdings and transactions in Centricus Securities and Arqit Securities set forth in sections (d) and (e) of this paragraph, the dates of the transactions, the number of shares purchased or sold or held, and the price paid or received for such purchase or sale.

Your comments or objection and any supporting papers must be filed with the Court and mailed or delivered to each of the following addresses such that it is *received* **no later than twenty-one (21) calendar days prior to the Settlement Hearing, i.e., _____, 2026:**

| **COURT** | **PLAINTIFFS' COUNSEL** |
|---|---|
| CLERK OF THE COURT | WOLF POPPER LLP |
| UNITED STATES DISTRICT | Joshua W. Ruthizer |
| COURT EASTERN | 845 Third Avenue, 12th |
| DISTRICT OF NEW YORK | Floor |
| 225 Cadman Plaza East | New York, NY 10022 |
| Brooklyn, NY 11201 | |

**PLEASE NOTE that all objections will be filed publicly with the Court. You should redact any personally identifiable information before submitting your objection, such as account numbers or social security numbers.**

| 17. | What is the difference between objecting and excluding? |
|---|---|

Objecting is simply telling the Court that you do not like something about the Settlement. You can object **only** if you stay in the Settlement Classes.

Excluding yourself is telling the Court that you do not want to recover money from the Settlement and do not want to release any claims you think you may have against Defendants and the Defendants' Releasees. If you exclude yourself, you cannot object to the Settlement because it does not affect you.

## THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement. You may attend and you may ask to speak, but you do not have to.

---

**18.  When and where will the Court decide whether to approve the proposed Settlement?**

---

The Court will hold a Settlement Hearing at \_:00 \_.m., on _____, 2026, at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Courtroom 4F, Brooklyn, New York 11201. At the hearing, the Court will consider whether the Settlement and the Plan of Allocation are fair, reasonable, and adequate. If there are objections, the Court will consider them, even if you do not ask to speak at the hearing. The Court will listen to people who have asked to speak at the hearing pursuant to the instructions in this Notice. The Court may also decide how much to award to Plaintiffs' Counsel and Plaintiffs through the Fee and Expense Award. After the Settlement Hearing, the Court will decide whether to approve the Settlement and the Plan of Allocation. We do not know how long these decisions will take. You should be aware that the Court may change the date and time of the Settlement Hearing without another notice being sent to Settlement Class Members. If you want to attend the hearing, you should check with Plaintiffs' Counsel or the Settlement website www.arqitsecuritiessettlement.com beforehand to be sure that the date and/or time has not changed.

---

**19.  Do I have to come to the hearing?**

---

No. Plaintiffs' Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as your written objection was received by the deadline stated herein and otherwise complies with the requirements set forth herein, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval.

---

**20.  May I speak at the hearing?**

---

If you object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must include in your written objection (see question 16 above) a written statement of your intention to appear at the hearing and to include in your written objections the identity of any witnesses you may call to testify and copies of any exhibits you intend to introduce into evidence at the Settlement Hearing. Your notice of intention to appear must be received with your written

objection and be *received* **no later than** _____, **2026**, and addressed to the Clerk of the Court and Plaintiffs' Counsel, at the addresses listed above in question 16.

You cannot speak at the hearing if you exclude yourself from the Classes.

## IF YOU DO NOTHING

| 21. | What happens if I do nothing? |
|-----|-------------------------------|

If you do nothing, you will not receive any money from this Settlement. In addition, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants and the Defendants' Releasees about the Released Plaintiffs' Claims in this case.

## GETTING MORE INFORMATION

| 22. | How do I get more information? |
|-----|--------------------------------|

You can obtain answers to common questions regarding the proposed Settlement by contacting the Claims Administrator at:

Arqit Quantum Inc. Securities Litigation Settlement
c/o Kroll Settlement Administration LLC
PO Box _____
New York, NY _____
1-_____,
**[email]**
www.arqitsecuritiessettlement.com

Reference is also made to the Settlement Agreement, to the documents filed in support of the Settlement, to the Orders entered by the Court and to the other Settlement related papers filed in the Action, which are posted on the Settlement website at www.arqitsecuritiessettlement.com, and which may be inspected at the Office of the Clerk of the United States District Court for the Eastern District of New York, during regular business hours. For a fee, all papers filed in this Action are available at www.pacer.gov.

Inquiries should **not** be directed to Defendants, the Court, or the Clerk of the Court.

Inquiries, other than requests for copies of Notices, the Settlement Agreement, or for a

Claim Form, may be made to Plaintiffs' Counsel at the address and telephone number on page [4]

of this Notice.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS,
OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

## PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG SETTLEMENT CLASS MEMBERS

Each Settlement Class Member's share of the Settlement Fund will depend on several factors, including, but not limited to, how many Settlement Class Members timely send in valid Claim Forms; what type of security and when their securities were purchased or acquired and the price at the time of purchase or acquisition; whether the securities were sold, and if so, when they were sold and for how much. The Plan of Allocation below will provide more detail on your potential recovery.

The Settlement Amount (together with any interest earned thereon) constitutes the "Settlement Fund." The "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Fee and Expense Award; and (iv) any other costs and fees approved by the Court. If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible members of the Classes who timely submit valid Claim Forms ("Authorized Claimant(s)") in accordance with the Plan of Allocation. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided herein.

The Plan of Allocation is intended to distribute the proceeds of the Net Settlement Fund equitably among all Settlement Class Members who are alleged to have suffered economic losses as a proximate result of Defendants' alleged conduct. The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Loss Amount." As described further below, the Recognized Loss Amount formula will be the Authorized Claimant's Recognized Loss divided by the total of the Recognized Loss Amounts of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. The Recognized Loss Amount formula is not a formal damage analysis, and the calculations made in accordance with the formula are not intended to be estimates, or indicative, of the amount of what a Settlement Class Member lost or might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement.

## THE COURT MAY APPROVE THE PLAN OF ALLOCATION, OR MODIFY IT, WITHOUT ADDITIONAL NOTICE TO THE CLASSES.

## ANY ORDER MODIFYING THE PLAN OF ALLOCATION WILL BE POSTED ON THE SETTLEMENT WEBSITE, WWW.ARQITSECURITIESSETTLEMENT.COM.

## CALCULATION OF RECOGNIZED LOSS AND RECOGNIZED GAIN AMOUNTS

1.     The Settlement Amount of seven million dollars ($7,000,000) together with any interest earned thereon is the "Settlement Fund." The Settlement Fund, less all Taxes and Tax Expenses, Notice and Administration Costs, and any Fee and Expense Award (the "Net Settlement Fund") shall be distributed to Settlement Class Members who submit timely and valid Proof of Claim forms to the Claims Administrator ("Authorized Claimants").

2.     The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Settlement Class Members based on their respective alleged economic losses resulting from the securities law violations alleged in the Action.

3.    In this case, Plaintiffs allege that Defendants made materially false and misleading statements and omissions in connection with the Merger and during the period from September 7, 2021 through December 13, 2022, inclusive, (the "Class Period"), which had the effect of artificially inflating the trading prices of Arqit ordinary shares and Arqit warrants (collectively, "Arqit Securities"). Plaintiffs allege that corrective information was released to the market, resulting in potentially recoverable damages ("Corrective Disclosure") on April 18, 2022 and December 14, 2022. Pursuant to this Plan of Allocation, Settlement Class Members may have a claim under (a) Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Section 10(b) Claims), (b) Section 14(a) of the Exchange Act and SEC Rule 14d-9 (Section 14(a) Claims), or (c) Sections 11 or 12(a)(2) of the Securities Act of 1933 (Securities Act Claims).[2]

4.    With regard to Section 10(b) Claims, the Plan of Allocation is intended to compensate investors who purchased or otherwise acquired Arqit Securities during the Class Period, held such Arqit Securities through the issuance of at least one Corrective Disclosure, and have a "Recognized Loss Amount" as described below.

5.    With regard to Section 14(a) Claims, the Plan of Allocation is intended to compensate investors who held Centricus units or Centricus Class A ordinary shares as of July 26, 2021 (the record date for purposes of voting on the Merger), received Arqit ordinary shares as consideration, continued to hold those shares through the issuance of at least one Corrective Disclosure, and have a "Recognized Loss Amount" as described below.

6.    With regard to Securities Act Claims, the Plan of Allocation is intended to compensate investors who purchased or otherwise acquired Arqit ordinary shares and/or Arqit warrants traceable to the effective "Registration Statement" filed with the SEC in connection with the September 2, 2021 offering or Arqit securities in connection with the Merger and have a "Recognized Loss Amount" as described below. The Plan of Allocation for the Securities Act Claims uses the damages calculation formula set forth in Section 11(e) of the Securities Act to calculate Recognized Loss Amount.

7.    With respect to Securities Act Claims, in its decision denying the Defendants' motion to dismiss, the Court found that traceability for Arqit ordinary shares and Arqit warrants extended through December 14, 2021. The Plan of Allocation therefore assumes that Arqit ordinary shares and Arqit warrants purchased or acquired in the Merger or from September 2, 2021 through December 14, 2021 are traceable to the Registration Statement.

8.    The Plan of Allocation is not a formal damage analysis. The Recognized Loss Amount is not intended to estimate the amount a Settlement Class Member may have been able to recover after a trial, nor to estimate the amount the Settlement Class Member will receive. It is a formula

_____

[2] In addition to these claims, Plaintiffs also asserted claims under (i) Section 20(a) of the Exchange Act concerning certain Defendants' control of Arqit when violations of Section 10(b) and Section 14(a) occurred; and (ii) Section 15 of the Securities Act concerning certain Defendants' control of Arqit when violations of Sections 11 and 12(a)(2) occurred. For purposes of this Plan of Allocation, (i) claims under Section 20(a) are subsumed under Section 10(b) and 14(a) calculations below; and (ii) claims under Section 15 are all subsumed under the calculations for Securities Act Claims below.

for allocating the Net Settlement Fund among all Authorized Claimants. For Section 10(b) Claims and Section 14(a) Claims, the calculations below are based on the following inflation per share amounts for Class Period stock and warrants purchases and sales as well as the statutory PSLRA 90-day look-back amount of $2.55 per Arqit ordinary share and $0.46 per Arqit warrant.[3]

9.       The Plan of Allocation was developed in consultation with Plaintiffs' damages consultant. In developing the Plan of Allocation, Plaintiffs' damages consultant calculated the estimated amount of alleged artificial inflation in the prices of Arqit Securities that was allegedly proximately caused by Defendants' allegedly materially false and misleading statements and omissions the Court previously found to be actionable. In calculating the estimated impact allegedly caused by those misrepresentations and omissions, Plaintiffs' damages consultant considered the price changes in Arqit Securities in reaction to the public disclosures that allegedly corrected the alleged misrepresentation or omissions, adjusting the price changes for factors that were attributable to market or industry forces.[4]

10.      Based on the formulas stated below, a Recognized Loss Amount will be calculated for each purchase or acquisition of Centricus units, Centricus Class A ordinary shares, Arqit ordinary shares, and/or Arqit warrants that meet the requirements in ¶¶[[4-7]] above that are listed on the Claim Form and for which adequate documentation is provided. If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that Recognized Loss Amount will be zero.

**Calculation of Recognized Loss Amount for Settlement Class Members with Section 10(b) Claims (Section 10(b) Class Members)**

11.      For each Arqit ordinary share purchased or otherwise acquired during the Class Period and:

(a)       sold prior to April 18, 2022, the Section 10(b) Claims Recognized Loss Amount will be $0.00;

---

[3] "In any private action arising under this [Exchange Act] in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with §28(D)(e)(1) of the Exchange Act, Recognized Loss Amounts for Arqit ordinary shares and Arqit warrants are reduced to an appropriate extent by taking into account the closing prices of Arqit ordinary shares and Arqit warrants during the 90-day look-back period. The mean (average) closing price for Arqit ordinary shares during this 90-day look-back period was $2.55 per share as shown in Table 2. The mean (average) closing price for Arqit warrants during this 90-day look-back period was $0.46 per warrant as shown in Table 4.

[4] In order to have recoverable damages under the federal securities laws, disclosures relating to the alleged misrepresentations and/or omissions must be a cause of the decline in the price of the security.

(b)     sold from April 18, 2022 through December 13, 2022, inclusive, the Section 10(b) Claims Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), and (ii) the purchase price minus the sale price;

(c)     sold from December 14, 2022 through and including the close of trading on March 13, 2023, the Section 10(b) Claims Recognized Loss Amount will be *the least of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), (ii) the purchase price minus the sale price, or (iii) the purchase price minus the average closing price between December 14, 2022 and the date of sale as stated in Table 2 below;

(d)     held as of the close of trading on March 13, 2023, the Section 10(b) Claims Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), or (ii) the purchase price minus $2.55, the average closing price for Arqit ordinary shares between December 14, 2022 and March 13, 2023 (the last entry in Table 2 below).

12.     For each Arqit warrant purchased or otherwise acquired during the Class Period and:

(a)     sold prior to April 18, 2022, the Section 10(b) Claims Recognized Loss Amount will be $0.00;

(b)     sold from April 18, 2022 through December 13, 2022, inclusive, the Section 10(b) Claims Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 3 below), and (ii) the purchase price minus the sale price;

(c)     sold from December 14, 2022 through and including the close of trading on March 13, 2023, the Section 10(b) Claims Recognized Loss Amount will be *the least of*: (i) the decline in inflation during the holding period (as presented in Table 3 below), (ii) the purchase price minus the sale price, or (iii) the purchase price minus the average closing price between December 14, 2022 and the date of sale as stated in Table 4 below;

(d)     held as of the close of trading on March 13, 2023, the Section 10(b) Claims Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 3 below), or (ii) the purchase price minus $0.46, the average closing price for Arqit warrants between December 14, 2022 and March 13, 2023 (the last entry in Table 4 below).

### Calculation of Recognized Loss Amount for Settlement Class Members with Section 14(a) Claims (Section 14(a) Class Members)

13.     For each Centricus Acquisition Corp. unit or Class A ordinary share held as of July 26, 2021 (the record date for purposes of voting on the Merger) and exchanged for Arqit ordinary shares and:

(a)     sold prior to April 18, 2022, the Section 14(a) Claims Recognized Loss Amount will be $0.00;

(b)　sold from April 18, 2022 through December 13, 2022, inclusive, the Section 14(a) Claims Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), and (ii) the purchase price minus the sale price;

(c)　sold from December 14, 2022 through and including the close of trading on March 13, 2023, the Section 14(a) Claims Recognized Loss Amount will be *the least of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), (ii) the purchase price minus the sale price, or (iii) the purchase price minus the average closing price between 14 December 2022 and the date of sale as stated in Table 2 below;

(d)　held as of the close of trading on March 13, 2023, the Section 14(a) Claims Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), or (ii) the purchase price minus $2.55, the average closing price for Arqit ordinary shares between December 14, 2022 and March 13, 2023 (the last entry in Table 2 below).

14.　Settlement Class Members that purchased or acquired Centricus units or Centricus warrants and meet all requirements in ¶5 will not have Section 14(a) Claims (a Section 14(a) Claims Recognized Loss Amount) for the warrant component securities, but may have Section 14(a) Claims (a Section 14(a) Claims Recognized Loss Amount) for the stock component securities.

### Calculation of Recognized Loss Amount for Settlement Class Members with Securities Act Claims (Securities Act Class)

15.　For each Arqit ordinary share purchased or otherwise acquired traceable to the September 2, 2021 offering, as set forth in ¶¶[[6-7]] above, and:

(a)　sold prior to April 14, 2023, the Securities Act Claims Recognized Loss Amount per share will be *the lesser of*: (i) $10.00 (the 2 September 2021 offering price of Arqit ordinary shares) minus the sale price, and (ii) the purchase price minus the sale price.

(b)　held as of the close of trading on April 14, 2023 (the Date of Suit), the Securities Act Claims Recognized Loss Amount per share is $8.76.

16.　For each Arqit warrant purchased or otherwise acquired traceable to the September 2, 2021 offering, and:

(a)　sold prior to April 14, 2023, the Securities Act Claims Recognized Loss Amount per warrant will be *the lesser of*: (i) $0.99 (the September 2, 2021 offering price of Arqit warrants) minus the sale price, and (ii) the purchase price minus the sale price.

(b)　held as of the close of trading on April 14, 2023 (the Date of Suit), the Securities Act Claims Recognized Loss Amount per warrant is $0.66.

**Additional Provisions**

17.     Any transactions in Arqit ordinary shares or Arqit warrants, or Centricus units or Centricus Class A ordinary shares executed outside regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next trading session.

18.     Any Arqit Securities acquired through the conversion of Centricus Securities into Arqit Securities through the Merger will be treated as a purchase or acquisition of Arqit Securities on the date of the conversion at the offering prices of $10 for Arqit ordinary shares and $0.99 for Arqit warrants, respectively.

19.     For each purchase or acquisition of Arqit ordinary shares, Arqit warrants, Centricus units, or Centricus Class A ordinary shares, a "Recognized Loss Amount" will be calculated, which will be the greatest of the Claimant's Section 10(b) Claims Recognized Loss Amount, Section 14(a) Claims Recognized Loss Amount, and Securities Act Claims Recognized Loss Amount for that purchase or acquisition. For each purchase or acquisition a Claimant may be entitled to recover for their Section 10(b) Claims, Section 14(a) Claims, or Securities Act Claims, but not more than one of these claims. Claimant's "Recognized Claim" under the Plan of Allocation will be the sum of their Recognized Loss Amounts.

20.     For Settlement Class Members who held Arqit ordinary shares or Arqit warrants at the beginning of the Class Period or made multiple purchases, acquisitions or sales during the Class Period, the First-In, First-Out ("FIFO") method will be applied to such holdings, purchases, acquisitions and sales for purposes of calculating a claim. Under the FIFO method, sales of Arqit ordinary shares or Arqit warrants during the Class Period will be matched, in chronological order, first against Arqit ordinary shares or Arqit warrants held at the beginning of the Class Period, respectively. The remaining sales of Arqit ordinary shares or Arqit warrants during the Class Period will then be matched, in chronological order, against Arqit ordinary shares or Arqit warrants purchased or acquired during the Class Period, respectively.

21.     A Settlement Class Member will be eligible to receive a distribution from the Net Settlement Fund only if a Settlement Class Member had a net overall loss, after all profits from (a) for Section 14(a) Claims, Centricus Class A ordinary shares and Centricus units purchased or otherwise acquired and held as of July 26, 2021, and (b) for Securities Act Claims and Section 10(b) Claims, transactions in Arqit ordinary shares and Arqit warrants during the Class Period, are subtracted from all losses. If a claimant suffered an overall market loss with respect to their overall transactions in the Arqit and Centricus securities described above in this paragraph during the relevant periods described above in this paragraph, but that market loss was less than the Claimant's total Recognized Claim calculated above, then the claimant's Recognized Claim will be limited to the amount of the actual market loss. For purposes of determining whether a Claimant had a market gain, or suffered a market loss, with respect to a Claimant's overall transactions of Centricus Class A ordinary shares or Centricus units and Arqit ordinary shares or Arqit warrants during relevant periods described above in this paragraph, the Claims Administrator will determine

the difference between the claimant's (i) Total Purchase Amount[5] and (ii) the sum of the Total Sales Proceeds[6] and Total Holding Value.[7]

22.    The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis, based on the relative size of their Recognized Claims. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which will be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00. Distributions will be rounded to the nearest penny.

23.    A purchase, acquisition, or sale of Arqit ordinary shares, Arqit warrants, Centricus units, or Centricus Class A ordinary shares shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. All purchase, acquisition, and sale prices shall exclude any fees and commissions. The receipt or grant by gift, devise, or operation of law of Arqit ordinary shares, Arqit warrants, Centricus units, or Centricus Class A ordinary shares shall not be deemed a purchase, acquisition or sale of Arqit ordinary shares, Arqit warrants, Centricus units, or Centricus Class A ordinary shares for the calculation of a Claimant's recognized claim nor shall it be deemed an assignment of any claim relating to the purchase or acquisition of such security unless specifically provided in the instrument of gift or assignment. The receipt of Arqit ordinary shares, Arqit warrants, Centricus units, or Centricus Class A ordinary shares in exchange for securities of any corporation or entity, other than an exchange of Centricus Securities for Arqit Securities, shall not be deemed a purchase or acquisition of Arqit ordinary shares, Arqit warrants, Centricus units, or Centricus Class A ordinary shares, respectively.

---

[5] The "Total Purchase Amount" is the total amount the claimant paid (excluding commissions and other charges) (a) for the Section 14(a) Claims only, for Centricus Class A ordinary shares and Centricus units purchased or otherwise acquired and held as of July 26, 2021, and (b) for the Section 10(b) and Securities Act Claims, for Arqit ordinary shares or Arqit warrants purchased or otherwise acquired during the Class Period.

[6] For the Section 14(a) Claims only, a claimant's sales proceeds shall be the total amounts received from sales of Centricus units, Centricus Class A ordinary shares, or Arqit ordinary shares (i.e. the Arqit ordinary shares and Arqit warrants received through the merger) sold after July 26, 2021. For the Section 10(b) Claims and Securities Act Claims, a claimant's sales proceeds shall be the total amounts received during the Class Period from sales of Arqit ordinary shares or Arqit warrants purchased during the Class Period. The total amounts received (excluding commissions and other charges) from these sales will be the "Total Sales Proceeds."

[7] The Claims Administrator will ascribe a holding value equal to $5.15 for each share of Arqit ordinary shares purchased or acquired during the Class Period and still held as of the close of trading on December 13, 2022. The Claims Administrator will ascribe a holding value equal to $0.78 for each Arqit warrant purchased or acquired during the Class Period and still held as of the close of trading on December 13, 2022. A Claimant's total holding values for Arqit ordinary shares and Arqit warrants acquired during the Class Period that were still held as of the close of trading on December 13, 2022 shall be the Claimant's "Total Holding Value."

24.     The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Arqit ordinary shares. The date of a "short sale" is deemed to be the date of sale of Arqit ordinary shares. Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero. In the event that a claimant has an opening short position in Arqit ordinary shares, their earliest Class Period purchases or acquisitions of Arqit ordinary shares will be matched against the opening short position, and not be entitled to a recovery, until that short position is fully covered.

25.     Distributions will be made to Authorized Claimants after all claims have been processed, after the Court has finally approved the Settlement, and after any appeals are resolved. If there is any balance remaining in the Net Settlement Fund after at least six (6) months from the initial date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), the Claims Administrator shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is no longer economically feasible to distribute to Settlement Class Members. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to non-sectarian, not-for-profit organization(s), to be recommended by Plaintiffs' Counsel and approved by the Court.

26.     Please contact the Claims Administrator or Plaintiffs' Counsel if you disagree with any determinations made by the Claims Administrator regarding your Proof of Claim. If you are dissatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Settlement Class Members and the claims administration process, to decide the issue by submitting a written request.

27.     The Court has reserved jurisdiction to allow, disallow, or adjust the claim of any Settlement Class Member on equitable grounds.

28.     Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants. Defendants, their respective counsel, and all other Defendants' Releasees will have no responsibility or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any claim. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, or any other Person designated by Plaintiffs' Counsel, or Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Settlement Agreement, the plan of allocation approved by the Court, or any order of the Court. All Settlement Class Members who fail to complete and submit a valid and timely Proof of Claim shall be barred from participating in distributions from the Net Settlement Fund (unless otherwise ordered by the Court), but otherwise shall be bound by all of the terms of the Settlement Agreement, including the terms of any judgment entered and the releases given.

**TABLE 1**

**Decline in Inflation Per Share by Date of Purchase and Date of Sale**

| Purchase Date | Sale Date | | |
|---|---|---|---|
| | 9/7/2021 - 4/17/2022 | 4/18/2022 - 12/13/2022 | Sold on or Retained Beyond 12/14/2022 |
| 9/7/2021 - 4/17/2022 | $0.00 | $2.53 | $3.60 |
| 4/18/2022 - 12/13/2022 | | $0.00 | $1.07 |
| Sold on or Retained Beyond 12/14/2022 | | | $0.00 |

**TABLE 2**

**Arqit Quantum Stock Closing Prices and Average Closing Prices**

| Date | Stock Closing Price | Average Closing Price Between December 14, 2022 and Date Shown | Date | Stock Closing Price | Average Closing Price Between December 14, 2022 and Date Shown |
|---|---|---|---|---|---|
| 12/14/2022 | $5.15 | $5.15 | 1/30/2023 | $2.03 | $3.20 |
| 12/15/2022 | $5.07 | $5.11 | 1/31/2023 | $2.12 | $3.17 |
| 12/16/2022 | $4.96 | $5.06 | 2/1/2023 | $2.14 | $3.14 |
| 12/19/2022 | $4.62 | $4.95 | 2/2/2023 | $2.46 | $3.12 |
| 12/20/2022 | $4.22 | $4.80 | 2/3/2023 | $2.50 | $3.10 |
| 12/21/2022 | $4.38 | $4.73 | 2/6/2023 | $3.05 | $3.10 |
| 12/22/2022 | $4.23 | $4.66 | 2/7/2023 | $2.77 | $3.09 |
| 12/23/2022 | $4.20 | $4.60 | 2/8/2023 | $2.81 | $3.08 |
| 12/27/2022 | $3.90 | $4.53 | 2/9/2023 | $2.51 | $3.07 |
| 12/28/2022 | $3.80 | $4.45 | 2/10/2023 | $2.41 | $3.05 |
| 12/29/2022 | $3.60 | $4.38 | 2/13/2023 | $2.44 | $3.03 |
| 12/30/2022 | $3.61 | $4.31 | 2/14/2023 | $2.56 | $3.02 |
| 1/3/2023 | $3.00 | $4.21 | 2/15/2023 | $2.89 | $3.02 |
| 1/4/2023 | $3.14 | $4.13 | 2/16/2023 | $2.53 | $3.01 |
| 1/5/2023 | $2.73 | $4.04 | 2/17/2023 | $1.47 | $2.98 |
| 1/6/2023 | $2.91 | $3.97 | 2/21/2023 | $1.40 | $2.94 |
| 1/9/2023 | $2.76 | $3.90 | 2/22/2023 | $1.38 | $2.91 |
| 1/10/2023 | $2.70 | $3.83 | 2/23/2023 | $1.33 | $2.87 |
| 1/11/2023 | $2.56 | $3.77 | 2/24/2023 | $1.25 | $2.84 |
| 1/12/2023 | $2.51 | $3.70 | 2/27/2023 | $1.28 | $2.81 |
| 1/13/2023 | $2.76 | $3.66 | 2/28/2023 | $1.24 | $2.78 |
| 1/17/2023 | $2.90 | $3.62 | 3/1/2023 | $1.33 | $2.75 |
| 1/18/2023 | $2.43 | $3.57 | 3/2/2023 | $1.36 | $2.73 |
| 1/19/2023 | $2.10 | $3.51 | 3/3/2023 | $1.38 | $2.70 |
| 1/20/2023 | $2.09 | $3.45 | 3/6/2023 | $1.38 | $2.68 |
| 1/23/2023 | $2.08 | $3.40 | 3/7/2023 | $1.31 | $2.65 |
| 1/24/2023 | $2.41 | $3.36 | 3/8/2023 | $1.29 | $2.63 |
| 1/25/2023 | $2.13 | $3.32 | 3/9/2023 | $1.22 | $2.60 |
| 1/26/2023 | $2.13 | $3.28 | 3/10/2023 | $1.18 | $2.58 |
| 1/27/2023 | $2.12 | $3.24 | 3/13/2023 | $1.02 | $2.55 |

**TABLE 3**

**Decline in Inflation Per Warrant by Date of Purchase and Date of Sale**

| | Sale Date | | |
|---|---|---|---|
| Purchase Date | 9/7/2021 - 4/17/2022 | 4/18/2022 - 12/13/2022 | Sold on or Retained Beyond 12/14/2022 |
| 9/7/2021 - 4/17/2022 | $0.00 | $1.45 | $1.87 |
| 4/18/2022 - 12/13/2022 | | $0.00 | $0.42 |
| Sold on or Retained Beyond 12/14/2022 | | | $0.00 |

## TABLE 4

**Arqit Quantum Warrants Closing Prices and Average Closing Prices**

| Date | Warrant Closing Price | Average Closing Price Between December 14, 2022 and Date Shown | Date | Warrant Closing Price | Average Closing Price Between December 14, 2022 and Date Shown |
|---|---|---|---|---|---|
| 12/14/2022 | $0.78 | $0.78 | 1/30/2023 | $0.43 | $0.51 |
| 12/15/2022 | $0.70 | $0.74 | 1/31/2023 | $0.46 | $0.51 |
| 12/16/2022 | $0.70 | $0.73 | 2/1/2023 | $0.45 | $0.50 |
| 12/19/2022 | $0.59 | $0.69 | 2/2/2023 | $0.52 | $0.50 |
| 12/20/2022 | $0.57 | $0.67 | 2/3/2023 | $0.47 | $0.50 |
| 12/21/2022 | $0.58 | $0.65 | 2/6/2023 | $0.63 | $0.51 |
| 12/22/2022 | $0.57 | $0.64 | 2/7/2023 | $0.63 | $0.51 |
| 12/23/2022 | $0.58 | $0.63 | 2/8/2023 | $0.54 | $0.51 |
| 12/27/2022 | $0.56 | $0.63 | 2/9/2023 | $0.56 | $0.51 |
| 12/28/2022 | $0.57 | $0.62 | 2/10/2023 | $0.46 | $0.51 |
| 12/29/2022 | $0.56 | $0.61 | 2/13/2023 | $0.46 | $0.51 |
| 12/30/2022 | $0.51 | $0.61 | 2/14/2023 | $0.45 | $0.51 |
| 1/3/2023 | $0.45 | $0.59 | 2/15/2023 | $0.56 | $0.51 |
| 1/4/2023 | $0.50 | $0.59 | 2/16/2023 | $0.54 | $0.51 |
| 1/5/2023 | $0.46 | $0.58 | 2/17/2023 | $0.36 | $0.51 |
| 1/6/2023 | $0.46 | $0.57 | 2/21/2023 | $0.37 | $0.50 |
| 1/9/2023 | $0.46 | $0.57 | 2/22/2023 | $0.34 | $0.50 |
| 1/10/2023 | $0.44 | $0.56 | 2/23/2023 | $0.36 | $0.50 |
| 1/11/2023 | $0.43 | $0.55 | 2/24/2023 | $0.32 | $0.49 |
| 1/12/2023 | $0.44 | $0.55 | 2/27/2023 | $0.35 | $0.49 |
| 1/13/2023 | $0.45 | $0.54 | 2/28/2023 | $0.36 | $0.49 |
| 1/17/2023 | $0.46 | $0.54 | 3/1/2023 | $0.34 | $0.49 |
| 1/18/2023 | $0.47 | $0.53 | 3/2/2023 | $0.34 | $0.48 |
| 1/19/2023 | $0.39 | $0.53 | 3/3/2023 | $0.32 | $0.48 |
| 1/20/2023 | $0.39 | $0.52 | 3/6/2023 | $0.30 | $0.48 |
| 1/23/2023 | $0.44 | $0.52 | 3/7/2023 | $0.30 | $0.47 |
| 1/24/2023 | $0.47 | $0.52 | 3/8/2023 | $0.30 | $0.47 |
| 1/25/2023 | $0.47 | $0.52 | 3/9/2023 | $0.30 | $0.47 |
| 1/26/2023 | $0.41 | $0.51 | 3/10/2023 | $0.31 | $0.46 |
| 1/27/2023 | $0.43 | $0.51 | 3/13/2023 | $0.26 | $0.46 |

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you, as a nominee or custodian, (i) held Centricus Securities as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger, (ii) purchased or otherwise acquired Arqit Securities through the Merger, or (iii) purchased or otherwise acquired Arqit Securities during the Class Period, then you must either: (a)

provide to the Claims Administrator the name, last known address, and email address of each beneficial owner for whom you are nominee or custodian; (b) request copies of the Postcard Notice for the Claims Administrator sufficient to send to all beneficial owners for whom you are nominee or custodian, which will be provided to nominees or custodians free of charge, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, mail the Postcard Notice directly to all such persons or entities, or (c) request the link to the Postcard Notice and Proof of Claim and Release form from the Claims Administrator, and WITHIN SEVEN (7) CALENDAR DAYS of receipt, email the link directly to all beneficial owners for whom you are nominee or custodian.

Nominees who elect to follow procedure (b) or (c), **MUST** send a statement to the Claims Administrator confirming that the mailing/emailing was made as directed and keep a record of the names and mailing/emailing addresses used. Upon receipt by the Claims Administrator of proper documentation, nominees may seek reimbursement of their reasonable expenses actually incurred, not to exceed (a) $0.03 per name, mailing address and email address (to the extent available) provided to the Claims Administrator; (b) $0.03 per postcard, plus postage at the pre-sort rate used by the Claims Administrator, for mailing the Postcard Notice; or (c) $0.03 per email for emailing the Postcard Notice and Proof of Claim and Release. Any disputes with respect to the reasonableness or documentation of expenses incurred shall be subject to review by the Court. Copies of this Notice and the Claim Form may be obtained from the website maintained by the Claims Administrator, www.arqitsecuritiessettlement.com. All communications concerning the foregoing should be addressed to the Claims Administrator at the contact information on page [15] of this Notice.

DATED: _____    _____

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# Exhibit A-4

**Exhibit A-4**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ARQIT QUANTUM INC. SECURITIES LITIGATION | No. 1:22-cv-02604-PKC-SDE |

**PROOF OF CLAIM AND RELEASE FORM**

To be eligible to receive a payment from the Settlement, you must submit this Proof of Claim form. Read the instructions carefully, fill out this Proof of Claim, include all the documents the form asks for, sign it, and **mail or submit it online so that it is postmarked or received no later than _____, 2026**. This Proof of Claim form may be submitted online at www.arqitsecuritiessettlement.com. Mailed submissions must be addressed as follows:

In re Arqit Quantum Inc. Securities Litigation
c/o Kroll Settlement Administration
PO Box _____
New York, NY _____
www.arqitsecuritiessettlement.com

**PART I: GENERAL INSTRUCTIONS**

      1.      It is important that you read and understand the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") that accompanies this Proof of Claim, and is also downloadable at www.arqitsecuritiessettlement.com. The Notice describes the proposed Settlement and how Settlement Class Members' rights may be affected by it. The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Proof of Claim. By signing and submitting the Proof of Claim, you will be certifying that you have read and that you understand the Notice, including the terms of the releases that you will be giving if you submit a Proof of Claim.

      2.      This Proof of Claim is directed to all Settlement Class Members, meaning all Persons who fall within at least one of the following Settlement Classes:

      a.      "Section 14(a) Class": all beneficial holders of Centricus Class A ordinary shares and Centricus units as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the Merger, which resulted in the public listing of Arqit's ordinary shares and warrants on the NASDAQ Global Markets exchange ("NASDAQ") on September 7, 2021;

        b.      "Section 10(b) Class": all persons or entities who purchased or otherwise acquired Arqit Securities in connection with the Merger or on a U.S. stock exchange between September 7, 2021 and December 13, 2022, inclusive (the Class Period); or,

        c.      "Securities Act Class": all persons or entities who purchased or otherwise acquired Arqit Securities pursuant or traceable to the effective Offering Materials filed with the SEC for the September 2, 2021 Offering of Arqit Securities in connection with the Merger.

In its decision denying the Defendants' motion to dismiss, the Court found that traceability for Arqit ordinary shares and Arqit warrants extended through December 14, 2021. The Plan of Allocation, which is included on pages [16-27] of the Notice, therefore assumes that Arqit ordinary shares and Arqit warrants purchased or acquired in the Merger or from September 2, 2021 through December 14, 2021 are traceable to the Registration Statement.

If you fit within one or more of these definitions and (i) are not excluded from the Class by reason of your relationship to the Defendants or their affiliates (*see* Notice at 4, "How do I know if I am a Member of the Settlement Classes?") and (ii) do not exclude yourself by submitting a Request for Exclusion (*see* Notice at page [11], "How do I get out of the Class and the proposed Settlement?"), then you are a Settlement Class Member.

3.      If you are NOT a Settlement Class Member, you may NOT participate in the Settlement, you should NOT submit a Proof of Claim, and any Proof of Claim you submit will be rejected.

4.      If you are a Settlement Class Member and you do not timely request exclusion, you will be bound by the terms of any judgment entered in this Action, including the releases provided for under the Settlement (*see* Notice at pages [9-11], "What am I giving up to get a payment or to stay in the Class?"), whether or not you submit a Proof of Claim.

5.      Submission of this Proof of Claim does not guarantee that you will share in the proceeds of the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, or by such other plan of allocation that is ultimately approved by the Court.

6.      Use Part II of this form, "Claimant Information," to identify each purchaser or acquirer of Arqit Securities that form the basis of this claim. *THIS PROOF OF CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR ACQUIRER(S) OF ARQIT SECURITIES UPON WHICH THE CLAIM IS BASED, OR BY THEIR LEGAL REPRESENTATIVE.*

7.      Separate Proofs of Claim should be submitted for each separate legal entity. Generally, a single Proof of Claim should be submitted on behalf of one legal entity including all holdings and transactions made by that entity on one Proof of Claim. If a single person or legal

entity had multiple accounts that were separately managed, separate Proofs of Claim may be submitted for each such account.

8.　　　All joint beneficial owners, purchasers, or acquirers must sign this Proof of Claim.

9.　　　Agents, executors, administrators, guardians, conservators, and trustees must complete and sign this Proof of Claim on behalf of Persons represented by them. They must also (i) identify the capacity in which they are acting; (ii) identify the name, account number, last four digits of the Social Security Number (or Taxpayer Identification Number) of the beneficial owner (or other Person or entity on whose behalf they are acting); and (iii) provide documentary evidence of their authority to legally bind the person or entity on whose behalf they are acting to the Proof of Claim. (Authority to complete and sign a Proof of Claim cannot be established by stockbrokers who show only that they have discretionary authority to trade in another person's accounts).

10.　　By submitting a signed Proof of Claim, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under U.S. law. Making false statements or submitting fraudulent documentation will result in the rejection of your Claim and may subject you to civil liability or criminal prosecution.

11.　　Use Part III of this form, entitled "Schedule of Transactions," to supply all requested details of your transaction(s) in Arqit Securities. On this schedule, provide all of the requested information with respect to your holdings, purchases, acquisitions, and sales of Arqit Securities, whether such transactions resulted in a profit or loss. List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list. If you need more space, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

12.　　The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Arqit ordinary shares. The date of a "short sale" is deemed to be the date of sale of Arqit ordinary shares. Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero. In the event that a claimant has an opening short position in Arqit ordinary shares, their earliest Class Period purchases or acquisitions of Arqit ordinary shares will be matched against the opening short position, and not be entitled to a recovery, until that short position is fully covered.

13.　　Copies of broker confirmations or other documentation of your transactions must be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

**Exhibit A-4**

## PART II: CLAIMANT INFORMATION

Beneficial Owner's Name

Co-Beneficial Owner's Name(s) (if applicable)

Entity Name (if Claimant is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address 1 (street name and number)

Address 2 (apartment, unit, or box number)

City:                                                                                                State:        Zip Code:

Foreign Province:                                                                        Foreign Postal Code:

Foreign Country:

Telephone Number

**Exhibit A-4**

Account Number (if filing for multiple account types, file a separate Proof of Claim for each account type)

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

Email Address

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

Unique Settlement Class Member Identifier provided on mailed Notice

| | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

**PART III: SCHEDULE OF TRANSACTIONS**

Please be sure to include proper documentation with your Proof of Claim as described in the General Instructions. Do not include information regarding securities other than those that pertain to this Settlement.

**1. SECTION 10(b) ARQIT ORDINARY SHARES**

| | *Check box if proof of position is enclosed □* |
|---|---|
| **1. HOLDINGS AS OF SEPTEMBER 6, 2021:** State total number of Arqit ordinary shares you held as of the close of trading on September 6, 2021. (Must document.) If none, write "zero" or "0" here: _____. | |
| **2. PURCHASES/ACQUISITIONS OF ARQIT ORDINARY SHARES:** Separately list below each and every purchase or acquisition of Arqit ordinary shares from September 7, 2021 through March 13, 2023 (both inclusive). (Must document.) | *Check box if proof of position is enclosed □* |

| **Date of Purchase/ Acquisition (list chronologically by month/day/year)** | **Number of Shares Purchased or Acquired** | **Purchase or Acquisition Price (per share)** | **Total Purchase or Acquisition Price (excluding any taxes, commissions, and fees)** | *Check box if proof of purchase is enclosed* |
|---|---|---|---|---|
| / / | | $ | $ | □ |
| / / | | $ | $ | □ |
| / / | | $ | $ | □ |
| / / | | $ | $ | □ |
| / / | | $ | $ | □ |
| / / | | $ | $ | □ |

**Exhibit A-4**

| 3. SALES OF ARQIT ORDINARY SHARES: Separately list below each and every sale or disposition of Arqit ordinary shares from September 7, 2021 through March 13, 2023 (both inclusive). (Must document.) | | | | *If NONE, check box* ☐ |
|---|---|---|---|---|
| **Date of Sale (list chronologically by month/day/year)** | **Number of Shares Sold** | **Sale Price (per share)** | **Total Sale Price Per Share (excluding any taxes, commissions, and fees)** | *Check box if proof of sale is enclosed:* |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| 4. HOLDINGS AS OF March 13, 2023: State total number of Arqit ordinary shares you held as of the close of trading on March 13, 2023. (Must document.) If none, write "zero" or "0" here: _____. | | | | *Check box if proof of position is enclosed* ☐ |

*IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND ACCOUNT NUMBER ON EACH ADDITIONAL PAGE, AND ALSO SIGN EACH ADDITIONAL PAGE. IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX* ☐

## 2. SECTION 10(b) ARQIT WARRANTS

| 1. HOLDINGS AS OF SEPTEMBER 6, 2021: State total number of Arqit warrants you held as of the close of trading on September 6, 2021. (Must document.) If none, write "zero" or "0" here: _____. | | | | *Check box if proof of position is enclosed* ☐ |
|---|---|---|---|---|
| 2. PURCHASES/ACQUISITIONS OF ARQIT WARRANTS: Separately list below each and every purchase or acquisition of Arqit warrants from September 7, 2021 through March 13, 2023 (both inclusive). (Must document.) | | | | *Check box if proof of position is enclosed* ☐ |
| **Date of Purchase/ Acquisition (list chronologically by month/day/year)** | **Number of Warrants Purchased or Acquired** | **Purchase or Acquisition Price (per warrant)** | **Total Purchase or Acquisition Price (excluding any taxes, commissions, and fees)** | *Check box if proof of purchase is enclosed* |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |

**Exhibit A-4**

| / | / | | $ | $ | ☐ |
|---|---|---|---|---|---|

**3. SALES OF ARQIT WARRANTS:** Separately list below each and every sale or disposition of Arqit warrants from September 7, 2021 through March 13, 2023 (both inclusive). (Must document.)

*If NONE, check box* ☐

| Date of Sale (list chronologically by month/day/year) | Number of Warrants Sold | Sale Price (per warrant) | Total Sale Price (excluding any taxes, commissions, and fees) | Check box if proof of sale is enclosed: |
|---|---|---|---|---|
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |

**4. HOLDINGS AS OF MARCH 13, 2023:** State total number of Arqit warrants you held as of the close of trading on March 13, 2023. (Must document.) If none, write "zero" or "0" here: _____.

*Check box if proof of position is enclosed* ☐

*IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND ACCOUNT NUMBER ON EACH ADDITIONAL PAGE, <u>AND ALSO SIGN EACH ADDITIONAL PAGE.</u> IF YOU <u>DO</u> ATTACH EXTRA SCHEDULES, CHECK THIS BOX* ☐

### 3. SECTION 14(a) CENTRICUS UNITS OR CLASS A ORDINARY SHARES

**1. HOLDINGS AS OF JULY 26, 2021:** State total number of Centricus Acquisition Corp. units and/or Class A ordinary shares you held as of the close of trading on July 26, 2021 that you exchanged for Arqit ordinary shares. (Must document.): _____

*Check box if proof of position is enclosed* ☐

**2. SALES OF ARQIT ORDINARY SHARES:** Separately list below each and every sale or disposition of Arqit ordinary shares from September 7, 2021 through March 13, 2023 (both inclusive). (Must document.)

*If NONE, check box* ☐

| Date of Sale (list chronologically by month/day/year) | Number of Shares Sold | Sale Price (per share) | Total Sale Price Per Share (excluding any taxes, commissions, and fees) | Check box if proof of sale is enclosed: |
|---|---|---|---|---|
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |
| /    / | | $ | $ | ☐ |

| / | / | | $ | $ | ☐ |
|---|---|---|---|---|---|

**3. HOLDINGS AS OF MARCH 13, 2023:** State total number of Arqit ordinary shares you held as of the close of trading on March 13, 2023. (Must document.) If none, write "zero" or "0" here: _____. | *Check box if proof of position is enclosed ☐*

*IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND ACCOUNT NUMBER ON EACH ADDITIONAL PAGE, AND ALSO SIGN EACH ADDITIONAL PAGE. IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX ☐*

### 4. SECURITIES ACT ARQIT ORDINARY SHARES

**1. HOLDINGS AS OF SEPTEMBER 1, 2021:** State total number of Arqit ordinary shares you held as of the close of trading on September 1, 2021. (Must document.) If none, write "zero" or "0" here: _____. | *Check box if proof of position is enclosed ☐*

**2. PURCHASES/ACQUISITIONS OF ARQIT ORDINARY SHARES:** Separately list below each and every purchase or acquisition of Arqit ordinary shares from September 2, 2021 through April 14, 2023 (both inclusive). (Must document.) | *Check box if proof of position is enclosed ☐*

| Date of Purchase/ Acquisition (list chronologically by month/day/year) | Number of Shares Purchased or Acquired | Purchase or Acquisition Price (per share) | Total Purchase or Acquisition Price (excluding any taxes, commissions, and fees) | *Check box if proof of purchase is enclosed* |
|---|---|---|---|---|
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |

**3. SALES OF ARQIT ORDINARY SHARES:** Separately list below each and every sale or disposition of Arqit ordinary shares from September 2, 2021 through April 14, 2023 (both inclusive). (Must document.) | *If NONE, check box ☐*

| Date of Sale (list chronologically by month/day/year) | Number of Shares Sold | Sale Price (per share) | Total Sale Price Per Share (excluding any taxes, commissions, and fees) | *Check box if proof of sale is enclosed:* |
|---|---|---|---|---|
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |

| / / | | $ | $ | ☐ |
|---|---|---|---|---|
| / / | | $ | $ | ☐ |

| **4. HOLDINGS AS OF APRIL 14, 2023:** State total number of Arqit ordinary shares you held as of the close of trading on April 14, 2023. (Must document.) If none, write "zero" or "0" here: _____. | *Check box if proof of position is enclosed ☐* |
|---|---|

*IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND ACCOUNT NUMBER ON EACH ADDITIONAL PAGE, <u>AND ALSO SIGN EACH ADDITIONAL PAGE</u>. IF YOU <u>DO</u> ATTACH EXTRA SCHEDULES, CHECK THIS BOX ☐*

## 5. SECURITIES ACT ARQIT WARRANTS

| **1. HOLDINGS AS OF SEPTEMBER 1, 2021:** State total number of Arqit warrants you held as of the close of trading on September 1, 2021. (Must document.) If none, write "zero" or "0" here: _____. | *Check box if proof of position is enclosed ☐* |
|---|---|

| **2. PURCHASES/ACQUISITIONS OF ARQIT WARRANTS:** Separately list below each and every purchase or acquisition of Arqit warrants from September 2, 2021 through April 14, 2023 (both inclusive). (Must document.) | *Check box if proof of position is enclosed ☐* |
|---|---|

| **Date of Purchase/ Acquisition (list chronologically by month/day/year)** | **Number of Warrants Purchased or Acquired** | **Purchase or Acquisition Price (per warrant)** | **Total Purchase or Acquisition Price (excluding any taxes, commissions, and fees)** | *Check box if proof of purchase is enclosed* |
|---|---|---|---|---|
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |

| **3. SALES OF ARQIT WARRANTS:** Separately list below each and every sale or disposition of Arqit warrants from September 2, 2021 through April 14, 2023 (both inclusive). (Must document.) | *If NONE, check box ☐* |
|---|---|

| **Date of Sale (list chronologically by month/day/year)** | **Number of Warrants Sold** | **Sale Price (per warrant)** | **Total Sale Price (excluding any taxes, commissions, and fees)** | *Check box if proof of sale is enclosed:* |
|---|---|---|---|---|
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |

**Exhibit A-4**

| / | / | | $ | $ | ☐ |
|---|---|---|---|---|---|
| / | / | | $ | $ | ☐ |
| / | / | | $ | $ | ☐ |

| **4. HOLDINGS AS OF APRIL 14, 2023:** State total number of Arqit warrants you held as of the close of trading on April 14, 2023. (Must document.) If none, write "zero" or "0" here: _____. | *Check box if proof of position is enclosed ☐* |
|---|---|

*IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND ACCOUNT NUMBER ON EACH ADDITIONAL PAGE, <u>AND ALSO SIGN EACH ADDITIONAL PAGE</u>. IF YOU <u>DO</u> ATTACH EXTRA SCHEDULES, CHECK THIS BOX ☐*

## PART IV: RELEASE

1.       I (We) hereby fully, finally, and forever settle, release, and discharge each of the Defendants' Releasees (as defined in the Notice) from each of the Released Plaintiffs' Claims (as defined in the Notice).

2.       I (We) hereby warrant and represent that I (we): have not assigned or transferred, voluntarily or involuntarily, any of my (our) Released Plaintiffs' Claims or any part thereof; have not submitted any other claim covering the same purchases or acquisitions of Arqit Securities during the Class Period; and have no knowledge of any other Person having done so on my (our) behalf.

3.       I (We) hereby warrant and represent that I (we) have included herein true and correct information, and submitted true and correct copies of supporting documentation, as to all of my (our) transactions in Arqit Securities, as requested in Part III.

4.       I (We) certify that I am (we are) NOT subject to backup tax withholding. (If the Internal Revenue Service has notified you that you are subject to backup withholding, please strike out the prior sentence.)

5.       I (We) submit to the jurisdiction of the U.S. District Court for the Eastern District of New York with respect to my (our) Claim as a Settlement Class Member and for purposes of enforcing the releases set forth above.

6.       I (We) declare under penalty of perjury under the laws of the United States that all of the information submitted by me (us) as part of this Proof of Claim is true and correct.


Signed on:_____/_____/_____
                          Month                 Day              Year

**Exhibit A-4**

_____     _____
(Signature of beneficial owner)        (Signature of co-beneficial owner, if any)


_____     _____
(Type or print your name here)         (Type or print your name here)


_____     _____
(Title if signing for corporate entity, or    (Title if signing for corporate entity, or
your capacity if signing as, e.g., executor,   your capacity if signing as, e.g., executor,
trustee, etc., and attach documentation of    trustee, etc., and attach documentation of
your authority)                        your authority)

**<u>Reminder Checklist:</u>**

1. You must sign the above release and acknowledgment.
2. Remember to attach copies of supporting documentation.
3. Do not send originals of certificates or other documentation as they will not be returned.
4. Keep a copy of your Proof of Claim and all supporting documentation for your records.
5. If you move, please send your new address to the address below.
6. Do not use red pen or highlighter on the Proof of Claim or any supporting documentation.
7. Accurate claims processing takes significant time. Thank you for your patience.


_Do not mail or send your Proof of Claim to the Court, the Parties, or their counsel. Submit your Proof of Claim only to the Claims Administrator at the mailing, email, or online addresses listed below, no later than _____ to:_

Arqit Quantum Inc. Securities Litigation Settlement
c/o Kroll Settlement Administration LLC
PO Box _____
New York, NY _____
www.arqitsecuritiessettlement.com

Online Submissions: www.arqitsecuritiessettlement.com

# Exhibit B

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ARQIT QUANTUM INC. SECURITIES LITIGATION | Case No. 22-cv-02604-PKC-SDE |

### [PROPOSED] FINAL JUDGMENT

WHEREAS, the above-captioned action (the "Action") is pending in this Court;

WHEREAS, On June 5, 2023 the Court appointed Plaintiff Chris Weeks as Lead Plaintiff ("Weeks" or "Lead Plaintiff") and Wolf Popper LLP as Lead Plaintiff's counsel;

WHEREAS, Lead Plaintiff is joined by plaintiffs Patrick Hagemeister ("Hagemeister"), Erwin Jay Lack ("Lack"), and Walter Littlejohn III ("Littlejohn," and collectively with Lead Plaintiff, Hagemeister, and Lack, "Plaintiffs" or "Named Plaintiffs"), who are represented by Levi & Korsinsky, LLP (collectively with Wolf Popper LLP, "Plaintiffs' Counsel");

WHEREAS, this Action is pending against (a) defendant Arqit Quantum Inc. (the "Company") (formerly known to investors as Centricus Acquisition Corp. ("Centricus")) and (b) defendants David Williams, Nick Pointon, Carlo Calabria, Stephen Chandler, Manfredi Lefebvre d'Ovidio, Lt. General VeraLinn Jamieson (Ret.), Garth Ritchie, and Gen. Stephen Wilson (Ret.) (the "Individual Defendants" and collectively with the Company, "Defendants");

WHEREAS, Plaintiffs, on behalf of themselves and the other members of the Settlement Classes (as defined in paragraphs 3-5, below, and also referred to herein as "Settlement Class Members") and Defendants have entered into a Stipulation and Agreement of Settlement dated January 9, 2026 ("Settlement Agreement"), that provides for a cash payment of $7,000,000 to the Settlement Classes as consideration for a complete dismissal with prejudice of this Action and all

Released Claims against the Released Parties (as those terms are defined below), and on the terms and conditions set forth in the Settlement Agreement, subject to the approval of this Court;

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Settlement Agreement;

WHEREAS, by Order dated _____ (the "Preliminary Approval Order"), this Court: (i) found, pursuant to Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, that it would likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (ii) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (iii) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Classes or to object to the proposed Settlement; and (iv) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class Members;

WHEREAS, the Court conducted a hearing on _____, 2026 (the "Settlement Hearing"), to consider, among other things, (i) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Classes, and should therefore be approved; and (ii) whether a judgment should be entered dismissing with prejudice this Action and all Released Claims against the Released Parties; and

WHEREAS, the Court having reviewed and considered the Settlement Agreement, all papers filed and proceedings held herein in connection with the Settlement, and the record in this Action, and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.     **Jurisdiction** – The Court has jurisdiction over the subject matter of this Action, and all matters relating to the Settlement, as well as personal jurisdiction over all Plaintiffs and Defendants and each of the Settlement Class Members.

2.     **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: (a) the Settlement Agreement; (b) the Notice of Pendency and Proposed Settlement of Class Action ("Longform Notice"); (c) the Summary Notice of Proposed Settlement of Class Action (the "Summary Notice"); (d) the Postcard Notice of Proposed Settlement of Class Action (the "Postcard Notice,"); and (e) and the Proof of Claim and Release form ("Claim Form"), copies of which were filed with the Court on January 9, 2026.

3.     **Class Certification** – Pursuant to Federal Rules 23(a) and (b)(3), the Court hereby certifies this Action as a class action for purposes of this Settlement only and certifies the Settlement Classes for purposes of this Settlement only. The Settlement Classes are:

       a.   "Section 14(a) Class": all beneficial holders of Centricus securities as of the July 26, 2021 record date for the special meeting of shareholders held on August 31, 2021 to consider approval of the merger between Arqit Quantum and Centricus (the "Merger"), which resulted in the public listing of Arqit Quantum's ordinary shares and warrants on the NASDAQ Global Markets exchange ("NASDAQ") on September 7, 2021;

       b.   "Section 10(b) Class": all persons or entities who purchased or otherwise acquired Arqit Quantum securities in connection with the Merger or on a U.S. stock exchange between September 7, 2021 and December 13, 2022, inclusive (the Class Period); and

c. "Securities Act Class": all persons or entities who purchased or otherwise acquired Arqit Quantum securities pursuant or traceable to the effective "Registration Statement" and "Prospectus" (collectively the "Offering Materials") filed with the SEC for the September 2, 2021 Offering of Arqit Quantum securities in connection with the Merger.

For the avoidance of doubt, a Settlement Class Member could be a member of more than one Settlement Class.

4. The Court finds that: (a) the Settlement Class Members are so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Classes which predominate over any individual question; (c) the claims of Plaintiffs are typical of the claims of the Settlement Classes; and (d) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering (i) the interests of the Settlement Class Members individually controlling the prosecution with separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by Settlement Class Members; (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of the class action.

5. **Exclusions from the Settlement Classes** – Excluded from the Settlement Classes are Defendants, the current and former officers, directors, and employees of Arqit Quantum, Arqit Limited, and Centricus, (the "Excluded Persons"), members of Defendants' and Excluded Persons' immediate families, legal representatives, heirs, successors or assigns, D2BW Limited, Notion Capital Managers LLP, Notion Capital II GP LLP, NML Limited, MNL Nominees Limited,

Centricus Heritage LLC, the Heritage Group, any other entity in which Defendants or the Excluded Persons have or had a controlling interest.

6.        **[**Also excluded from the Settlement Classes are the persons and entities listed on Exhibit 1 hereto who or which are excluded from the Settlement Classes pursuant to request.**]**

7.        **Adequacy of Representation** – The Court finds that Plaintiffs and Plaintiffs' Counsel have fairly and adequately represented the Settlement Classes both in terms of litigating this Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g)(4), respectively.

8.        **Notice** – The Court finds that the method of mailing the Postcard Notice and of disseminating the Longform Notice, the Summary Notice, the Settlement Website, and the Claim Form: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) the Fee and Expense Application; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or the Fee and Expense Application; (v) their right to exclude themselves from the Settlement Classes; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice of all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Federal Rule of Civil Procedure 23, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules.

9. Defendants have complied with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *et seq.* ("CAFA"). Defendants timely mailed notice of the Settlement pursuant to 28 U.S.C. § 1715(b), including notices to the Attorney General of the United States of America and the Attorneys General of each State. The CAFA notice contains the documents and information required by 28 U.S.C. § 1715(b)(1)-(8). The Court finds that Defendants have complied in all respects with the notice requirements of CAFA.

10. **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Federal Rule of Civil Procedure 23(e)(2), this Court hereby fully and finally approves the Settlement set forth in the Settlement Agreement in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in this Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Classes. Specifically, the Court finds that:

   a. said Settlement Agreement and the Settlement contained therein, are, in all respects, fair, reasonable, and adequate and in the best interest of the Settlement Classes;

   b. Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Classes;

   c. The Settlement was negotiated at arm's-length with the assistance of an experienced mediator, and there was no collusion in connection with the Settlement Agreement;

   d. The Settlement Agreement was the product of informed, arm's-length negotiations among competent, able counsel;

e.   The relief provided for the Settlement Classes is adequate, having taken into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Settlement Classes, including the method of processing the Settlement Class Members' Claims; (iii) the terms of any proposed award of attorneys' fees, including the timing of payment; and (iv) any agreement required to be identified under Federal Rule of Civil Procedure 23(e)(2);

f.   The proposed Plan of Allocation treats Settlement Class Members equitably relative to each other; and

g.   The record is sufficiently developed and complete to have enabled Plaintiffs and Plaintiffs' Counsel to have adequately evaluated and considered their positions.

11.   This Action and all of the claims asserted against Defendants in this Action by Plaintiffs and the Settlement Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Settlement Agreement.

12.   The Court finds that Defendants have satisfied their financial obligations under the Settlement Agreement by paying or causing to be paid **$7,000,000** in cash to the Settlement Fund, in accordance with paragraphs 5.1-5.2 of the Settlement Agreement.

13.   **Binding Effect** – The terms of the Settlement Agreement and of this Judgment shall be forever binding on Defendants, Plaintiffs, and all other Settlement Class Members (regardless of whether or not any individual member of the Settlement Classes submits a Claim Form or seeks or obtains a distribution from the Settlement Fund), as well as their respective successors and

assigns.  The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Classes pursuant to request and are not bound by the terms of the Settlement Agreement or this Judgment.

14.    **Releases** – The Releases set forth in paragraphs 4.1-4.4 of the Settlement Agreement, together with the definitions contained in paragraphs 1.56-1.60 of the Settlement Agreement relating thereto, are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date.  Accordingly, this Court orders that:

      a.  Without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs' Releasees, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any and all Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any and all Released Plaintiffs' Claims against any of the Defendants' Releasees, in any court or other forum, regardless of whether such claims are currently pending.

      b.  Without further action by anyone, upon the Effective Date of the Settlement, Defendants' Releasees, shall be deemed to have, and by operation of law and of the Judgement shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any and all Released Defendants' Claims against Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any and all Released Defendants' Claims against any of the Plaintiffs' Releasees, in any court or other forum, regardless of whether such claims are currently pending.

15.     **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Federal Rule of Civil Procedure 11 in connection with the institution, prosecution, defense, and settlement of this Action.

16.     **No Admissions** – This Judgment or the Settlement Agreement (whether or not consummated), including their exhibits and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Settlement Agreement, and any proceedings taken pursuant to or in connection with the Settlement Agreement, and/or approval of the Settlement (including any arguments proffered in connection therewith):

   a.   shall not be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted in this Action or in any other litigation, or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement;

   b.   shall not be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or

admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement;

c. and shall not be construed against any of Defendants' Releasees or Plaintiffs' Releasees (collectively, the "Released Parties") as an admission, concession, or presumption that the consideration to be given under the Settlement Agreement represents the amount which could be or would have been recovered after trial;

d. provided, however, that the Parties and the other Released Parties and their respective counsel may refer to this Judgment and the Settlement Agreement to effectuate the protections from liability granted under this Judgment and the Settlement Agreement or otherwise to enforce the terms of the Settlement.

17. **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) Plaintiffs' Counsel's request for attorneys' fees; (d) any motion to approve or amend the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to this Action.

18. **Modification of the Agreement of Settlement** – Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Settlement Agreement or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of the Settlement Class Members in connection with the Settlement. Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

19. **Termination of Settlement** – If the Settlement is terminated as provided in the Settlement Agreement, this Judgment shall be vacated and rendered null and void, and shall be of no further force and effect, except as otherwise provided by the Settlement Agreement, and this Judgment shall be without prejudice to the rights of Plaintiffs, the other Settlement Class Members, and Defendants, and Plaintiffs and Defendants shall revert to their respective positions in the Action as of August 25, 2025, as provided in the Settlement Agreement.

20. **Fee and Expense Award** - The Court hereby grants Plaintiffs' Counsel's Fee and Expense Application and awards Plaintiffs' Counsel a Fee and Expense Award of attorneys' fees of _____% of the Settlement Fund, or \$_____ plus expenses in the amount of \$_____, together with the interest earned on both amounts for the same period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is fair, reasonable, and appropriate under the "percentage-of-recovery" method.

21. The awarded attorneys' fees and expenses and interest earned thereon, shall be paid to Plaintiffs' Counsel immediately upon execution of this Final Judgment and subject to the terms, conditions, and obligations of the Settlement Agreement, and in particular, paragraph 8.3 thereof, which terms, conditions, and obligations are incorporated herein.

22.     In making this award of fees and expenses to Plaintiffs' Counsel, the Court has considered and found that:

a.  the Settlement has created a fund consisting of $7,000,000 in cash, and numerous Settlement Class Members who submit, or have submitted, valid Proof of Claim and Release forms will benefit from the Settlement created by Plaintiffs' Counsel;

b.  at least _____ copies of the Postcard Notice and ____ copies of the Longform Notice were disseminated to potential Settlement Class Members indicating that Plaintiffs' Counsel would move for attorneys' fees in an amount not to exceed ___% of the Settlement Amount and for expenses in an amount not to exceed $_____, plus interest on both amounts, [and no objections to the fees or expenses were filed by Settlement Class Members];

c.  Plaintiffs' Counsel pursued the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

d.  Plaintiffs' Counsel expended substantial time and effort pursuing the Litigation on behalf of the Settlement Classes;

e.  Plaintiffs' Counsel pursued the Litigation entirely on a contingent basis;

f.  the Litigation involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings who resolution would be uncertain;

g.  had Plaintiffs' Counsel not achieved the Settlement, there would remain a significant risk that the Settlement Classes may have recovered less or nothing from Defendants;

> h.  Plaintiffs' Counsel represented that they have devoted over _____ hours, with a lodestar value of $_____ through ___, 2026, to achieve the Settlement;
>
> i.  public policy concerns favor the award of reasonable attorneys' fees; and
>
> j.  the attorney's fees and expenses awarded are fair and reasonable.

23.  Pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(4), 15 U.S.C. § 77z-1(a)(4), the Court grants awards of reasonable costs and expenses (including lost wages) directly relating to the Plaintiffs' representation of the Settlement Classes to the Plaintiffs in the following amounts:

> a.  Lead Plaintiff Weeks: $_____;
>
> b.  Named Plaintiff Hagemeister: $_____;
>
> c.  Named Plaintiff Lack: $_____; and
>
> d.  Named Plaintiff Littlejohn: $_____.

24.  The Court finds and concludes that the Plan of Allocation for the calculation of the claims of Authorized Claimants which is set forth in the Longform Notice provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Authorized Claimants, with due consideration having been given to administrative convenience and necessity.

25.  This Court finds and concludes that the Plan of Allocation, as set forth in the Longform Notice, is, in all respects, fair and reasonable and the Court approves the Plan of Allocation.

26. **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED

Brooklyn, NY

Date: _____

_____
The Honorable Pamela K. Chen
United States District Judge

**EXHIBIT 1**

List of Persons and Entities Excluded from the Settlement Classes in *In re Arqit Quantum Inc. Securities Litigation*, No. 1:22-cv-02604 (E.D.N.Y.)

The following persons and entities—and only the following persons and entities—are hereby excluded from the Settlement Classes and from operation of the Judgment: